CHRISTOPHER VAN GUNDY (SBN 152359)
cvangundy@roll.com
MICHAEL M. VASSEGHI (SBN 210737)
mvasseghi@roll.com
DANIELLE M. CRIONA (SBN 204074)
dcriona@roll.com
ROLL LAW GROUP PC
11444 West Olympic Boulevard
Los Angeles, California 90064-1557
Telephone:   (310) 966-8400
Facsimile:   (310) 966-8810

Attorneys for
POM WONDERFUL LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| POM WONDERFUL LLC, a Delaware limited liability company,<br><br>        Plaintiff,<br><br>      vs.<br><br>ROBERT G. HUBBARD d/b/a PUR BEVERAGES, PORTLAND BOTTLING COMPANY an Oregonian company, and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No. CV13-06917 MMM CWx<br><br>**PLAINTIFF POM WONDERFUL LLC'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION**<br><br>**Hon. Margaret M. Morrow**<br><br>Date:    March 3, 2014<br>Time:    10:00 a.m.<br>Place:   Courtroom 780 |

{078602.3}

# TABLE OF CONTENTS

<u>Page</u>

I.    INTRODUCTION ................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................... 3

    A.    POM Wonderful ...................................................................... 3

    B.    The POM® Brand Intellectual Property ................................... 4

    C.    POM Wonderful's Extensive Marketing And Promotion Of The POM® Brand ........................................................... 6

    D.    POM Wonderful's Trademark Registrations And Enforcement Activities ............................................................................ 8

    E.    Defendant's Infringing Conduct .............................................. 9

III.  POM IS ENTITLED TO INJUNCTIVE RELIEF ............................... 9

    A.    Standards For Injunctive Relief .............................................. 9

IV.  POM WONDERFUL HAS A HIGH LIKELIHOOD OF SUCCESS ON THE MERITS ........................................................................... 10

    A.    Trademark Infringement Legal Standard............................... 10

    B.    POM Wonderful Owns Valid Trademarks ............................. 11

    C.    PUR pŏm Is Likely to Cause Confusion With POM Wonderful's POM® Trademark ................................................................ 11

        1.    Similarity Of The Marks – Heavily Favors POM Wonderful ............................................................ 12

        2.    Strength Of The Trademarks At Issue – Heavily Favors POM Wonderful .............................................. 13

        3.    Evidence Of Actual Confusion - Neutral ...................... 14

        4.    Defendant's Intent – Favors POM Wonderful .............. 15

        5.    Relatedness Of The Products – Heavily Favors POM Wonderful ............................................................ 16

        6.    The Marketing And Trade Channels For The Goods – Heavily Favors POM Wonderful ................................. 18

        7.    Type Of Good And the Degree Of Care Likely Exercised By Consumers – Heavily Favors POM Wonderful................... 18

        8.    Likelihood Of Expansion - Neutral ............................. 19

{078602.3}

i

1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28

V.     POM WONDERFUL WILL LIKELY SUFFER IRREPARABLE
       HARM IF AN INJUNCTION IS NOT ISSUED ............................................. 19

       A.     Serious Questions On The Merits And The Balance Of
              Hardships Tips Sharply In POM Wonderful's Favor. .......................... 20

              1.     Serious Questions On The Merits. ............................................ 20

              2.     The Balance Of Hardships Tips Sharply In Favor Of POM
                     Wonderful. ............................................................................... 20

              3.     Injunction Is In The Public Interest ......................................... 21

VI.    CONCLUSION ........................................................................................... 21

PLAINTIFF POM WONDERFUL LLC'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
INJUNCTION

# TABLE OF AUTHORITIES

**Page**

## CASES

*Academy of Motion Picture Arts v. Creative House*
   944 F.2d 1446 (9th Cir. 1991) ...................................................................... 15

*Accuride Int'l, Inc. v. Accuride Corp.*
   871 F.2d 1531 (9th Cir. 1989) ...................................................................... 14

*AMF, Inc. v. Sleekcraft Boats*
   599 F.2d 341 (9th Cir. 1979) ................................................................. passim

*Boldface Licensing + Branding v. By Lee Tillett, Inc.*
   2013 WL 1685464, *5 (C.D. Cal. 2013) ...................................................... 10

*Brookfield Communications, Inc. v. West Coast Entm't, Inc.*
   174 F.3d 1036 (9th Cir. 1999) .................................................. 12, 14, 18, 19

*C & C Organization v. AGDS Inc.*
   676 F. Supp. 204 (C.D. Cal. 1987) .............................................................. 20

*Century 21 Real Estate Corp. v. Sandlin*
   846 F.2d 1175 (9th Cir. 1988) ....................................................................... 9

*Cleary v. News Corp.*
   30 F.3d 1255 (9th Cir. 1994) ....................................................................... 10

*CSC Brands LP v. Herdez Corp.*
   191 F.Supp.2d 1145 (E.D. Cal. 2001) .......................................................... 18

*E. & J. Gallo Winery v. Gallo Cattle Co.*
   955 F.2d 1327, modified on other grounds, 967 F.2d 1280 (9th Cir.
   1992) ...................................................................................................... 13, 15

*Fleischmann Distilling Corp. v. Maier Brewing Co.*
   314 F.2d 149 (9th Cir. 1962) ....................................................................... 16

*Glow Indus., Inc. v. Lopez*
   252 F.Supp.2d 962 (C.D. Cal. 2002) ........................................................... 16

*GoTo.com, Inc. v. Walt Disney Co.*
   202 F.3d 1199 (9th Cir. 2000) .................................................... 12, 13, 14

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*
   150 F.3d 1042 (9th Cir. 1998) ..................................................................... 13

*KP Permanent Make-Up, Inc. v. Lasting Impression, Inc.*
   543 U.S. 111 (2004) .............................................................................. 10, 13

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*
   799 F.2d 867 (2nd Cir. 1986) ...................................................................... 14

PLAINTIFF POM WONDERFUL LLC'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
INJUNCTION

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*
    571 F.3d 873 (9th Cir. 2009)............................................................... 10

