1  JAMES J.S. HOLMES    Bar No.126779
   james.holmes@sedgwicklaw.com
2  HEATHER L. McCLOSKEY   Bar No.193239
   heather.mccloskey@sedgwicklaw.com
3  CHANTAL Z. HWANG   Bar No. 275236
   chantal.hwang@sedgwicklaw.com
4  SEDGWICK LLP
   801 S. Figueroa St., 19th Fl.
5  Los Angeles, CA  90017-5556
   Telephone:  (213) 426-6900
6  Facsimile:   (213) 426-6921

7

8  Attorneys for Defendant
   ROBERT G. HUBBARD dba PUR Beverages and
9  Northwest Beverage Distributors

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12

13  POM WONDERFUL LLC, a Delaware        Case No. CV 13-06917
    limited liability company,
14                                        **OPPOSITION  TO MOTION FOR**
                     Plaintiff,           **PRELIMINARY INJUNCTION**
15
           v.
16                                        Hon. Margaret M. Morrow
    ROBERT G. HUBBARD d/b/a PUR
17  BEVERAGES, et al.,                    Date:     January 6, 2014
                                          Time:     10:00 a.m.
18                   Defendants.          Place:    Courtroom 780

19

20

21        Defendant Robert G. Hubbard dba "pūr" Beverages and Northwest

22  Beverage Distributors ("Hubbard" or "Defendant") submits the following

23  memorandum of points and authorities in opposition to plaintiff POM Wonderful

24  LLC's ("POM") Motion for Preliminary Injunction.

25  / / /

26  / / /

27  / / /

28  / / /

                                1

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.    INTRODUCTION....................................................................1

II.   PERTINENT FACTS...............................................................2

    A.    pūr Beverage Products ...................................................2

    B.    POM Wonderful's Marks .................................................3

III.  ARGUMENT .......................................................................5

    A.    Applicable Standards For Obtaining Preliminary Injunctive Relief................................................................5

    B.    Likelihood Of Success On The Merits .................................5

        1.    Plaintiff Will Not Succeed On Any Claims Based On California Law ..........................................................5

        2.    Plaintiff Has Failed To Show It Is Likely To Succeed On The Merits Of Its Trademark Infringement Claim...........................................................6

            a.    Plaintiff's Standard Word Mark "POM" Has Become Generic ......................................6

            b.    There Is No Likelihood Of Confusion .................9

                (1)    Similarity of the Marks ............................9

                (2)    Strength of the Trademarks.......................12

                    (a)    Plaintiff's Marks Are Weak Due To Their Descriptive Nature, And Limited To The Specific Product Category For Which Registration Was Obtained................................12

                    (b)    "pūr"'s Use Of "pŏm" Is A Classic Fair Use ...............................14

                (3)    Evidence of Actual Confusion...................16

                (4)    Defendant's Intent.....................................17

                (5)    Relatedness of the Products .......................18

                (6)    Marketing and Trade Channels...................19

i

(7)   Type of Goods, Degree of Consumer Care ........................... 20

(8)   Likelihood of Expansion ........................... 20

(9)   Conclusion re Likelihood of Confusion ....................... 21

C.   Likelihood Of Irreparable Harm ............................... 21

D.   Balance of Hardships ............................... 22

E.   The Public Interest ................................... 23

IV.   CONCLUSION ............................................... 24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AM General Corp. v. DaimlerChrysler Corp.*,
   311 F.3d 796 (7th Cir. 2002)...................................................................22

*Am. Historic Racing Motorcycle Ass'n, Ltd. v. Team Obsolete Promotions*,
   33 F. Supp. 2d 1000 (M.D. Fl. 1998), aff'd, 233 F.3d 577 (11th Cir. 2000) ....7

*AMF Inc. v. Sleekcraft Boats*,
   599 F.2d 341 (9th Cir.1979)...............................................................9, 10

*Anti-Monopoly, Inc. v. General Mills Fun Group*,
   611 F.2d 296 (9th Cir. 1979)..................................................................7

*Application of Quik-Print Copy Shops, Inc.*,
   616 F.2d 523 (C.C.P.A. 1980) ..............................................................12

*Brookfield Comms., Inc. v. West Coast Entm't Corp.*,
   174 F.3d 1036 (9th Cir. 1999)............................................................9, 10

*CES Publ'g Corp. v. St. Regis Publ.*,
   531 F.2d 11 (2d Cir. N.Y. 1975) .............................................................9

*Churchill Vill., L.L.C. v. Gen. Elec. Co.*,
   169 F. Supp. 2d 1119 (N.D. Cal. 2000) ....................................................6

*Churchill Village v. General Electric*,
   361 F.3d 566 (9th Cir. 2004)..................................................................6

*Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co.*,
   125 F.3d 28 (2d Cir. 1997)...................................................................15

*CSC Brands LP v. Herdez Corp.*,
   191 F.Supp.2d 1145 (E.D. Cal. 2001).......................................................20

*Drakes Bay Oyster Co. v. Jewell*,
   729 F.3d 967 (9th Cir. 2013)..................................................................5

*Entrepreneur Media, Inc. v. Smith*,
   279 F.3d 1135 (9th Cir. 2002................................................................13

*Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*,
   198 F.3d 1143 (9th Cir. 1999)............................................................6, 7

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc.*,
   618 F.3d 1025 (9th Cir. 2010)..........................................................14, 15

*Genesee Brewing Co. v. Stroh Brewing Co.*,
   124 F.3d 137 (2d Cir. 1997)................................................................8, 9

*GoTo.com, Inc. v. Walt Disney Co.*,
   202 F.3d 1199 (9th Cir. 2000)............................................................9, 10

iii

*In re Apple and AT & T iPad Unlimited Data Plan Litig.*,
    802 F. Supp. 2d 1070 (N.D. Cal. 2011) ............................................ 6

*In re Loew's Theatres, Inc.*,
    769 F.2d 764 (Fed. Cir. 1985) ................................................ 13, 18

*In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    828 F.2d 1567 (Fed. Cir. 1987) .............................................. 13, 19

*In re The Outdoor Recreation Group*,
    81 U.S.P.Q.2d 1392,
    2006 WL 3616347 (T.T.A.B. 2006) ......................................... 13, 19

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
    543 U.S. 111 (2004) ........................................................... 14, 16

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
    571 F.3d 873(9th Cir. 2009) ....................................................... 23

*Miller Brewing Co., Miller Brewing co. v. G. Heileman Brewing Co.*,
    561 F.2d 75 (7th Cir. 1977) .......................................................... 8