*Nutri/System, Inc. v. Con-Stan Indus., Inc.*
    809 F.2d 601 (9th Cir. 1987)............................................................... 18

*Official Airline Guides v. Goss*
    6 F.3d 1385 (9th Cir. 1993)............................................................ 13, 16

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*
    469 U.S. 189 (1985) ........................................................................... 13

*Pepsico Inc. v. Reyes*
    70 F.Supp.2d 1057 (C.D. Cal. 1999) ................................................. 20

*Rearden LLC v. Rearden Commerce, Inc.*
    683 F.3d 1190 (9th Cir. 2012)............................................................ 11

*Seed Services, Inc. v. Winsor Grain, Inc.*
    868 F.Supp.2d 998 (E.D. Cal. 2012) ................................................. 21

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*
    739 F.2d 1415 (9th Cir. 1984)............................................................ 20

*Stanley v. University of Southern California*
    13 F.3d 1313 (9th Cir. 1994)............................................................... 9

*Surfvivor Media, Inc. v. Survivor Prods.*
    406 F.3d 625 (9th Cir. 2005) .............................................................. 19

*Tri-Star Pictures, Inc. v. Unger*
    14 F.Supp.2d 339 (S.D.N.Y. 1998) .................................................... 18

*Walter v. Jeremyel, Inc.*
    210 F.3d 1108 (9th Cir. 2000) ............................................................ 10

*Winter v. Natural Res. Defense Council, Inc.*
    555 U.S. 7 (2008) ......................................................................... 10, 21

**STATUTES**

15 U.S.C. § 1057(b)............................................................................ 11

15 U.S.C. § 1115(b)............................................................................ 11

15 U.S.C. § 1116(a) ............................................................................. 9

California Business & Professions Code § 17200............................... 10

Section 1125(a) ................................................................................... 9

PLAINTIFF POM WONDERFUL LLC'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY
INJUNCTION

TO DEFENDANTS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on March 3, 2014, or as soon thereafter as the matter may be heard, in Courtroom 708 of the United States District Court for the Central District of California, 255 East Temple St., Los Angeles, CA 90012, Plaintiff POM Wonderful LLC will and hereby does move this Court for a preliminary injunction and order against Defendant Robert G. Hubbard d/b/a PUR Beverages ("Defendant").

Plaintiff will, and does, seek an order from the Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure, for an order preliminarily enjoining Defendant, and all of its officers, directors, owners, agents, representatives, servants, employees and attorneys, and all those in active concert or participation with it, from infringing upon Plaintiffs' POM® trademarks and from engaging in acts of unfair competition.

This Motion is brought on the grounds that Plaintiff is the owner of a family of POM® trademarks, including many federally registered marks, for use in connection with their pomegranate products.  Defendant, with full knowledge of Plaintiff's extensive and exclusive rights in the POM® trademarks is intentionally and willfully infringing upon those rights by directly selling or distributing an energy drink product under the name PUR pŏm, which copies Plaintiff's POM® trademark and is in direct competition with Plaintiff.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Jeremy Adams and Michael Vasseghi, the [Proposed] Order, all the pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at any hearing on the Motion.

/ / /

/ / /

/ / /

DATED:  November 22, 2013          ROLL LAW GROUP PC

By:   /s/ Michael M. Vasseghi /s/
Michael M. Vasseghi
Attorneys for POM WONDERFUL LLC

# I.    INTRODUCTION

In a transparent effort to cash in on the reputation and goodwill which POM Wonderful has generated in its POM® trademark, Defendant Robert G. Hubbard d/b/a PUR Beverages ("Defendant" or "PUR") is engaging in deliberate trademark infringement and unfair competition – conduct that threatens to confuse consumers into believing that POM Wonderful has somehow endorsed, approved of, or licensed Defendant's use of POM®.  Defendant has a line of energy drink beverages under the PUR brand, one of which is called PUR pŏm.  POM Wonderful seeks an order enjoining Defendant from selling and marketing this infringing product.

In 2001, Plaintiff POM Wonderful introduced, under its POM® trademark, what is likely the most well-known pomegranate-based product marketed and sold in the U.S.  Since 2001, Pom Wonderful's POM® branded pomegranate-based juices and teas have shot to the top of the sales charts – it leads the nation in its market segment of super-premium pomegranate juice and occupies the top spot in supermarket sales in no less than eight of the nation's major geographic markets.  Both the company and its products have received media accolades, and POM Wonderful's large POM® family of marks is now universally recognized by the relevant consuming public.  Through an innovative advertising and marketing campaign, in just over ten years, POM Wonderful has built an extremely successful brand in the market for pomegranate-based beverages and products.

Defendant's use is intentional.  POM Wonderful is not aware of any other pomegranate-based beverage (other than its own products) that contain the term POM® as part of its mark.[1]  POM® has no meaning.  It is not a word that exists in a dictionary, nor is it an abbreviation for "pomegranate" or "pomegranate flavor".  To

---

[1] To the extent other beverage companies have utilized POM Wonderful's POM® trademark in the past, POM Wonderful has successfully managed, either via negotiation or litigation, to convince those infringers to respect its trademark rights and stop utilizing the trademark in conjunction with their products.

the extent Defendant wants to signal to consumers that its beverage is pomegranate flavored, it could simply state so on the can.  In fact, Defendant does exactly that, since the container of the product states "Pomegranate all natural • no caffeine."

Out of the limitless possibilities from which it could have chosen a mark, Defendant chose to use POM Wonderful's POM® trademark.  The only explanation for placing POM Wonderful's trademark on its product is to associate its product with a highly successful brand of pomegranate-based beverages.  This strongly suggests Defendant's bad faith intent to capitalize on POM Wonderful's goodwill.

Given that Defendant is using a virtually identical mark to POM Wonderful's POM® mark in connection with a nearly identical product, POM Wonderful can easily show the elements necessary for injunctive relief.

First, POM Wonderful is the undisputed owner of the POM® mark, as well as a family of related marks, that consists of over 360 trademarks worldwide of which more than 70 are in the United States.  Moreover, POM Wonderful easily meets the Ninth Circuit's *Sleekcraft* test for likelihood of confusion: the marks, products, channels of trade, advertising, and target consumers are either identical or nearly identical.