*Miss World (UK), Ltd. v. Mrs. America Pageants, Inc.*,
    856 F.2d 1445 (9th Cir. 1988) ..................................................... 13

*Norwest Mortg., Inc. v. Super. Ct.*,
    72 Cal. App. 4th 214 (1999) ......................................................... 6

*Official Airline Guides, Inc. v. Goss*,
    6 F.3d 1385 (9th Cir. 1993) .......................................................... 7

*Packman v. Chicago Tribune Co.*,
    267 F.3d 628, 60 U.S.P.Q.2d 1245 (7th Cir. 2001) ....................... 14

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*
    469 U.S. 189, 199, n. 6 (1985) .................................................... 13

*Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*,
    718 F.2d 327 (9th Cir. 1983),
    rev'd on other grounds, 469 U.S. 189, (1985) .............................. 6

*Playboy Enterprises v. Netscape Communications*,
    55 F.Supp.2d 1070 (CD CA 1999) .............................................. 17

*Polar Corp. v. PepsiCo, Inc.*,
    789 F.Supp.2d 219 (D. Mass. 2011) ........................................... 18

*Qualitex Co. v. Jacobson Prods. Co., Inc.*,
    514 U.S. 159 (1995) ..................................................................... 9

*Scotts Co. v. United Industries Corp.*,
    315 F.3d 264 (4th Cir. 2002 ....................................................... 22

*Standard Oil Co. v. FTC*,
    577 F.2d 653 (9th Cir. 1978) ........................................................ 4

iv

*Sullivan v. Oracle Corp.,*
  51 Cal.4th 1191 (2011) ...........................................................................5

*Surgicenters of America, Inc. v. Medical Dental* Surgicenters,
  601 F.2d 1011 (9th Cir. 1999)................................................................7

*Two Pesos, Inc. v. Taco Cabana, Inc.,*
  505 U.S. 763 (1992) ...............................................................................12

*United States Shoe Corp. v. Brown Group, Inc.,*
  740 F. Supp. 196, (S.D.N.Y. 1990),
  aff'd without op., 923 F.2d 844 (2d Cir. 1990) ...................................15

*Warner Publication, Inc. v. Popular Publications, Inc.,*
  87 F.2d 913 (2d Cir. 1937).....................................................................14

*Weinberger v. Romero–Barcelo,*
  456 U.S. 305 (1982) ...............................................................................23

*Winter v. Natural Resources Defense Council, Inc.,*
  555 U.S. 7 (2008) ..............................................................................5, 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

v

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This case does not present a close question.  Rather, Plaintiff is clearly overreaching – attempting to monopolize the use of the term "pom" as it relates to all things pomegranate – despite the clearly descriptive nature of the term. Moreover, sale of the parties' respective products do not present any likelihood of confusion, and Plaintiff has presented no evidence to suggest the contrary is true.

Defendant Robert G. Hubbard is an entrepreneur who has launched a line of health-conscious energy drinks under the "pūr" name.  He's a classic example of the American dream – developing a product that fills a growing consumer need he identified in the marketplace.  Funding the fledgling business himself, Hubbard has only recently commenced limited distribution of his line of "pūr" energy drink products.  The interruption of the budding growth of this business on the weak grounds presented by Plaintiff is not a result justified by applicable law.

Plaintiff has waged this same war against numerous others it perceives as intruders into its pomegranate empire.  It has succeeded in forcing several parties to settle claims of alleged infringement.  In the only instance in which a Court reached any merits of its claims, that Court denied Plaintiff preliminary injunctive relief for many of the same reasons it should be denied in this case. Plaintiff has also spent a great deal of time and money asserting claims against other pomegranate-empire intruders by asserting they made false claims as to the contents and/or benefits of their respective pomegranate products.  All the while, the FTC determined, Plaintiff itself was deliberately making deceptive representations concerning its own products.  Plaintiff is nothing less than a litigation bully and the weakness of its claims in this case illustrate that fact.

1

A plain review of the facts of this case demonstrates that it amounts to much ado about nothing. Plaintiff's marks are not infringed by Defendant's conduct. There has been and will be no consumer confusion. Plaintiff has failed to make a sufficient showing to justify any injunctive relief.

## II. PERTINENT FACTS

### A. pūr Beverage Products

Hubbard began doing business as Northwest Beverage Distributors in 2009. (Declaration of Robert G. Hubbard ("Hubbard Decl."), ¶2.) Commencing in 2012, under the "pūr" name, Hubbard launched a line of health-conscious energy drinks. (*Id.*) The initial offering, first distributed in September of 2012, was "pūr renew", an energy drink flavored with the acai berry. (*Id.*) The second offering, first distributed in April of 2013, was "pūr pŏm", a pomegranate-flavored energy drink, and the product about which Plaintiff complains in this lawsuit. (*Id.*) The third flavor of energy drink that pūr plans to offer will be "pūr raz", a raspberry-flavored beverage. The "pūr pŏm" and "pūr raz" beverages are caffeine-free and all natural. (*Id.*)

Hubbard named the varieties of pūr products based on the dominant flavor of the product – "raz" for raspberry, "pŏm" for pomegranate, and while "renew" was initially to be called "acai", the public has trouble pronouncing that name, so Hubbard opted for the easier-to-pronounce "renew" instead. (*Id.*, ¶3.) The intent (and effect) of naming the product "pūr pŏm" was to describe the flavor of the drink -- pomegranate. (*Id.*)

"pūr renew" and "pūr pŏm" have been distributed in Alaska, Washington, Idaho, Montana, North Dakota, South Dakota, Minnesota, Indiana, Michigan and Ohio. (*Id.*, ¶7.) They have also been distributed through Albertsons grocery stores in Nevada, Arizona, New Mexico, Texas, Utah and Colorado. (*Id.*) A total of fewer than 19,000 cans pūr pŏm have been distributed in these states

2

since September of 2012.[1]  Just 375,000 cans of pūr pŏm have been
manufactured.  (*Id.*)  No pūr products have been distributed in California, nor are
they offered for sale to California over the internet or otherwise.[2]  (*Id.*, ¶8.)  Not
even a single can of pūr beverage has been sold in California.[3]

On the pūr pŏm can's label, Hubbard proudly takes credit as the source of
"pūr pŏm", leaving no room for confusion.  Defendant's "pūr pŏm" label reads:

Family Owned & Operated by the Hubbard Family • Bloomington, MN
Contact PUR Beverages: www.purbeverages.com • 612-PUR-ACAI

### B.   POM Wonderful's Marks

POM Wonderful attaches 20 trademark registrations to its First Amended
Complaint ("FAC").  Nine of the 20 registered trademarks include a heart-shaped
"O" in POM.  A review of the advertising materials attached to the FAC
demonstrates that Plaintiff uses this stylized version of its mark in all marketing
materials, and the word POM with that stylized heart-shaped "O" is the main
feature of all materials.  Plaintiff holds registrations in various categories,
including fruit juices, fresh fruits, nutritional supplements, topping syrup, tea-
based beverages, non-alcoholic fruit extracts for use in the preparation of
beverages, fruit smoothies and nutritional bars.  Plaintiff does not hold any
registration for energy drinks, nor does Plaintiff sell any energy drinks.