Second, POM Wonderful can establish irreparable harm.  Defendant's use of the POM® Mark for a nearly identical product threatens to undermine the highly valuable goodwill POM Wonderful has built through the remarkable success of its products, as well as POM Wonderful's multi-million dollar investment in its brand.

Furthermore, POM Wonderful's brand and goodwill is, in part, built on the high quality, healthfulness, taste and purity of its products and POM Wonderful can exercise no quality control in connection with Defendant's PUR pŏm energy drink product.  Indeed, because of the likelihood that consumers will be confused into believing that Defendant's products are associated with, sponsored or approved by Plaintiff, should Defendant's products have any quality issues or cause any consumers to fall ill, Plaintiff's reputation and business could be severely damaged

1    in an instant.  This is particularly true of energy drinks, which have recently been in

2    the news because their use, or misuse, have led to illnesses and even death.  That is

3    precisely the type of harm the trademark laws, generally, and preliminary

4    injunctions, in particular, are designed to prevent.

5         Third, the balance of hardships tip heavily in Plaintiff's favor.  The harm to

6    POM Wonderful is fourfold; (1) Defendant's use of pŏm improperly connects the

7    product to POM Wonderful; (2) it causes consumers to be confused regarding

8    whether or not POM Wonderful is affiliated with or sponsored the product; (3) any

9    quality issues or ill health effects related to the consumption of PUR pŏm could be

10   attributed to POM Wonderful resulting in damaged goodwill and lost sales almost

11   instantaneously; and (4) the ongoing use of pŏm by an infringer decreases the

12   distinctiveness of the highly distinctive POM® brand.

13        Conversely, there is little hardship to Defendant.  PUR pŏm is one of four

14   different types of beverages Defendant sells.  If it is forced to stop selling its

15   infringing product, it can rename the beverage with a non-infringing name and it can

16   continue to sell its other products.

17        Finally, the public interest favors the requested injunctive relief to prevent

18   consumer confusion caused by Defendant's use of the pŏm mark.

19   **II.    FACTUAL BACKGROUND**

20        **A.    POM Wonderful**

21        The POM® brand has been used in connection with fresh fruit since 2001,

22   with beverages since 2002, and with concentrated juice extract and related products

23   since 2009.

24        For over a decade, POM Wonderful has been marketing and selling its

25   POM® brand in the United States.  In that time, POM Wonderful has invested tens

26   of millions dollars in the creation, development, production, marketing and sales of

27   the POM® brand and its products.  POM Wonderful's marketing and advertising

28   includes Sunday newspaper inserts, in-store promotions, print media and billboards

1  in select geographic areas, and since 2010, several television commercials.  *See*

2  Declaration of Jeremy Adams ("Adams Decl.") ¶ 3 and Exhibit B thereto.

3     POM Wonderful, at great cost, cultivated and expanded pomegranate

4  orchards located in California's central valley until they became the largest

5  commercial pomegranate orchards in North America.  The POM® brand

6  pomegranate juice has eclipsed all other products in its market segment of 100%

7  pomegranate juices to take the top spot nationwide in supermarket sales, as well as

8  the top spots in the key geographic regions of Los Angeles, Chicago, New York,

9  Boston, Atlanta, Dallas, Pittsburg and Charlotte.  Adams Decl. ¶ 4.  As a result, the

10  POM® brand of juice has become the bestselling brand of super-premium

11  pomegranate juice in the United States, having sold over 190 million bottles since

12  2002.  Annual supermarket sales have gone from zero to well over $60 million in

13  the last 12 years.  Adams Decl. ¶ 4.

14     In light of this success, POM Wonderful has expanded, and continues to

15  expand, into new areas including selling to restaurants, specialty markets, hotels,

16  cafeterias and convenience stores.  Also, POM Wonderful's products, including

17  both its fresh pomegranates and its pomegranate juice, are sold to consumers not

18  only through supermarkets, but also through large retail outlets such as Costco.

19  Adams Decl. ¶ 5.

20     **B.     The POM® Brand Intellectual Property**

21     POM Wonderful owns numerous trademark registrations and pending

22  applications in the United States and around the world for the trademarks it uses in

23  connection with the marketing, distribution and sale of its POM® brand products in

24  interstate commerce.  The POM® brand trademarks are used in connection with

25  various goods including, but not limited to, fresh pomegranate fruit, arils (seeds),

26  and pomegranate juice, and juice blends as well as products which contain fruit juice

27  or fruit juice extracts such as tea, and dietary and nutritional supplements.

28

POM Wonderful has numerous trademarks registered with the United States Patent and Trademark Office: POM (Reg. Nos. 2637053); POM & Design (Reg. No. 3047447); POM WONDERFUL (Reg. Nos. 2640835 and 3687491);  POM WONDERFUL & Design (Reg. Nos. 2864641, 2780314 and 3687492); POM TEA (Reg. No. 3411595);  LIGHT POM TEA (Reg. No. 3391707);  LIGHT POM TEA & Design (Reg. No. 3411596);  POM IN A PILL (Reg. No. 3337435);  POM IN A PILL & Design (Reg. No. 3332875);  POMEBERRY (Reg. No. 3382338);  POM PASSION (Reg. No. 2944482); POM POWER (Reg. No. 2944481); POMx (Reg. Nos.  3562516 and 3674405); POMx & Design (Reg. No. 3562517 and 3791124); POMx SHOTS (Reg. No. 3667882); POMX SHOTS (Reg. No. 3667882); POWERED BY POMx (Reg. No. 3208934); and POMEGRANATE & Design (Reg. No. 3436526) (collectively, the "POM® Marks").  *See* Adams Decl. ¶ 2 and Exhibit A thereto for copies of the registration certificates for the POM® Marks. This family of trademarks shows the strong rights POM Wonderful has in POM®.

POM Wonderful's registrations are valid and subsisting, and POM Wonderful owns all right, title and interest to the POM® Marks.  Registration Nos. 2637053 (POM), 2640835 (POM WONDERFUL), 2780314 , 2864641  (POM WONDERFUL & Design), and 3047447 (POM & Design) are incontestable pursuant to 15 U.S.C. Section 1065.