---

[1]  In contrast, POM Wonderful claims to have sold more than 190,000,000
bottles of POM Wonderful pomegranate juice.
[2]  This is despite Plaintiff's counsel's efforts to solicit sales from Defendant.
(Hubbard Decl., ¶9.)  The sample can of "pūr pŏm" obtained by Plaintiff's
Counsel was purchased at an Albertsons grocery store in Texas, per the receipt.
Notably, Plaintiff's counsel fails to mention the location of the store at which the
can of pūr pŏm was purchased, yet implies it was sold within California.
Plaintiff's allegation that Defendant has sold the product in California
approaches sanctionable conduct, since Plaintiffs counsel would not have tried
so hard to solicit sales of pūr pŏm to California had it not known there had
previously been none.  (*Id.*, ¶9.)
[3]  Defendant filed an Answer in this action while a *pro se* litigant without a full
understanding of the concept of personal jurisdiction.  Defendant may seek leave
to amend his Answer to add as a defense the lack of personal jurisdiction, given
that he has no contacts whatsoever with the State of California.

3

1      Plaintiff is widely considered a highly litigious company.  Plaintiff has

2  pursued countless claims against other producers of pomegranate juice and juice-

3  based products on the basis of false advertising.  At the same time as Plaintiff

4  was acting as the "industry watch dog", it was itself making false and misleading

5  claims in advertising as to the health and other benefits of its products.  Notably,

6  the FTC found that the misrepresentations made by POM were made

7  deliberately.[4]  Plaintiff has also been accused of trying to "buy" results and

8  endorsement from researchers to support the promotional claims it has made.

9  (Declaration of Heather L. McCloskey ("McCloskey Decl."), Exh. V.)

10      Plaintiff has also filed at least 10 lawsuits for trademark infringement since

11  2005, and has settled 7 of those cases.  (McCloskey Decl., ¶24.)  As a result,

12  there has been no judicial determination of the strength or scope of the rights

13  conferred Plaintiff by virtue of its federally registered marks.  In the one instance

14  when Plaintiff attempted to obtain a preliminary injunction against Naked Juice, a

15  case very similar to this, Plaintiff made the same arguments and relied upon the

16  same authorities as in the current motion.  (Defendant's Request for Judicial

17  Notice ("RJN"), Exh. 1, *Pom Wonderful, LLC v. Naked Juice Co. of Glendora,*

18  *Inc.,* USDC CDCA Case No. CV 05-8993 NM (MANx))  In the *Naked Juice*

19

20  ─────────────────

[4] In the January 10, 2013 Opinion by the Federal Trade Commission, attached as Exhibit 2 to the RJN, the Commissioner wrote:

21          We agree with the ALJ's (Administrative Law Judge) conclusion that
           Respondent's (***POM Wonderful LLC) actions were serious and***
22         ***deliberate***.  Respondents claimed the Challenged POM Products treat,
           prevent or reduce the risk of heart disease, prostate cancer, or ED.
23         Respondents made serious yet unsupported claims about three
           diseases, some of which can be life-threatening.  Respondents also
24         made numerous deceptive representations and were aware that they
           were making such representations despite the inconsistency between
25         the results of some of their later studies and the results of earlier
           studies to which Respondents refer in their ads.  *See supra* Section V;
26         *see also Standard Oil Co. v. FTC*, 577 F.2d 653, 662 (9th Cir. 1978)
           ("Among the circumstances which should be considered in evaluating
27         the relation between the order and the unlawful practice are whether
           the respondents acted in blatant and utter disregard of the law.").
28         (RJN, Exh. 2, p. 49, emphasis added.)

4

1  case, Judge Nora Manella denied Plaintiff the requested injunction, for reasons
2  that are equally applicable in this case.

3          Despite these enforcement efforts by Plaintiff, there has been a
4  proliferation of "pom"-flavored products entering the market, signifying perhaps
5  that the fundamentally descriptive mark has become generic.  A quick internet
6  search revealed no fewer than 20 different beverages, foods or products using the
7  word "pom" to describe the pomegranate flavor of the product.  (McCloskey
8  Decl., Exh. A through U.)

9  **III.   ARGUMENT**

10         A.   <u>**Applicable Standards For Obtaining Preliminary Injunctive**</u>
11              <u>**Relief**</u>

12         In order to obtain preliminary injunctive relief, plaintiff must establish
13  "that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable
14  harm in the absence of preliminary relief, that the balance of equities tips in [its]
15  favor, and that an injunction is in the public interest."  *Drakes Bay Oyster Co. v.*
16  *Jewell*, 729 F.3d 967 (9th Cir. 2013), citing *Winter v. Natural Res. Def. Council,*
17  *Inc.*, 555 U.S. 7 20 (2008).

18         B.   <u>**Likelihood Of Success On The Merits**</u>

19              1.   **Plaintiff Will Not Succeed On Any Claims Based On**
20                   **California Law**

21         As a preliminary matter, Plaintiff's claim that Defendant distributed "pūr
22  pŏm" in California is provably false.  (Hubbard Decl., ¶8.)  Moreover, given the
23  limited extent of sales made by Defendant of the allegedly infringing product, it
24  cannot legitimately be argued that such sales outside of California caused injury
25  within California that justifies the extraterritorial application of California law.