POM Wonderful, together with its affiliates, has devoted a great deal of time, money and resources to develop and extensively market its products in connection with its inherently distinctive POM® brand to establish and maintain the substantial goodwill which has come to be associated with the POM® Marks. The POM® trademark, in particular, is an extremely valuable and highly protected component of its business.

The POM® Marks are used consistently on every product, advertisement, and promotion in connection with POM® brand products.  POM Wonderful, its distributors, and its distributor customers, both nationally and internationally, have

1  continuously and exclusively used the POM® Marks to distinguish themselves as

2  the source of goods and services in connection therewith.

3      Defendant has no valid defense for infringing on POM Wonderful's POM®

4  trademark.  It cannot claim that it wanted to use "pom" because it is an abbreviation

5  or short hand for pomegranate or because pomegranate is too long of a word to fit

6  on a can.  Even though pom is the first syllable of the word pomegranate, it is not an

7  abbreviation for it.  Pom has no independent meaning and is not in the dictionary,

8  either as a word or an abbreviation. A review of other pomegranate flavored canned

9  beverages show the use of pomegranate, not pom, to describe the content or flavor

10  of the beverage.  *See* Declaration of Michael Vasseghi ("Vasseghi Decl.") ¶ 2 and

11  exhibit A thereto.  Similar to POM Wonderful, Ocean Spray owns registered

12  trademark rights in "cran" for non-alcoholic beverages. Vasseghi Decl. ¶ 3.  Simply

13  because "cran" is the first syllable of "cranberry" does not negate Ocean Spray's

14  trademark rights.   Finally Defendant cannot claim that it used pom in lieu of

15  pomegranate due to space restrictions given that the full word pomegranate also

16  appears on the can.

17  **C.    POM Wonderful's Extensive Marketing And Promotion Of The
            POM® Brand**

18

19      POM Wonderful has invested substantially in the POM® brand, spending

20  tens of millions of dollars in the U.S. in the marketing, advertising, sales and

21  promotion of the POM® brand products.  POM Wonderful has pursued direct

22  marketing efforts to grocery, gourmet food, health food, and other specialty stores,

23  restaurants, health clubs, and health professionals throughout the world.

24      POM Wonderful's philosophy is to support worthwhile local community

25  efforts.  POM Wonderful does so as part of an overall goal to promote and

26  contribute to the health of consumers, including the sale of its own products. Adams

27  Decl. ¶ 6.

28  / / /

1    POM Wonderful has also sponsored many high profile charity and healthy

2   life-style related events such as the LA Marathon; Nike Women's Marathon; DC

3   Triathlon; the NYC Triathlon; Cart for a Cause (benefiting Meals on Wheels); Best

4   Buddies Challenge (benefiting Best Buddies); GLAAD Media Awards (benefiting

5   Gay and Lesbian Alliance Against Defamation);  and the New York City Wine and

6   Food Festival (benefiting Share Our Strength). Adams Decl. ¶ 7 and Exhibit C

7   thereto show photographs which illustrate some of POM Wonderful's charitable

8   efforts.

9    In the fall of 2010, POM began its first television advertisement campaign for

10   the POM® brand.  POM Wonderful's television commercials have aired in the

11   United States, Canada, France, the United Kingdom and the Netherlands thus far.

12   Adams Decl. ¶ 8 and Exhibit D thereto.  In 2011 and 2012 alone, POM Wonderful

13   spent over $24 million on marketing, promotions, displays, point of sale material,

14   advertising production, web media and trade shows for its POM® brand of juices in

15   North America.  Adams Decl. ¶ 15.

16    In the United States, POM Wonderful's television commercials were featured

17   on such popular networks as ABC, NBC, CBS, CNN, MSNBC, E!, Bravo, A&E,

18   Discovery Channel, Comedy Central, Food Network, FX, National Geographic,

19   Style, and many others. Adams Decl. ¶ 9.  POM Wonderful's television

20   commercials aired during such highly popular shows as CSI Miami, Criminal

21   Minds, Grey's Anatomy, Top Chef, Real Housewives, Survivor, the Amazing Race,

22   Larry King, Anderson Cooper 360, The Daily Show, The Stephen Colbert Report,

23   Myth Busters, Chelsea Lately, E! News, Barefoot Contessa, Modern Marvels, MS

24   Morning Joe, Biggest Loser, 30 Rock, and many others.  Adams Decl. ¶ 10.

25    POM Wonderful has also received industry accolades, including substantial

26   unpaid publicity and media recognition.  For example, within a few years after its

27   launch, in 2005 Plaintiff received the coveted Company of the Year Award at The

28   Beverage Forum, the industry's leading trade show.  Adams Decl. ¶ 11.  In addition,

in its 2005 annual "America's 100 Best" awards, Reader's Digest named Plaintiff's POM® branded pomegranate juice as the nation's "best healthy beverage." Adams Decl. ¶ 12 . Further, POM Wonderful's distinctive POM® pomegranate juice bottle, along with its famous POM® mark, have frequently appeared on television newscasts, cooking/lifestyle shows (including "Martha Stewart" and "Oprah"), and entertainment programs (most recently the hit show "Desperate Housewives"). Adams Decl. ¶ 13.

In short, POM Wonderful's POM® family of marks, which appear in all of its advertising, as well as on all of its products, store displays, point of sale material and its website, have become extremely well known, representing a high quality and well-known brand.

### D.    POM Wonderful's Trademark Registrations And Enforcement Activities

POM Wonderful owns the trademark POM® in connection with its products. Indeed, prior to POM Wonderful's adoption and use of POM®, no one in the food or beverage industry was known to be using POM in any way.

POM Wonderful actively polices third-party uses that it believes infringe its rights in the POM® Marks. For example, POM Wonderful regularly sends out cease and desist letters to third-parties who use POM® and has, on multiple occasions, required third-parties to modify their names and/or marks so as to avoid infringing POM Wonderful's rights. In one instance, a third party was manufacturing and marketing an energy drink beverage called "BLU POM" which was sold under the name "Xenergy." After being advised of POM Wonderful's rights, this third-party agreed to change its product name to eliminate the use of POM. Vasseghi Decl. ¶ 4.