26         California courts have long acknowledged a general presumption against
27  the extraterritorial applications of state laws. *Sullivan v. Oracle Corp.*, 51 Cal.4th
28  1191, 1207 (2011). Applying that presumption, state and federal courts have

5

concluded that the California Unfair Competition Law does not reach claims of non-California residents arising from conduct occurring entirely outside of California. *Norwest Mortg., Inc. v. Super. Ct.*, 72 Cal. App. 4th 214 (1999) (holding that the unfair competition law was inapplicable to "injuries suffered by non-California residents, caused by conduct occurring outside of California's borders, by defendants whose headquarters and principal places of operations are outside of California"); *In re Apple and AT & T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1076 (N.D. Cal. 2011) (dismissing unfair competition claims by non-California residents who purchased their iPad and data plans outside of California); *Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126-27 (N.D. Cal. 2000) (rejecting claims by non-California consumers where none of the defendant's written or oral communications made in California was directed to consumers outside the state), aff'd, 361 F.3d 566 (9th Cir. 2004).

> ## 2. Plaintiff Has Failed To Show It Is Likely To Succeed On The Merits Of Its Trademark Infringement Claim
>
> ### a. <u>Plaintiff's Standard Word Mark "POM" Has Become Generic</u>

A generic term is one that refers "to the genus of which the particular product or service is a species." *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999). In other words, generic terms are "common descriptive names" for what the product is. *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 718 F.2d 327, 329 (9th Cir. 1983), rev'd on other grounds, 469 U.S. 189, (1985) (contrasting generic, or "common descriptive" terms with descriptive, or "merely descriptive" terms). If a term is generic, "it cannot be the subject of trademark protection under any circumstances, even with a showing of secondary meaning." *Filipino Yellow Pages*, 198 F.3d at 1146. "An abbreviation is treated similarly to its underlying phrase where the abbreviation imparts the original generic or descriptive connotation." *Am.*

6

1    *Historic Racing Motorcycle Ass'n, Ltd. v. Team Obsolete Promotions*, 33 F.

2    Supp. 2d 1000, 1004 (M.D. Fl. 1998), aff'd, 233 F.3d 577 (11th Cir. 2000).

3         In determining whether a term is generic, courts often rely on the "who-

4    are-you/what-are-you" test set forth in *Official Airline Guides, Inc. v. Goss*, 6

5    F.3d 1385, 1391 (9th Cir. 1993).  Under that test, a protectable mark "answers the

6    buyer's questions 'Who are you' 'Where do you come from?' 'Who vouches for

7    you?'" *Id.* (quoted in *Filipino Yellow Pages*, 198 F.3d at 1147).  But the generic

8    name of the product answers the question "What are you?" *Id.*  If the primary

9    significance of a term is to describe "the type of product rather than the

10   producer," it is a generic term.  *Anti-Monopoly, Inc. v. General Mills Fun Group*,

11   611 F.2d 296, 304 (9th Cir. 1979).

12        Ultimately, though, the test of whether a term is generic is how it is

13   understood by the consuming public.  *Surgicenters of America, Inc. v. Medical*

14   *Dental* Surgicenters, 601 F.2d 1011, 1015 n.11 (9th Cir. 1999).  Dictionary

15   definitions are relevant in this regard.  *See, Id.* ("While not determinative,

16   dictionary definitions are relevant and often persuasive in determining how a

17   term is understood by the consuming public.")  Here, *Urban Dictionary*, which is

18   a crowd-sourced, online dictionary, defines "pom" as referring to a pomegranate

19   (among other definitions).  (McCloskey Decl., Exh. W.)

20        Other factors courts consider in determining genericness are whether other

21   companies market similar products under the same term and how the term itself

22   is used by the party opposing genericness (here, Plaintiff).  *See, e.g.,*

23   *Surgicenters*, 601 F.3d at 1017; *Filipino Yellow Pages*, 198 F.3d at 1150-51.

24        There can also be no dispute that a substantial variety of competitors in the

25   beverage industry routinely market their pomegranate-flavored beverages as

26   "pom".  Even a cursory internet search for pomegranate-flavored beverages

27   reveals that use of the term "pom" to describe their pomegranate-flavored

28   beverages is ubiquitous.  (McCloskey Decl., Exhs. A through U.)  "Pom" is being

7

used routinely in the market to describe the type and flavor of beverage being offered, as opposed to the producer of that beverage itself.  In fact, even POM's own website confirms that use of the term "pom" is synonymous with the pomegranate-flavoring in the beverage industry. Under the FAQ portion of its website, POM notes, "What is POM Wonderful? POM Wonderful is a global brand committed to innovation and wellness. We grow and market ***pomegranates and pomegranate-based products*** that are healthy, honest and beneficial to the well-being of humankind."

*Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137 (2d Cir. 1997) is also instructive.  In *Genesee Brewing*, Genesee Brewing Co. had been marketing and selling a product called, "JW Dundee's Honey Brown Lager." A competitor, Stroh Brewing Co., later began marketing their own product called, "Red River Valley Honey Brown Ale." Genesee sought to restrain Stroh from marketing Red River Honey Brown Ale, claiming that the phrase "honey brown" should be protected and would tend to cause confusion as to the origin of the product if used by Stroh.  The district court denied Genesee's motion for preliminary injunction and the Second Circuit affirmed.  In doing so, the appellate court found that the term "honey brown" was generic because those words were necessary to describe that particular type of ale.

Specifically, the court recognized the numerous styles of beer in the marketplace, the names of which consist of a time-honored beer category modified by a new, creative ingredient or flavor.  *Genesee Brewing Co.*, 124 F.3d at 148.  One such category of beers in the marketplace is known as "brown ale." *Id.*  And because the addition of the word "honey" is necessary to indicate a brown ale that is brewed with honey, the Court found that Stroh has the right to call its beer a "Honey Brown Ale." *Genesee Brewing Co.*, 124 F.3d at 149; *See, also*, *Miller Brewing Co.*, *Miller Brewing co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 81 (7th Cir. 1977) ("[Miller] could not acquire the exclusive right to use

8

the common descriptive word 'light' as a trademark for that beer. Other brewers whose beers have qualities that make them 'light' as that word has commonly been used remain free to call their beer 'light.' Otherwise a manufacturer could remove a common descriptive word from the public domain by investing his goods with an additional quality, thus gaining the exclusive right to call his wine 'rose', his whiskey 'blended', or his bread 'white.'")  To hold otherwise, the court reasoned, would be tantamount to granting a monopoly on the name of the category, and subsequent producers would lose the right to "describe [their] goods as what they are." *Genesee Brewing Co.*, 124 F.3d at 148. (quoting *CES Publ'g Corp. v. St. Regis Publ.*, 531 F.2d 11, 13 (2d Cir. N.Y. 1975).