Similarly, a well-known company famous for its ice cream introduced a smoothie called "Super Pom." This entity agreed to change its product name upon receiving a cease and desist letter from POM Wonderful. These changes by third-

1  parties show that POM Wonderful's competitors recognize its rights in the POM®

2  Marks.  Vasseghi Decl. ¶ 5.

3  **E.      Defendant's Infringing Conduct**

4      Defendant PUR produces, markets and sells several lines of energy drinks

5  under the PUR brand – namely PUR pŏm, PUR renew, PUR revolution, and PUR

6  răz.  Once POM Wonderful learned that Defendant was selling PUR pŏm, it sent a

7  "cease and desist" letter to Defendant via email informing Defendant about POM

8  Wonderful's rights. Vasseghi Decl. ¶ 7.  Within fifteen minutes Defendant's owner,

9  Mr. Robert Hubbard, responded that Defendant would not change the packaging for

10  the beverage.  *Id.*  Defendant has not changed its position even after being served

11  with the Complaint in the instant action.  *Id.*

12  **III.    POM IS ENTITLED TO INJUNCTIVE RELIEF**

13  **A.      Standards For Injunctive Relief**

14      The decision to grant a preliminary injunction rests within the sound

15  discretion of the trial court.  *See Stanley v. University of Southern California*, 13

16  F.3d 1313, 1319 (9th Cir. 1994).  Injunctive relief is the remedy of choice for

17  trademark cases.  *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th

18  Cir. 1988) ("Injunctive relief is the remedy of choice for trademark ... cases, since

19  there is no adequate remedy at law for the injury caused by a defendant's continuing

20  infringement").  Moreover, the Lanham Act specifically provides for injunctive

21  relief to prevent violations of trademark rights in Section 1125(a).  15 U.S.C. §

22  1116(a) (the court has the "power to grant injunctions according to principles of

23  equity and upon such terms as the court may deem reasonable, to prevent the

24  violation of any right" of the trademark owner.)

25      "A plaintiff seeking a preliminary injunction must establish that he is likely to

26  succeed on the merits, that he is likely to suffer irreparable harm in the absence of

27  preliminary relief, that the balance of hardships tips in his favor, and that an

28  injunction is in the public interest." *Boldface Licensing + Branding v. By Lee Tillett*,

*Inc.*, 2013 WL 1685464, *5 (C.D. Cal. 2013) citing *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009). "This recitation of the requirements for a preliminary injunction did not completely erase the Ninth Circuit's 'sliding scale' approach, which provided that the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Boldface Licensing + Branding* at *5; citing *Vanguard Outdoor, LLC v. City of Los Angeles*, 648 F.3d 737, 739 (9th Cir. 2011). As discussed more fully herein, injunctive relief is warranted in this case.

## IV. POM WONDERFUL HAS A HIGH LIKELIHOOD OF SUCCESS ON THE MERITS

### A. Trademark Infringement Legal Standard

POM Wonderful is highly likely to succeed on the merits of its infringement claim. To prevail on a claim of trademark infringement, POM Wonderful must prove (a) its owns protectable trademarks, and that (b) the alleged infringer's imitating mark is similar enough to cause a likelihood of confusion, or to cause mistake, or deceive consumers. *KP Permanent Make-Up, Inc. v. Lasting Impression, Inc.*, 543 U.S. 111, 117 (2004). A finding of likelihood of confusion will also support POM's claims of common law unfair competition and unfair competition pursuant to California Business & Professions Code Section 17200. *See Walter v. Jeremyel, Inc.*, 210 F.3d 1108, 1111 (9th Cir. 2000) ("the test for false designation under the Lanham Act, as well as the common law and statutory unfair competition claims, is whether there was a 'likelihood of confusion.'"); *Cleary v. News Corp.*, 30 F.3d 1255, 1262-1263 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business & Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act.").

/ / /

## B.   POM Wonderful Owns Valid Trademarks

As outlined in detail above, POM Wonderful owns many valid and protectable trademarks, evidenced by their certificates of registration.  Adams Decl. ¶ 2 and Exhibit A thereto.  A certificate of registration constitutes "prima facie evidence of the validity of the trademark and of the facts stated in the certificate." 15 U.S.C. § 1057(b).

Several of POM Wonderful's registered trademarks – Reg. Nos. 2637053, 3047447, 2640835, 2864641 and 2780314 – are incontestable pursuant to 15 U.S.C. Section 1065.  Incontestable marks are those which have been registered with the United States Patent and Trademark Office for more than five years.  The effect of incontestability is set forth in Section 33(b) of the Lanham Act:

> [The incontestable] registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce ... on or in connection with the goods or services specified in the affidavit filed under the provisions of section 1065….

15 U.S.C. § 1115(b).

Since POM Wonderful's registered trademarks are presumed valid.

## C.   PUR pŏm Is Likely to Cause Confusion With POM Wonderful's POM® Trademark

The Ninth Circuit has promulgated a multi-factor test to determine a plaintiff's probability of success on the likelihood of confusion question and, in turn, whether a preliminary injunction is warranted.  *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979); *see also Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012).  The following "*polar* factors" guide the determination of whether there is a likelihood of confusion: (1) strength of POM Wonderful's marks at issue; (2) similarity of the marks; (3) proximity or relatedness of the products or services; (4) defendant's intent on selecting its mark; (5) evidence of actual confusion; (6) marketing

channels used; (7) likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers. *Sleekcraft*, 599 F.2d at 348-49.  The two most important *Sleekcraft* factors are similarity of the marks and relatedness of the goods. *GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1205 (9th Cir. 2000). POM Wonderful easily satisfies not only those two factors, but most of the other factors as well.