The same result would hold true here.  If POM were given the right to preclude others from describing the flavor of their beverages as "pom" (i.e. pomegranate), competitors would lose the right to describe their goods as what they are:  a pomegranate-flavored beverage.  Because POM would essentially be given a monopoly over a flavored beverage, its mark is likely generic and cannot support its motion for preliminary injunction.

### b.   There Is No Likelihood Of Confusion

A proper analysis of the *Sleekcraft* factors demonstrates that Plaintiff is unlikely to succeed on the merits of its trademark infringement claim because it will be unable to establish a likelihood of confusion.  See *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir.1979).

### (1)   Similarity of the Marks

The first *Sleekcraft* factor – similarity of the marks – is always a "critical question" in the likelihood of confusion analysis.  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000).  "The greater the similarity between the two marks at issue, the greater the likelihood of confusion." *Brookfield Comms., Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1053 (9th Cir. 1999) (citing *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 163-164 (1995).

9

Similarity in appearance, sound and meaning are each considered. *GoTo.com, supra.* "The marks must be considered in their entirety and as they appear in the marketplace, with similarities weighed more heavily than differences." *Brookfield Comms., supra.* In this instance, the similarity of the marks and the manner in which they are used in commerce simply does not support a finding of likelihood of confusion. This element should be weighed heavily by the Court in its *Sleekcraft* analysis.

The parties' respective marks (as used on product packaging) appear below:




Defendant's product                    Plaintiff's Product

Several aspects of Defendant's use of "pŏm" render it entirely different from Plaintiff's use of "POM". In fact, the *only* similarity is that the word "pom" appears on both packages, but the use differs in appearance and meaning. Defendant uses the word "pŏm" *always* in all lowercase letters and *only* in

conjunction with the word "pūr" – as "pūr pŏm".  (Hubbard Decl., ¶4.)
Moreover, Defendant always uses the word "pŏm" with the *breve* sign.  (*Id.*)
Finally, and importantly, the word "pŏm" appears at the bottom of the front label
of the can in small print, describing the flavor of the beverage, while the word
"pūr" appears with a logo in large font in the center of the label.  The emphasis of
Defendant's label is placed on the "pūr" and not the "pŏm".  As discussed below,
this use of the word "pom" by Defendant is a descriptive use, and the
arrangement of the mark on the "pūr pŏm" label strongly suggests that the use is
descriptive and not a signifier of source.

In contrast, Plaintiff uses "POM" – in its stylized form, with the heart-
shaped "O" – as a mark, in all capital letters, and as the mark (whereas
Defendant's mark is "pūr").  Viewing the products as they appear in aisles of
grocery stores, the parties' marks are not similar in appearance.  As can be seen
above, the shapes of the drink containers are drastically different.  Plaintiff's
container is two connected spheres, while Defendant's is a simple cylindrical can.
Defendant's drink is shelved at room temperature in the soda aisle, and not in any
refrigerated section or the juice section of the store.  (Hubbard Decl., Exh. 3.)

Considering the similarities and differences between Plaintiff's use of the
"POM" mark for juice and Defendant's use of the name "pūr pŏm" for its energy
drink, there can be no question that there is little similarity between the marks.
When viewed as the products are by customers, the similarities are even more
trivial, given the different bottles and food categories.  Consideration of this
factor weighs heavily against any finding of likelihood of confusion.

/ / /

/ / /

/ / /

/ / /

/ / /

11

|  |  |
|---|---|
| 1 | **(2)    Strength of the Trademarks** |
| 2 | **(a)    Plaintiff's Marks Are Weak Due To** |
| 3 | **Their Descriptive Nature, And Limited** |
| 4 | **To The Specific Product Category For** |
| 5 | **Which Registration Was Obtained** |

In its First Amended Complaint, Plaintiff identifies 20 trademarks registered with the United States Patent and Trademark Office.  While Plaintiff does hold a registration for the standard word mark "POM", the vast majority of Plaintiff's marks include the stylized heart-shaped "O" in POM.  The tougher closer question is whether Defendant's use of "pūr pŏm" infringes Plaintiff's standard work mark "POM".  Given the descriptive nature of the mark and the different manner in which the parties use "pom" in their marks, the weakness of Plaintiff's mark precludes a finding of infringement of Plaintiff's standard word mark, let alone the stylized marks employing the heart-shaped "O".

The standard word mark POM when used in connection with pomegranate juice is merely a descriptive term, not capable of trademark protection unless secondary meaning is established.  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992).   A mark is merely descriptive if it immediately conveys to one seeing or hearing it knowledge of the ingredients, qualities, or characteristics of the goods or services with which it is used; whereas, a mark is suggestive if imagination, thought, or perception is required to reach a conclusion on the nature of the goods or services.  *Application of Quik-Print Copy Shops, Inc.*, 616 F.2d 523, 525 (C.C.P.A. 1980)

Most, if not all, of the marks identified in Plaintiff's First Amended Complaint have reached incontestable status.  While the validity of an incontestably registered mark cannot be challenged, this does not prevent defendant from questioning the strength, and hence the scope of protection, of the mark as to different goods or services in determining the issue of likelihood of

12

confusion. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 199, n. 6 (1985); *Miss World (UK), Ltd. v. Mrs. America Pageants, Inc.*, 856 F.2d 1445 (9th Cir. 1988) ("[A]n incontestable status does not alone establish a strong mark."); *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135 (9th Cir. 2002) (incontestable status of the registration of ENTREPRENEUR for magazines does not prevent proof that the mark is weak and is one in a market of many similar marks. Summary judgment for plaintiff was reversed.).

Cases since *Park 'N Fly* make it clear that an incontestable mark that is descriptive can be limited in scope to the specific product for which the registration was obtained.  Incontestable status for a registration of a designation does not mean that designation is also a trademark for other goods and services. Each application for a mark must be separately evaluated. The fact that an applicant has an incontestable registration of the same mark for different goods does not give a "right" to register the mark for different goods or services. Thus, a challenge to the registration of the mark for the X line of goods does not constitute an impermissible challenge to the validity of the incontestable registration of the mark for the Z line of goods.  *In re Loew's Theatres, Inc.*, 769 F.2d 764 (Fed. Cir. 1985).  Therefore, ownership of an incontestable registration for financial services using credit cards does not per se authorize the grant of another registration of the same mark for stock brokerage and financial services. *In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 828 F.2d 1567 (Fed. Cir. 1987); *In re The Outdoor Recreation Group*, 81 U.S.P.Q.2d 1392, 2006 WL 3616347 (T.T.A.B. 2006) (Ownership of an incontestable registration does not give the registrant a right to also register the same or similar mark for different goods or services, even if they are very similar to those in the incontestable registration.).