> **1.    Similarity Of The Marks – Heavily Favors POM Wonderful**

In evaluating the similarity of the marks, "first, the marks must be considered in their entirety and as they appear in the marketplace; second, similarity is adjudged in terms of appearance, sound, and meaning; and third, similarities are weighed more heavily than differences." *GoTo.com, Inc.* at 1206.  "The more similar the marks in terms of appearance, the greater the likelihood of confusion. *K-Swiss, Inc. v. USA Aisiqi Shoes, Inc.,* 291 F. Supp.2d 1116, 1123 (C.D. Cal. 2003).  Further, if the marks are used "with identical products or services, likelihood of confusion would follow as a matter of course. *Brookfield Communications, Inc. v. West Coast Entm't, Inc.,* 174 F.3d 1036, 1056 (9th Cir. 1999).  "The first *Sleekcraft* factor – the similarity of the marks – has always been considered a critical question in the likelihood-of-confusion analysis." *Id.* at 1054.

Here, Defendant has literally copied POM Wonderful's  POM® trademark. The only difference is that Defendant does not write "POM" in capitalized letters, and there is a breve[2] above the "o", such that it is written as "pŏm."  Vasseghi Decl. ¶ 6  Given that "POM" and "pŏm" are virtually identical, in sight, sound and meaning, the "similarity of the marks" factor strongly supports a likelihood of confusion.

/ / /

---

[2] The half circle that appears above the "o" is called a breve.  It is the diacritical mark that when placed over a vowel, shortens its sound, as in the "a" in the word bat.

## 2.   Strength Of The Trademarks At Issue – Heavily Favors POM Wonderful

A strong mark is one that is likely to make a consumer think a product or service comes from a particular source. *See Official Airline Guides v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993) ("the stronger a mark, the more likely it is that consumers will think that a product or service comes from a particular source").  The "strength of a trademark is evaluated in terms of its conceptual strength and commercial strength." *GoTo.com, Inc.* at 1207.  To determine conceptual strength, marks are placed within one of several categories which are referred to, in increasing order of distinctiveness, as generic, descriptive, suggestive, arbitrary, or fanciful. *See, Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 (9th Cir. 1998).  The more distinctive on the scale, the stronger the mark.

To determine whether a term has become generic, courts look to "whether consumers understand the word to refer only to a particular producer's goods or whether the consumer understands the word to refer to the goods themselves." *KP Permanent Make-Up, Inc.* at 604.  POM® cannot refer to any good since it has no meaning, thus it is not generic for this reason alone.  Furthermore, it is a registered trademark, which provides a "specific presumption" that it is not generic. *Id.*

Nor is POM® descriptive. The POM® word mark (Reg. No. 2637053) was registered more than five years ago and has been used continuously in commerce for over a decade, making it incontestable.  "[A] defendant in a trademark infringement action cannot assert that an incontestable mark is invalid because it is descriptive and lacks secondary meaning." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 606 (9th Cir. 2005) citing *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 205 (1985).

POM® may be considered to be suggestive, but regardless of its exact categorization, it is further bolstered by its commercial strength, as well as its length of exclusive use, public recognition and uniqueness. *See Accuride Int'l, Inc. v.*

1  *Accuride Corp.*, 871 F.2d 1531, 1536 (9th Cir. 1989); *see also Brookfield*, *supra* at

2  1058 ("[t]he stronger a mark – meaning the more likely it is to be remembered and

3  associated in the public mind with the mark's owner – the greater the protection it is

4  afforded by the trademark laws").

5       The "commercial strength" of the POM® Marks is very high.  For over a

6  decade, POM Wonderful has been marketing and selling its POM® brand in the

7  United States.  Adams Decl. ¶ 3.  Just in 2011 and 2012, POM spent over $24

8  million marketing and promoting the POM® pomegranate juice brand in North

9  America alone.  *Id*.  This amount was spent on items such as marketing, promotions,

10  displays, point of sale material, advertising production, web media and trade shows.

11  *Id*.

12       Moreover, over 190 million bottles of POM® pomegranate juice have been

13  sold since 2002.  Adams Decl. ¶ 4.  These substantial investment in sales and

14  advertising have created exceptionally strong marks.  The "POM" trademark on its

15  beverages is recognized as an indicator of POM Wonderful's high-quality products

16  world-wide.  Finally, POM Wonderful's use of POM®  is exclusive.  To the extent

17  any other entity has wrongly used any of its trademarks, POM Wonderful has taken

18  steps to stop such use.  Vasseghi  Decl. ¶ 4.

19       In light of the strength of the POM® trademarks, the fourth factor strongly

20  supports a finding of likelihood of confusion.

21            **3.      Evidence Of Actual Confusion - Neutral**

22       While instances of actual confusion are still being investigated, courts have

23  consistently held, particularly in the context of preliminary injunction motions, that

24  evidence of actual confusion is not necessary for a finding of likelihood of

25  confusion.  "It is black letter law that actual confusion need not be shown to prevail

26  under the Lanham Act since actual confusion is very difficult to prove and the act

27  requires only a likelihood of confusion as to source."  *Lois Sportswear, U.S.A., Inc.*

28  *v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2nd Cir. 1986); *see also GoTo.com, Inc. v.*

1  *Walt Disney Co., 202 F.3d* 1199, 1206 (9th Cir. 2000); *Sleekcraft*, 599 F.2d at 353.

2  When, as in this case, the marks in question are virtually identical, or at least

3  extremely similar, and there is a reasonable likelihood that consumers will assume

4  that a mark is associated with another source because of that similarity, a likelihood

5  of confusion will be found.  *See, e.g. Academy of Motion Picture Arts v. Creative*

6  *House*, 944 F.2d 1446, 1456 (9th Cir. 1991).

7       Due to the high degree of similarity between pŏm and POM®, and given that

8  these marks are both used on beverages, this factor clearly and strongly supports a

9  finding of likelihood of confusion.

10        **4.        Defendant's Intent – Favors POM Wonderful**

11      Intent is not a requirement for infringement.  *E. & J. Gallo Winery v. Gallo*

12  *Cattle Co.*, 955 F.2d 1327, 1341, modified on other grounds, 967 F.2d 1280 (9th

13  Cir. 1992) ("[a] party claiming trademark infringement need not demonstrate that

14  the alleged infringer intended to deceive consumers.").   POM Wonderful sent a

15  cease and desist letter to PUR advising it that its use of "pŏm" infringed upon POM

16  Wonderful's rights. Vasseghi Decl. ¶ 7.  That same day, Mr. Robert Hubbard, Jr.,

17  the owner of Defendant, responded that he "will not be changing a thing on my

18  packaging, etc." *Id.*  Apparently, Defendant did not even bother to consult with an

19  attorney considering that he responded to the cease and desist letter within ***fifteen***

20  ***minutes***, summarily dismissing POM Wonderful's rights and concerns about

21  consumer confusion.