Given the descriptive nature of the mark, Plaintiff's incontestable registration for the POM standard word mark for fruit juice does not confer rights

13

in the POM mark for energy drinks – or for any products outside of the category of fruit juice.

### (b)   "pūr"'s Use Of "pŏm" Is A Classic Fair Use

Classic fair use is an affirmative defense to a traditional trademark infringement count, and was asserted by the defendant in this case.  By choosing a descriptive term, the trademark owner must live with the result that everyone else in the marketplace remains free to use the term in its original "primary" or descriptive sense.  A junior user is always entitled to use a descriptive term in good faith in its primary sense. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 122 (2004) ("This right to describe is the reason that descriptive terms qualify for registration as trademarks only after taking on secondary meaning …, with the registrant getting an exclusive right not in the original, descriptive sense, but only in the secondary one associated with the markholder's goods …."); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc.*, 618 F.3d 1025, 1039 (9th Cir. 2010) ("The fair use defense stems from the 'undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first' …. To avoid monopolization, a company such as Victoria's Secret may invoke a trademark term in its descriptive sense.")

As one court stated, "The defendant has as good a right to a descriptive title as has the plaintiff." *Warner Publication, Inc. v. Popular Publications, Inc.*, 87 F.2d 913 (2d Cir. 1937).  See *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 60 U.S.P.Q.2d 1245 (7th Cir. 2001) (The Chicago Tribune newspaper made a "fair use" of the descriptive phrase THE JOY OF SIX by reproducing its front page and THE JOY OF SIX headline on T-shirts and posters in a descriptive sense to express the happiness associated with the Chicago Bulls winning their sixth NBA championship. "[Plaintiff] cannot appropriate the phrase to herself

14

1  and thereby prevent others from using the phrase in a descriptive sense, as
2  defendants did here.").   As Judge Leval observed:

3          When the plaintiff chooses a mark with descriptive
4          qualities, the fair use doctrine recognizes that "he cannot
5          altogether exclude some kinds of competing use,"
6          particularly those which use words in their primary
7          descriptive and nontrademark sense.

8  *United States Shoe Corp. v. Brown Group, Inc.*, 740 F. Supp. 196, (S.D.N.Y.
9  1990), aff'd without op., 923 F.2d 844 (2d Cir. 1990).  Accord *Cosmetically*
10 *Sealed Industries, Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28 (2d Cir.
11 1997) ("If any confusion results, that is a risk the plaintiff accepted when it
12 decided to identify its product with a mark that uses a well-known descriptive
13 phrase.").

14         In determining what constitutes a "descriptive" classic fair use of a word,
15 the Ninth Circuit referred to a spectrum of "descriptive purity" of the usage. In
16 that case, defendant argued that it was using the word DELICIOUS imprinted on
17 wearing apparel only to playfully describe the wearer ("I'm delicious.") and not
18 as a trademark. On reversing a summary dismissal of the infringement charge, the
19 court found a triable issue of fact on the classic fair use defense, observing that:

20         [T]he scope of the fair use defense varies with the level
21         of descriptive purity. Thus, as a defendant's use of a term
22         becomes less and less purely descriptive, its chances of
23         prevailing on the fair use defense become less and less
24         likely.

25 *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc.*, 618
26 F.3d 1025, 1042–1043 (9th Cir. 2010) ("Overall, we think a genuine issue of
27 material fact remains as to whether [defendant] Victoria's Secret used 'Delicious'
28 only to describe its goods or services.").

15

The Supreme Court has remarked that it is the fair use doctrine that provides a competitive balance when one competitor attains trademark rights in a descriptive term by achieving secondary meaning:

> The common law's tolerance of a certain degree of confusion on the part of consumers followed from the very fact that in cases like this one an originally descriptive term was selected to be used as a mark, not to mention the undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first … . The Lanham Act adopts a similar leniency, there being no indication that the statute was meant to deprive commercial speakers of the ordinary utility of descriptive words.

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,* 543 U.S. 111, 122, 125 S. Ct. 542, 550, 160 L. Ed. 2d 440, 72 U.S.P.Q.2d 1833 (U.S. 2004).

The instant case is precisely one in which the Fair Use Doctrine was intended to permit descriptive use of even an incontestable mark.  To permit Plaintiff to exclude others from using the term "pom" to refer to pomegranate-flavored foods or beverages would grant Plaintiff a monopoly over pomegranate-flavored goods.  Such result is not intended by the protections provided under the Lanham Act.

### (3)     Evidence of Actual Confusion

Plaintiff presents no evidence of actual consumer confusion or any any survey evidence demonstrating a likelihood of confusion.  Plaintiff argues that evidence of actual confusion is not necessary for a finding of likelihood of confusion, and the absence of such evidence is "neutral" to the likelihood of confusion analysis.  But the lack of survey evidence is *not* a neutral factor. Plaintiff has known about the purported infringement since at least May 31, 2013

16

– about 6 months prior to filing its Motion for Preliminary Injunction. (Hubbard Decl., Exh. 4.)  Plaintiff had more than sufficient time to conduct survey research to be presented in support of its motion, but chose not to.  Thus, as previously found in connection with POM Wonderful's effort to obtain a preliminary injunction against Naked Juice in Case No. CV 05-8993 NM (MANx), "POM's failure to present any survey data showing a likelihood of confusion justifies inferring that no such likelihood exists.[5]  (citing *Playboy Enterprises v. Netscape Communications,* 55 F.Supp.2d 1070, 1084 (CD CA 1999)).  Plaintiff filed this case in September and filed its Motion for Preliminary Injunction on November 22, 2013.  Plaintiff had all the time it desired to investigate and present evidence of actual confusion, if any confusion had ever occurred, or to conduct survey research as to likelihood of confusion.  It did neither.  Given the opportunity Plaintiff had to obtain and present such evidence, the lack thereof weighs against any finding of likelihood of confusion.