22      Defendant's cavalier attitude toward violating POM Wonderful's intellectual

23  property rights is not an isolated incident, as Defendant has engaged in other acts of

24  infringement as well.  "PUR" is actually a registered trademark of Pur Water

25  Purification Products, which filed suit against Defendant for trademark infringement

26  in Ohio earlier this year. Vasseghi Decl. ¶ 8 and Exhibit B thereto.

27      Additionally, given the similarity between the two trademarks, "when an

28  alleged infringer knowingly adopts a mark similar to another's, courts will presume

an intent to deceive the public." *Official Airline Guides v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993); *Glow Indus., Inc. v. Lopez*, 252 F.Supp.2d 962, 1002 (C.D. Cal. 2002).  *See also Fleischmann Distilling Corp. v. Maier Brewing Co.,* 314 F.2d 149, 158 (9th Cir. 1962) (defendant's adoption of similar marks indicates it expects confusion and resulting profit).  Even though PUR's intent cannot be established via direct evidence, the Court may presume an intent to deceive on the part of Defendant given its blatant copying of POM Wonderful's trademark.  *Official Airline Guides* at 1002.

Whether presumed from PUR's blatant copying or PUR's refusal to alter the name of its product descriptor after it learned that it was infringing on POM Wonderful's trademark, this factor strongly supports a finding of likelihood of confusion.

### 5.    Relatedness Of The Products – Heavily Favors POM Wonderful

There is a greater likelihood of confusion when the goods themselves are very similar. "[L]ess similarity between the marks will suffice when the goods are complementary, [and] the products are sold to the same class of purchasers, ... or the goods are similar in use and function." *Sleekcraft*, 599 F.2d at 350 (citations omitted).

Relatedness of a product is construed broadly for purposes of a trademark infringement analysis.  For instance, in *Polar Corp. v. PepsiCo, Inc.*, 789 F. Supp. 2d 219, 233 (D. Mass. 2011) defendant argued that its sodas were not "related" to plaintiff's slush drink product because (1) unlike plaintiff's product, its product was dispensed from stand-alone machines, and not sold in bottles; (2) plaintiff's products were slush drinks that were brightly-colored frozen beverages intended for immediate consumption, which were distinguishable in overall look and feel from other beverages; and (3) slush drinks are typically consumed in the afternoon as a snack, but carbonated soda beverages are typically consumed with a meal. *Id.*

1  Notwithstanding these differences the Court found the beverages to be related for

2  purposes of this relatedness factor and issued a preliminary injunction.  The Court

3  reasoned:

> Although slush beverages are "distinguishable in overall look and feel" from
> sodas and flavored water, that fact alone is not dispositive. ***The question is
> not whether consumers would confuse a slush drink with a soda, but
> whether they would reasonably conclude that a soda manufacturer and
> distributor would also produce slush drinks.***

8  *Polar Corp.* at 232 (emphasis added).

9  Here, Defendant's and POM Wonderful's products are clearly related: both

10  are beverages.  Both are pomegranate based or pomegranate flavored.  Both are sold

11  in single serve containers.  Both products are sold in the refrigerated section of

12  supermarkets. Vasseghi Decl. ¶ 9 and Exhibit C thereto.

13  While consumers know the difference between an energy drink and a juice or

14  flavored tea, as in *Polar Corp.*, the issue here is not whether consumers can

15  distinguish the difference between the two products but whether they believe that

16  POM Wonderful would also manufacture a pomegranate flavored energy drink.

17  Such a conclusion does not require much imagination.  In addition to the

18  overlapping trademark on these products, it is not uncommon for beverage

19  companies to sell both juice and energy drinks.  For example, Hansen's, the maker

20  of "Monster" energy drinks, started out as a fruit juice company and still sells fruit

21  juices, including pomegranate juice. Vasseghi Decl. ¶ 10.  Similarly, the Dr. Pepper

22  Snapple Group that originally started out selling the "Snapple" line of teas and fruit

23  juices now also sells an energy drink called Venom Energy.  *Id.*

24  Even though POM Wonderful and PUR's beverages are not identical in that

25  one is carbonated and comes in a can while POM Wonderful's products do not, they

26  are undoubtedly "related" for purposes of a likelihood of confusion analysis.

27  / / /

28  / / /

### 6.   The Marketing And Trade Channels For The Goods – Heavily Favors POM Wonderful

The Ninth Circuit has held that "[c]onvergent marketing channels increase the likelihood of confusion.  Therefore, the courts examine the proximity of the marketing channels to one another and whether direct competition exists." *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987).  Both POM Wonderful and Defendant sell single-serve beverages which sell in overlapping trade channels such as supermarkets and convenience stores.  Adams Decl. ¶ 16.  Trade channels in this case are not just convergent, but identical in some instances.   By way of example both POM Wonderful's products and Defendant's product are sold in Albertson's.  *Id.*  Also, POM Wonderful markets its POM® products through the internet, as does Defendant.  *Id*.  The overlap of trade channels and the similarity in marketing of these competing products strongly supports a finding of likelihood of confusion.