### (4)    Defendant's Intent

Visual inspection of the "pūr pŏm" label leads to several conclusions concerning Defendant's intent in so naming the product.  Notably, "pūr pŏm" is part of a series of energy drinks, including "pūr raz" and pūr renew".  (Hubbard Decl., ¶2.)  As previously explained, the name "pūr pŏm" was chosen to designate the pomegranate variety of pūr's pomegranate-flavored energy drink, just as pūr raz was chosen to designate the raspberry-flavored version of the drink.  (*Id.,* ¶3.)  Hubbard's label features a large, centered stylized "pūr" and at the bottom of the label, the word "pŏm" to denote the variety of the pūr drink contained therein.  The back of the label proudly advises that the Hubbard family is the source of the product.  (Hubbard Decl., Exh. 1.)  Given these elements of

[5] In *Pom Wonderful LLC v. Naked Juice, et al,* USDC CDCA Case No. CV 05-8993 NM (MANx), Judge Nora Manella denied Plaintiff's request for a preliminary injunction against Naked Juice's use of POW!, given the lack of survey or other evidence supporting a likelihood of confusion.  In that case, Plaintiff had 3 months time to conduct such research.  In this case Plaintiff has had nearly 6 months, and still no evidence.  (RJN, Exh. 1.)

1   Defendant's use of the mark, it can be concluded that Defendant never intended
2   to trade on the strength of Plaintiff's mark at all, but simply used the common
3   "pom" as shorthand for pomegranate, the flavor of one of a series of drinks.

4   Plaintiff argues that this Defendant has shown a cavalier attitude toward its
5   infringing conduct, having also been sued by Pur Water Purification Products. In
6   fact, Defendant was sued by Pur Water Purification Products earlier this year, but
7   the plaintiff simply dropped that case, presumably due to the lack of merit of the
8   claims asserted. (Hubbard Decl., ¶13.) The fact that Defendant refused to give in
9   to Plaintiff's demand that he cease selling his product does not constitute a
10  cavalier attitude, nor does it signify any maleficent intent in choosing to use pŏm
11  as the flavor of a drink. Thus, consideration of Defendant's intent weighs against
12  a finding of likelihood of confusion.

13  ### (5)   Relatedness of the Products

14  Plaintiff's reliance on language from *Sleekcraft* suggesting that less
15  similarity between the marks is needed where the goods are complementary and
16  are sold to the same class of purchasers is misplaced.[6] That is not an applicable
17  test where the plaintiff's mark is descriptive, and the fact that plaintiff's mark is
18  descriptive gives rise to the need for much stronger relatedness to support a
19  finding of likelihood of confusion because the plaintiff's rights are limited to the
20  category in which it obtained the registration. Here, plaintiff's mark is limited to
21  juice.

22  As discussed above, where, as here, an incontestable mark is descriptive,
23  the scope of the rights in that mark can be limited to the specific product for
24  which the registration was obtained. *In re Loew's Theatres, Inc.*, 769 F.2d 764,
25  226 U.S.P.Q. 865 (Fed. Cir. 1985). For example, ownership of an incontestable
26  registration for financial services using credit cards does not per se authorize the

27  ---
    [6] Likewise, plaintiff's reliance on *Polar Corp. v. PepsiCo, Inc.*, 789 F.Supp.2d
28  219, 233 (D. Mass. 2011) is likewise misplaced. In that case, the POLAR mark
    was used for beverages. Unlike "POM", POLAR is not descriptive of the
    products at issue.

grant of another registration of the same mark for stock brokerage and financial services. *In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 828 F.2d 1567, 4 U.S.P.Q.2d 1141 (Fed. Cir. 1987); *In re The Outdoor Recreation Group,* 81 U.S.P.Q.2d 1392, 2006 WL 3616347 (T.T.A.B. 2006) (Ownership of an incontestable registration does not give the registrant a right to also register the same or similar mark for different goods or services, even if they are very similar to those in the incontestable registration.).

In the same manner, while the products at issue are related in that they can both be consumed, the products differ significantly and appeal to different consumers. Since Plaintiff's mark, while incontestable, is also descriptive, Plaintiff's rights do not extend to products other than that for which the registration was obtained. Plaintiff has no registration that covers energy drinks.

Moreover, while there is limited relatedness of the products, as discussed above, the same consumers will likely not consume both products; Plaintiff's product is pure juice and is very high in calories while pūr pŏm is a low-calorie energy drink infused with vitamins. (McCloskey Decl., Exh. V.) In fact, a consumer is likely to drink only one or the other – not because of any confusion due to the names of the products, but due to the consumer's position on calorie consumption.

Given the descriptive nature of plaintiff's mark, the scope of the products as to which plaintiff has rights is significantly narrowed. Given that the parties' respective products appeal to different consumers and are in different categories, this factor weighs against a likelihood of confusion.

### (6)    Marketing and Trade Channels

Defendant's marketing and trade channels differ significantly from Plaintiff's. As detailed in the Hubbard declaration, pūr beverages are sold through distributors in Alaska, Washington, Idaho, Montana, North Dakota, South Dakota, Minnesota, Indiana, Michigan and Ohio and in Albertsons grocery

19

stores in Nevada, Arizona, New Mexico, Texas, Utah and Colorado.  They are sold in approximately 200 grocery stores.  (Hubbard Decl., ¶7.)  They are not sold over the internet.  They are not advertised on television, in magazines or newspapers.  Thus, Defendant's sales of the pūr pŏm flavor of pūr energy drink will overlap Plaintiff's sales only to a negligible extent.  This consideration weighs against any finding of likelihood of confusion.

### (7)   Type of Goods, Degree of Consumer Care

Plaintiff argues that, since the parties' drinks are inexpensive, consumers will pay little attention when purchasing them.  However, Plaintiff's reliance on *CSC Brands LP v. Herdez Corp.*, 191 F.Supp.2d 1145 (E.D. Cal. 2001), is misguided.  In CSC Brands, the product at issue was V-8.  Plaintiff's product costs approximately $2 for 8oz., while V-8 is far less expensive.  In fact, both Plaintiff's and Defendant's drinks are relatively expensive compared to other, larger quantity drinks that are more readily available.  Thus, the theory that consumers will exercise little care in choosing their drinks due to the low cost simply does not apply.  Moreover, the differences between Plaintiff's and Defendant's products are so significant that they likely do not attract the same customers at all.  As noted, Plaintiff's product is a high-calorie 100% juice product while Defendant's product is a low-calorie, fruit flavored, vitamin infused energy drink.  Those who would opt for a low calorie energy drink are not likely to otherwise choose to drink 100% juice products.  Thus, this factor weighs against a finding of likelihood of confusion.

### (8)   Likelihood of Expansion

Notably, while Plaintiff's counsel solicited sales of PŪR beverages from Hubbard prior to this litigation, Hubbard declined to sell the products other than through known and reliable distributors.  (Hubbard Decl., ¶9.)  Defendant is a fledgling company and every sale is carefully handled by Rob Hubbard himself.  Hubbard plans to continue distribution in the geographical areas in which he is

20

1   presently distributing.  However, future distribution is threatened by the fact that

2   Plaintiff coerced Defendant's manufacturer into ceasing production of its

3   products.  (Hubbard Decl., ¶10.)  Given the low likelihood that any expansion

4   will occur during the pendency of this action, this factor weighs against any

5   finding of likelihood of confusion.

6                    **(9)    Conclusion re Likelihood of Confusion**

7          Notably, Plaintiff made nearly identical arguments based on the same

8   authorities when it unsuccessfully sought a Preliminary Injunction against Naked

9   Juice in 2006.  (See RJN, Exh. 1.)  As did Judge Nora Manella in that case, this

10  Court should conclude that Plaintiff has failed to meet its burden of showing a

11  likelihood of success on the merits.

12         **C.    Likelihood Of Irreparable Harm**

13         Plaintiff must also show it is likely to suffer irreparable in the absence of a

14  preliminary injunction.  Plaintiff has failed to carry this burden.  Given the weak

15  showing of any likelihood of success on the merits of its claims, the obvious

16  differences between Plaintiff's and Defendant's marks, and the complete absence

17  of any evidence of actual confusion or a likelihood of confusion, Plaintiff's

18  claimed potential injury to its reputation and business goodwill are simply

19  unsubstantiated and insufficient to outweigh the irreparable injury that the

20  Defendant will suffer if the injunction is granted.

21         Defendant, on the other hand, stands to suffer irreparable injury in the

22  event that the injunction is issued.  An erroneous finding of likelihood of

23  infringement can irreparably injure a trademark defendant, and this harm is

24  considered as heavily as injury to the plaintiff seeking injunctive relief:

25                 The court appraises the risk of irreparable harm to the

26                 parties not simply by reference to what they will lose by

27                 an unfavorable ruling today, but rather by reference to

28                 the harm of error: what irreparable harm would denial of

                                      21

> a preliminary injunction cause to [the trademark owner]
> and the public if the trial reveals that [the trademark
> owner] is entitled to relief; and what irreparable harm,
> will the granting of an injunction do to [the accused] and
> the public if the trial reveals that [the trademark owner] is
> not entitled to relief.

*AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796 (7th Cir. 2002) (A preliminary injunction was denied and affirmed: "[T]he balance of irreparable harms to the parties and others weighs enormously against the requested injunction."). *Accord Scotts Co. v. United Industries Corp.*, 315 F.3d 264 (4th Cir. 2002) (The "real issue" in balancing hardships "is the degree of harm that will be suffered by the plaintiff or the defendant if the injunction is improperly granted or denied."). In this case, Defendant's sprouting business is in a vulnerable position, where any erroneous finding of likelihood of success on the merits by Plaintiff could literally put Defendant out of business. (Hubbard Decl., ¶12.)

Plaintiff's also argues that it is threatened injury by any association between itself and an energy drink, given the recent occurrences of illness and death following consumption of heavily-caffeinated energy drinks. Plaintiff overlooks that fact that "pūr pŏm" is caffeine free, as stated on the front and back of the label. (Hubbard Decl., ¶2, Exh. 1.) There is no negative stigma associated with all natural, caffeine free energy drinks such as "pūr pŏm". Thus, Plaintiff has failed to make any showing that it will suffer irreparable injury in the absence of a preliminary injunction.

### D.  **Balance of Hardships**

Plaintiff argues it will suffer hardship without an injunction because it will suffer irreparable injury for which there is no remedy. However, Plaintiff's theory of hardship is dependent on an assumption that confusion has occurred

1    and will continue to occur without the injunction.  Plaintiff has failed to carry its
2    burden of showing either actual confusion or any likelihood of confusion, so it
3    has also failed to establish any hardship will be suffered.

4          On the other hand, Defendant can demonstrate certain and immediate
5    hardship will ensue in the event an injunction is issued.  Defendant has
6    manufactured 375,000 cans of pūr pŏm, of which fewer than 19,000 have been
7    distributed.  (Hubbard Decl., ¶11.)  Each can has an expiration date of 2 years
8    after manufacture, which will be March and June of 2015.  (*Id.*)  Were this Court
9    to impose an injunction against Defendant which prohibits the sale of pūr pŏm
10   pending resolution of this dispute, it would render this product (which constitutes
11   approximately 2/3 of pūr's current inventory) unsalable.  The resulting economic
12   consequences would, with certainty, cause pūr to go out of business altogether.
13   (*Id.*)

14         The requested injunction would require that Defendant not only cease
15   using the product name at issue, but it would impose an unreasonable burden
16   because it an a mandatory element – requiring that Defendant recall all product
17   already distributed.  This requirement does not serve the purpose of preserving
18   the status quo, and would impose an unreasonable burden on Defendant which is
19   not favored.  *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.,* 571
20   F.3d 873(9th Cir. 2009).  There can be no question that the balance of hardships
21   tips in favor of Defendant in this instance.

22   **E.     The Public Interest**

23         "In exercising their sound discretion, courts of equity should pay particular
24   regard for the public consequences in employing the extraordinary remedy of
25   injunction."  *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7
26   (2008), citing *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 311–312 (1982).

27         Certainly, the public interest is served where a preliminary injunction will
28   actually prevent consumer confusion that would otherwise have occurred.

23

However, in instances such as this – where there is no evidence of actual confusion or any likelihood of confusion – the public is not served by an injunction. Such injunction would only deny the public access to consumer goods with no justification at all. Given the weak showing made by Plaintiff in this case, the public would be disserved by preventing the public access to Defendant's product.

## IV.   CONCLUSION

For the reasons set forth herein, Defendant submits that Plaintiff's Motion for Preliminary Injunction should be denied in its entirety. Plaintiff has failed to make the required showing to justify the imposition of an injunction upon Defendant at this preliminary stage of litigation, and to do so would cause Defendant severe hardship.

Dated:  December 13, 2013          SEDGWICK LLP


                                   By:  /s/ Heather L. McCloskey
                                        James J.S. Holmes
                                        Heather L. McCloskey
                                        Chantal Z. Hwang
                                        Attorneys for Defendant
                                        ROBERT G. HUBBARD dba PUR
                                        Beverages and Northwest Beverage
                                        Distributors

24