### 7.   Type Of Good And the Degree Of Care Likely Exercised By Consumers – Heavily Favors POM Wonderful

Beverages are considered a "fast moving consumer good" available to a large portion of the population, purchased by consumers frequently and with wide distribution and relatively low cost.  Adams Decl. ¶ 17.  A PUR beverage costs approximately $2.49.  Vasseghi Decl., ¶ 11.  POM Wonderful's 8 oz. POM® pomegranate juice product typically costs $1.99.  Adams Decl. ¶ 17.  As such, "consumers of such are likely to pay little care and attention when purchasing these products and therefore are inclined to be less sophisticated buyers." *Tri-Star Pictures, Inc. v. Unger*, 14 F.Supp.2d 339, 358 (S.D.N.Y. 1998); *CSC Brands LP v. Herdez Corp.*, 191 F.Supp.2d 1145, 1153 (E.D. Cal. 2001) ("Given that these beverages are sold in supermarkets and are low cost, the degree of care likely to be exercised by purchasers is minimal.  '[W]hen dealing with inexpensive products, customers are likely to exercise less care, thus making confusion more likely.'" *quoting Brookfield*, 174 F.3d at 1060.  Given the low degree of care exercised by

1  consumers in purchasing a relatively inexpensive single-serve beverage, this factor
2  strongly supports a finding of likelihood of confusion.

3  **8.      Likelihood Of Expansion - Neutral**

4  The "likelihood of expansion" factor requires a consideration of "whether
5  existence of the allegedly infringing mark is hindering the plaintiff's expansion
6  plans." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005).
7  The likelihood of expansion factor "is relatively unimportant where the two
8  companies already compete to a significant degree." *Brookfield*, 174 F.3d at 1055.

9  As previously shown, POM Wonderful and Defendant are competitors in the
10 beverage product market.  Both products are sold in the same trade channels.
11 Therefore, expansion is similar for both parties making this factor relatively
12 unimportant in the likelihood of confusion analysis.

13 **V.    POM WONDERFUL WILL LIKELY SUFFER IRREPARABLE
       HARM IF AN INJUNCTION IS NOT ISSUED**

14
15 POM Wonderful has shown it is highly likely to succeed on the merits and
16 will also likely suffer irreparable injury for which there is no adequate remedy at
17 law if an injunction is not granted.  Specifically, the irreparable harm to POM
18 Wonderful is (1) Defendant's use of pŏm improperly connects the product to POM
19 Wonderful; (2) Defendant's use causes consumers to be confused regarding whether
20 or not POM Wonderful is affiliated with or sponsors the product; (3) POM
21 Wonderful has no control over the manufacturing or quality control of the PUR pŏm
22 beverage –therefore, any quality or health issues related to Defendant's energy drink
23 beverage – a highly caffeinated, sugar laden-product  – could be attributed to POM
24 Wonderful, resulting in damaged goodwill and lost sales; and (4) the ongoing use of
25 pŏm by an infringer decreases the distinctiveness of the highly distinctive POM®
   brand.

26 Unfair competition damages are normally not susceptible to adequate
27 measurement because it is virtually impossible to ascertain the precise economic
28

1  consequences of intangible harm, such as damage to goodwill, reputation and

2  business.  *See Pepsico Inc. v. Reyes*, 70 F.Supp.2d 1057, 1060 (C.D. Cal. 1999).

**A.   Serious Questions On The Merits And The Balance Of Hardships Tips Sharply In POM Wonderful's Favor.**

**1.   Serious Questions On The Merits.**

Having established a likelihood that POM Wonderful will prevail on the

merits, this case presents a "serious question" on the merits, which only requires that

the moving party have "a fair chance of success on the merits." *Sierra On-Line, Inc.*

*v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).  POM Wonderful

contends that the established "serious question" standard, combined with the

balance of hardships, amply supports issuing immediate injunctive relief.

**2.   The Balance Of Hardships Tips Sharply In Favor Of POM Wonderful.**

If the Court determines that there is a serious question on the merits, the

balance of hardships then becomes the critical element in the analysis.  *Sierra On-*

*Line*, 739 F.2d at 1421.  The balance of hardships tips heavily in POM Wonderful's

favor.  As this District has recognized, damages caused by trademark infringement

are, "by their very nature irreparable and not susceptible to adequate measurement

for remedy at law." *C & C Organization v. AGDS Inc.,* 676 F. Supp. 204, 208 (C.D.

Cal. 1987).  Here, POM Wonderful is at risk of losing all of its meaningful

trademark protection, the lifeblood of the POM® brand.  If POM Wonderful can no

longer control the use of its brand, and thereby its reputation for quality, then the

millions of dollars spent over the last decade on advertising, sponsorships,

maintenance of the highest quality standards, and the generation of substantial

goodwill will have been virtually obliterated, or at least severely compromised.

This risk is further magnified by the fact that PUR pŏm is an energy drink.  This

year the FDA has investigated several energy drink manufacturers after consumers

reported falling ill from consuming energy drinks.  One instance resulted in a

fatality.  Vasseghi Decl. ¶ 13.

On the other hand, Defendant does not face any risk of undue harm. Defendants PUR pŏm product was introduced only a short time ago and has not yet achieved any meaningful market presence in the United States.  At most, an injunction would result in a delay in the marketing and promotion of a beverage, a loss which could be adequately covered by an appropriate bond.  Furthermore, PUR pŏm is one of four kinds of beverages Defendant sells.  If it is enjoined from selling PUR pŏm, this will not cause it to shut down – it can continue to do business, selling its other flavors and rename its PUR pŏm product.

### 3.    Injunction Is In The Public Interest

A plaintiff seeking an injunction must establish that the injunction is in the public interest. *Winter, supra* at 381–82.  This factor is easily met in trademark infringement cases since "[t]he public interest in preventing trademark infringement is avoiding confusion in the market place."  *Seed Services, Inc. v. Winsor Grain, Inc.*, 868 F.Supp.2d 998, 1005 (E.D. Cal. 2012).  The consuming public deserves to not be fooled into thinking that POM Wonderful's product is in the PUR pŏm product, and that POM Wonderful is associated with or sponsors the product in any way.

## VI.    CONCLUSION

For the foregoing reasons, POM Wonderful respectfully requests that the Court issue a preliminary injunction against PUR Beverages precluding it from selling or advertising its PUR pŏm product as outlined in the concurrently filed proposed Order.

DATED:  November 22, 2013          ROLL LAW GROUP PC


                                   By:  /s/ Michael M. Vasseghi /s/
                                        Michael M. Vasseghi
                                        Attorneys for POM WONDERFUL LLC

{078602.3}

21

PLAINTIFF POM WONDERFUL LLC'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION