DANIEL A. BECK (SBN 204496)
daniel.beck@roll.com
MICHAEL M. VASSEGHI (SBN 210737)
michael.vasseghi@roll.com
DANIELLE M. CRIONA (SBN 204074)
danielle.criona@roll.com
ROLL LAW GROUP PC
11444 West Olympic Boulevard
Los Angeles, California 90064-1557
Telephone:   (310) 966-8400
Facsimile:   (310) 966-8810

Attorneys for
POM WONDERFUL LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| POM WONDERFUL LLC, a Delaware limited liability company,<br><br>              Plaintiff,<br><br>       vs.<br><br>ROBERT G. HUBBARD d/b/a PUR BEVERAGES, PORTLAND BOTTLING COMPANY an Oregonian company, and DOES 1 through 10, inclusive,<br><br>              Defendants. | Case No. CV13-06917-MMM CWx<br><br>**DECLARATION OF FERNANDO TORRES IN SUPPORT OF PLAINTIFF'S FURTHER BRIEFING AND EVIDENCE IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>**[Hon. Margaret M. Morrow]** |

{2449700.1}

## DECLARATION OF FERNANDO TORRES

I, FERNANDO TORRES, declare as follows:

1.  I have been retained as an expert by attorneys for Plaintiff POMWonderful, LLC ("POM") to consult concerning the issue of irreparable harm presented in the above case.  Specifically, I have been tasked with analyzing the harm to Plaintiff's POM® brand[1] from Defendant Beverages LLC ("PŪR" or "Defendants") continued and unauthorized use of "PŎM" in connection with its energy drink called "PŪR PŎM".

2.  I am a professional economist and have over 30 years' experience in applied and theoretical economics. In the course of this experience, I have been a consultant, a professor, and a business manager. Both my undergraduate and post-graduate degrees are in economics, the latter with a concentration in econometrics. Since 2004, I have specialized in the analysis and valuation of intellectual property and intangible assets.  I am a member and Chief Economist at IPmetrics LLC, an intellectual property consulting firm.  Attached hereto as Exhibit A is a copy of my most current curriculum vitae setting forth in detail my qualifications and experience.

3.  Additionally, I have served as a consultant on numerous projects involving the determination of the value of intellectual property, including trademarks.  I have trial and deposition experience as an expert witness representing both plaintiffs and defendants. I have experience in complex commercial litigation cases nationally.  I currently consult with and have consulted with clients in California, New York, Texas, Colorado, Iowa, and Florida.

4.  In connection with my work in this case, I have read, reviewed, and analyzed the following documents filed in connection with this case:

---

[1] The POM® Brand trademarks include, but are not limited to: POM (Reg. No. 2637053); POM and Design (Reg. No. 3047447); and twenty others. See: *Complaint (9/19/2013)*  at §13-15.

{2449700.1}

a.      Complaint for Federal Trademark Infringement, filed September 19, 2013 (the "Complaint").

b.      Order denying Plaintiff's Motion for Preliminary Injunction, filed January 17, 2014 (the "District Order").

c.      Opinion, US Court of Appeals for the Ninth Circuit, filed December 30, 2014 (the "Appeal Opinion").

d.      Marketing materials for POM's products.

e.      Marketing materials for PŪR's products.

5.      Furthermore, in the course of my work in this case, I have reviewed additional documentation from case law and relied upon other authoritative references, as identified in the footnotes to this declaration. All of these are types of materials experts in my field typically rely on when completing assignments such as mine in this case.

6.      After reviewing and analyzing the material available to me, and after conducting further research surrounding the relevant issues, I have come to the findings and conclusions that are addressed in the following paragraphs including, beginning with general considerations and proceeding to examine specific issues of the case at hand.

7.      As defined in law, trademarks are words (and/or symbols or devices) used by businesses to identify and distinguish their goods from those manufactured or sold by others, and to indicate the source of the goods.[2]  In the market economy, trademarks have a specific role: to identify and differentiate a seller's goods from goods made or sold by others. This role is important for a variety of reasons.  First, because there tend to be multiple alternatives and close substitute products in most

---

[2] See: 15 USC § 1127.

{2449700.1}

1   markets, but acquiring the necessary and accurate information to judge a product's

2   qualities and fitness to satisfy the consumer's need is often a very costly and time

3   consuming exercise;[3] and second, to provide an efficient  means for the consuming

4   public to quickly recognize that a product they are considering purchasing is made

5   by the same producer as other similarly marked items that, in the past, produced

6   products with attributes (positive or negative) that are important to the consumer.[4]

7   These roles are threatened when there is a likelihood of confusion with other marks;

8   trademarks cease to serve their purpose and consumers are forced to incur additional

9   time and resources to differentiate products and, depending on the specific product

10  category, may be led to sub-optimal choices.[5] Through these and other indirect

11  increased information search costs, the total cost of goods to the consumer rise with

12  the likelihood of confusion. There are increased costs for the economy as a whole if

13  trademarks cease to perform this source-identifying role.

14          8.      Businesses, in addition to their necessary operational costs, spend

15  substantial resources to build and extend the reputation of their brands, including

16  expenditures related to product quality and advertising.  Once its reputation is

17  established, the business can generate greater sales because of that reputation,

18  through repeat purchases and word-of-mouth references.  The business can also

19  _____

20  [3] This fact gives rise to the need for government regulations in some safety-critical

21  markets, like the FDA in pharmaceuticals and food, industry standards bodies (ISO)
    and, generally, to certification trademarks in other areas (Such as the prototypical

22  "Good Housekeeping Seal of Approval" Reg. No. 77,638,213) which are not source

23  indicators in the conventional sense (http://ipmetrics.net/blog/2011/02/14/no-
    trademarks-were-harmed/).

24  [4] See, *inter alia*, J. McCarthy, McCarthy on Trademarks and Unfair Competition §

25  2.01[2], p. 2-3 (3d ed. 1994).

26  [5] See, *inter alia*, William M. Landes & Richard A. Posner, *Trademark Law: An

27  Economic Perspective*, Journal of Law and Economics, Vol. 30, No. 2 (Oct., 1987),
    pp. 265-309.

28  {2449700.1}                                   2

realize higher profits because quality goods can support higher profit margins.[6] The business is also able to market its products more efficiently and effectively, based on consumer recognition of the brand and its associated reputation.  By contrast, the cost of duplicating a successful and reputable brand is remarkably small, particularly in this day and age when online advertising is considered, in contrast with television or print.  Unless prevented by law, "free riding" infringers will not just capture some of the profits associated with a strong trademark; more significantly, trademark infringement will eventually destroy the value of the reputational investment embodied in a trademark.[7]  Finally, a brand's investment in reputation is a "public good", in the strict economic sense that consumption of it by one individual does not reduce its availability to others.[8]  The investment in this type of good tends to be made and economically justified only if there are suitable means to protect the uniqueness of the brand and the proper attribution of the reputation.[9]  Thus, without adequate protection, investments in reputation would not be made, and consumers would be left to shoulder higher costs of discerning the underlying qualities and attributes of products, or be subject to making purchases of goods that turn out not to have the intended characteristics.

9.     This case presents a situation where a valuable brand is being infringed due to a new market participant who is using the POM trademark without

---

[6] Landes and Posner (1987), p 270.

[7] *Ibid*.

[8] "Goods that are not excludable and are nonrival are called Public Goods" (Hal R. Varian, <u>Microeconomic Analysis</u>, 3rd Edition, 1992, WW Norton & Co., p 414).

[9] In the economic literature, this is known as the "public goods problem", often illustrated with the reflection that the only way to provide a sufficient level of defense is to have the government do it and fund it with taxes. Not all "public goods", however, are public services in this colloquial sense.

1  authorization.[10]  From an economic perspective, the value of the POM trademarks is

2  substantial,   (although   it is beyond the purpose of this report to quantify the

3  amount.)  The type of data used in valuing trademarks commonly includes annual

4  sales trends and advertising expenditures; the former reflects a monetary reflection

5  of a brand's appeal with the target market, the latter helps to measure the build-up of

6  consumer impressions and potential goodwill.  Therefore, the POM trademarks are

7  valuable because POM has invested, since 2001, significant resources in advertising

8  the portfolio of products that are offered under the POM umbrella brand.[11]  These

9  resources include at least $24 million in 2011 and 2012,[12] including substantial

10  event sponsorships and television advertising, which have supported annual sales of

11  at least $60 million at retail.[13]

12      10.    The advertising undertaken, moreover, has consistently focused on

13  unique characteristics of the products sold that resonate with the target market, such

14  as:

15          a.    The nutritional qualities of the pomegranate fruit and pomegranate

16              juice,14 which are non-observable attributes and, thus, contribute

17              information to consumers; and,

18          b.    The quality assurance and convenience factors of the various

19              product lines derived from the fruit.

20  Moreover, by sustaining a thorough quality control effort throughout the integrated

21  _____

22  [10] See: *Complaint (9/19/2013)* at §30 *et seq*., and *Appeal Opinion*, p 4.

23  [11] See: POM website (pomwonderful.com/pomegranate-products/) and Exhibit A to

24  the *Complaint*.

25  [12] *Appeal Opinion*, p 5.

26  [13] *Ibid*, p4.

27  [14] Specifically the fact that pomegranates are a source of nutrients such as vitamin K, potassium, and polyphenol antioxidants.

28

1  production process, the POM brand has quality control over the entire production

2  process from cultivation of pomegranates through distribution of the finished

3  product.[15]   Additionally, this vertically integrated company also invests substantially

4  in product development and technologies to improve the characteristics of the

5  various products, for both retail and industrial uses.[16]

6       11.   Since 2001, therefore, the POM trademarks have successfully created a

7  valuable brand and differentiated its products from the generic, branded, and un-

8  branded alternatives, i.e. fruit from other growers or juice from other sources, with a

9  strong national presence among both retailers and end-consumers.  I understand that,

10  from a legal analysis perspective, the POM trademarks are demonstrably strong in

11  this sense.[17]

12       12.   From an economic perspective, a strong indication of the

13  distinctiveness of the POM trademarks in the market, particularly in the juice

14  category, is that other pomegranate juice makers do not refer to their products or the

15  key ingredient as "pom" rather than "pomegranate."  For example, major

16  supermarket chains *Whole Foods Market*®[18] and *Trader Joe's*®[19] sell private label

17  pomegranate juice as "100% Pomegranate Juice" and "Pomegranate Juice"

18  respectively.  Branded pomegranate juice offerings from other companies (available

19  at other retailers such as Wal-Mart and Amazon.com) are labeled "Pure

20

21  [15] Synthetized in the slogan "From Tree to You." POMWonderful's industrial site

22  for information on the integrated process and quality control

23  (www.pomindustrial.com/).

24  [16] For example, with a perishable product like pomegranates, research on storage

25  conditions to extend shelf life is important.

25  [17] *Appeal Opinion*, p 14.

26  [18] Whole Foods Market, Inc. (www.wholefoodsmarket.com/).

27  [19] Trader Joe's (www.traderjoes.com/).

28      {2449700.1}        5

Pomegranate" (Lakewood[20]), "Just Pomegranate™" (R.W. Knudsen[21]), "All Pomegranate" (L&A Juice[22]), among others.

13. Therefore, there is no relevant industry precedent of the use of "pom" as a generic descriptor, abbreviation, or symbol for pomegranate juice. Rather, until the alleged infringing acts, the market presence of the term "pom" has only been as part of Plaintiff's POM trademarks. In this regard, allowing a third party to make a confusing use of "pom" under the guise of a generic abbreviation for the ingredient pomegranate would help push the valuable POM trademarks towards generic use. With time, such unauthorized third-party use of a trademark expropriates the value built over more than a decade. Once a mark is allowed to become a generic descriptor, the value of the mark is lost permanently as its distinctive element has been lost. Such has been the case for former trademarks such as aspirin,[23] cellophane,[24] escalator,[25] and thermos,[26] to name a few. Ultimately, once mark becomes a generic descriptor, it cannot be registered as a trademark at all. Consequently, so-called "genericide" is clearly not a process that can be repaired.

14. The infringement alleged in the *Complaint* is the use of the POM trademarks to introduce a new drink offering from PŪR, a newly established supplier in the beverage market.[27] The Defendant's positioning statement in its

_____

[20] Florida Family Trust (www.lakewoodjuices.com/product_detail/id-37/).

[21] Knudsen & Sons, Inc. (www.rwknudsenfamily.com/products/just-juice/just-pomegranate).

[22] Langers Juice Co., Inc. (www.langers.com/Products/Juices/allPome.htm).

[23] Originally a Bayer trademark.

[24] Originally a DuPont trademark.

[25] Originally an Otis Elevator Co. trademark.

[26] Originally a Thermos GmbH trademark.

[27] *Complaint* at §31, *et seq.*

marketing materials offers an alternative energy drink that it claims is somehow more "natural" and "pure."[28]

15. The harm due to the likely consumer confusion from the infringing use of the "POM" trademark as alleged in this case is compounded by the characteristics of the product. The accused "PUR POM" product is not a pure pomegranate beverage: the product has added supplements, such as ginseng and B-vitamins, and has sugar added.[29] The product's nutritional facts indicate relatively high sodium content[30] and no potassium content. Genuine pomegranate juice, like POM Wonderful's, on the other hand, contains insignificant amounts of sodium and is known to be a source of potassium.[31] Scientific research on the properties of pomegranate juice concludes that "it may be prudent to include this fruit juice in a heart-healthy diet",[32] but added sugar and sodium in the PUR POM product raises the concern that too much sodium in the diet may lead to high blood pressure in

---

[28] See, *inter alia*, PUR POM product page at (www.purbeverages.com/drink-pur/pom-pomegranate-beverage), which states "This delicious Pomegranate beverage will give you a boost of natural energy without the chemicals you will find in other energy drinks." and the "About Us" page, which states the company's philosophy in terms of offering "…beverages, that are healthy, low in calories, low in sugars, and filled with Natural Ingredients to satisfy even the most health conscious consumers, without sacrificing great taste." (www.purbeverages.com/live-pur/about-pur-beverages).

[29] PUR POM product page (www.purbeverages.com/drink-pur/pom-pomegranate-beverage).

[30] 120 mg preserving, equivalent to 5% of the daily value.

[31] The USDA lists the Potassium content of 100 grams of pomegranate seeds at 5% of the daily values, and 0% for sodium (http://ndb.nal.usda.gov/ndb/foods/show/2404?fgcd=&manu=&lfacet=&format=Full&count=&max=35&offset=&sort=&qlookup=09286).

[32] Basu A, Penugonda K., *Pomegranate juice: a heart-healthy fruit juice,* in: Nutrition Reviews, 2009 Jan; 67(1):49-56. (http://www.ncbi.nlm.nih.gov/pubmed/19146506#).

1  some people.[33]  While the nutritional analysis of the products is not the purpose of

2  this report, the nature of these differences is an objective cause for anticipating

3  negative brand impression risk and loss of control over the POM brand, given the

4  likelihood of confusion[34] brought about by the PUR POM product in the beverage

5  market.  It is to be expected that some consumers, confused to believe the PUR

6  POM product comes from the same source as the well-known POM products, may

7  notice the nutritional differences and attach a negative connotation to the artificially-

8  sweetened, supplemented drink, compounded with the connotations of the sodium

9  content.  Negative word-of-mouth publicity from those consumers is likely, in this

10  social media/instant communications market context, to lead to disparaging

11  customer reviews and opinions that would tarnish the reputation of the POM

12  trademarks across all product lines.  Therefore, the root source of these negative

13  effects on the functionality and value of the POM trademarks goes beyond the fact

14  that the PUR POM product is positioned to compete against energy drinks, a

15  segment of the beverage market already beset with negative attributes and health

16  concerns.[35] These nutritional differences between the Plaintiff's pomegranate juice

17  _____

18  [33] "Sodium in Diet" US National Library of Medicine (NIH)
19  (http://www.nlm.nih.gov/medlineplus/ency/article/002415.htm).

20  [34] I understand the Court of Appeals has found that "it is clear that Pom Wonderful
   is likely to show that consumers are likely to be confused as to the source of Pur's
21  "pŏm" beverage. Pur's beverage not only bears a mark that is visually, aurally, and
   semantically similar to Pom Wonderful's commercially strong "POM" mark—
22  which Pom Wonderful has used exclusively since 2002—but also is designed for the
23  same use and sold to the same general class of consumers as Pom Wonderful's juice
   beverages at a price point where consumer discernment is weak." *Appeal Opinion*, p
24  24.

25  [35] See, e.g., Ali F, Rehman H, Babayan Z, Stapleton D, Joshi DD*, Energy drinks and
26  their adverse health effects: a systematic review of the current evidence*, in:
   Postgraduate Medicine, 2015 January 6:1-15 [Epub ahead of print] available at
27  National Library of Medicine (NIH) (www.ncbi.nlm.nih.gov/pubmed/25560302).

28  {2449700.1}

8

DECLARATION OF FERNANDO TORRES IN SUPPORT OF PLAINTIFF'S FURTHER BRIEFING AND
EVIDENCE IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1  and the Defendants' product are an objective basis for a likely risk to the POM

2  trademarks if the continued infringing use were to be allowed.

3      16.    The impact of likelihood of confusion between PUR POM and the

4  POM trademarks results in harm beyond direct quantifiable "Lost Sales" and the

5  consequent "Lost Profits.". It would result in a loss of distinctiveness.  Based on my

6  research of the beverage industry, I am not aware of any other beverage utilizing

7  "POM" as its brand name.  Consumer association of the POM brand with the use of

8  the term "pom" by PUR POM, as discussed above, would permanently damage the

9  POM trademark's ability to function as a trademark, and deprive POM of a business

10  asset of considerable value.  The infringing use is based on the misappropriation of

11  the POM trademark and disregard of its incontestable status   for the use of the

12  protected term as a descriptor for a beverage.  Once this use   is allowed, it cannot be

13  taken back even with corrective advertising, because such use   would inevitably,

14  result in a loss of POM's distinctiveness. The substantial value accrued to the POM

15  trademarks, therefore, would be diluted as this and additional uses follow in the

16  future.  POM would be forced to develop a supplementary or additional umbrella

17  brand for its various product lines to remain uniquely identified as the source of the

18  products, however, the impact on trademark value would not ever be recoverable.

19      17.    To illustrate, consider that trademark value is defined as the net present

20  value of future sales attributable to the trademark, typically measured by a royalty

21  rate proxy.[36]  Annual royalty grows at an average rate pre-infringement and the

22  infringement period lasts, for argument's sake, two-years with a concomitant 10%

23  _____

24  [36] See "Relief from Royalty" method in, *inter alia*, Robert F. Reilly and Robert P.
Schweihs, <u>Valuing Intangible Assets</u>, McGraw-Hill (1998); Gordon Smith and

25  Russell Parr, <u>Intellectual Property: Valuation, Exploitation, and Infringement</u>

26  <u>Damages</u>, 2005, John Wiley and Sons, Inc., New York.; Gregory Leonard, et al.,
<u>Economic Approaches to Intellectual Property</u>, National Economic Research

27  Associates, Inc., 2005.

28  {2449700.1}         9

reduction in sales.  Figure 1 shows the progress of annual trademark royalty amounts for 10 years before and after the infringement.[37]



18.   As the figure shows:

a.   up to the time of infringement, there is no difference in the annual values;

---

[37] Technically, trademark value is the area illustrated in the figure since it is the sum of the annual royalty amounts attributable to the brand.

b.   during the infringement period, trademark value (red area) declines and is taken up by the infringer (blue triangle area); and,

c.   after the infringement period, trademark value (red area) continues to accrue to the plaintiff at the market's growth rate, while the loss in value (blue area) remains proportionately the same in perpetuity.

19.   In this illustration, the blue triangle during the infringement period measures the decline in trademark value during the infringement which can be compensated with a recovery of damages.  The obvious gap that continues in the annual contributions to trademark value during the post-infringement period remains in perpetuity unless some external factor allows for a suitable increase in the rate of growth of sales after the infringement.

20.   When the intellectual property under consideration implies a legal monopoly on the underlying market, as is the case in patents and copyrights, the customers lost during the infringement period can be recovered in so far as the prevailing plaintiff would remain the sole source of the technology or work after the infringement period.  The situation in trademarks is different, as the customers lost would not necessarily return to purchase from the prevailing plaintiff as there may well be other sources of goods in the same market (as is the case here) and as long as any negative associations of the previously preferred brand dissipate and somehow become positive associations for the brand.  This increase in the pace of sales and, thus, trademark royalty contributions to value does not come without a concomitant cost in increased advertising and marketing efforts.

21.   In economic terms, the lost profits during the infringement period are a transfer of value (or wealth) from the trademark owner in favor of the infringer, which can be redressed with monetary damages.  However the permanent reduction in value of the trademark is a destruction of the plaintiff's asset value (or wealth)

1   which would have to be rebuilt anew – a cost which is unquantifiable.[38]  This is an

2   economic rationale as to why permanent injunctions in trademark cases are

3   necessary; otherwise, potential infringers      may begin to rely on infringing

4   established marks as a way to enter new markets, adjusting for the risk of being sued

5   and losing.

6        22.    Another economic consideration, as far as the balance of the equities

7   and the public interest is concerned, includes the contrast between the value of the

8   Plaintiff's brand and the limited scope of the alleged infringer's economic activity.

9   Although, at this point, I have not been able to examine detailed financial records

10  for the sales of the products at issue, from the record it is quite clear that the brand

11  equity at risk on the side of the POM trademarks is orders of magnitude larger than

12  the profits which the defendants can make from the accused product line during the

13  likely duration of this case.  Not only are the sales of POM juice in the order of $60

14  million per year, but the POM trademarks are strong marks utilized in several

15  product marks from fruit to concentrated derivatives.  By contrast, defendant's use is

16  limited to the new PUR POM product.[39]

17       23.    In conclusion it is my professional opinion that Defendant's continued

18  use of the POM trademark will cause POM irreparable harm which cannot be

19  properly redressed by an eventual infringement damages award.

20       24.    I declare under the penalty of perjury and under the laws of the State of

21  California that the forgoing is true and correct and based upon my personal

22

23

---

24  [38] An analysis of similar issues in the context of patent law is examined, for

25  instance, in: J. Gregory Sidak, *Is Harm Ever Irreparable?* 2011 Inaugural Address,

    Coase Professor of Law and Economics, Tilburg University

26  (www.criterioneconomics.com).

27  [39] This product line could be re-labeled PUR Pomegranate to mitigate lost profits.

28  {2449700.1}                              12

1  knowledge and/or professional opinions, and that if called upon to testify, I could

2  verify the accuracy of the same.

3          25.     This document was executed in the city of San Diego, California on

4  July 7, 2015.

5

6

7

8                                          FERNANDO TORRES, MSc
                                           Chief Economist
9                                          IPmetrics LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
DECLARATION OF FERNANDO TORRES IN SUPPORT OF PLAINTIFF'S FURTHER BRIEFING AND
EVIDENCE IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

# Exhibit A



**FERNANDO TORRES, MSc**
**CHIEF ECONOMIST**



Fernando Torres is an intellectual property economist with nearly 30 years of work experience in economics, financial analysis, and business management in the U.S. and Mexico.  He is a member and Chief Economist at IPmetrics LLC, an IP consulting firm specializing in the strategic analysis, valuation, and expert witness assessment of the full spectrum of intangible assets.

Since 2004, Mr. Torres has applied his economics, finance and business experience, as well as skills in quantitative techniques, to the analysis and valuation of intangible assets, including valuation for transactional and litigation purposes (bankruptcy and infringement cases).  Prior to joining IPmetrics, Mr. Torres served as Senior Economist at CONSOR® Intellectual Asset Management.

During recent years, Mr. Torres has undertaken projects involving the valuation and/or the assessment of infringement damages regarding copyrights, trademarks, patents, trade secrets, rights of publicity, and other intellectual assets in such industries as commercial agriculture, auto parts, apparel and footwear, retail, pharmaceuticals, entertainment, telecommunications, and non-profit organizations, among others.

Mr. Torres regularly presents on topics related to intangible asset valuation in a variety of venues, many of which qualify for CLE credit.  During the past few years, Mr. Torres has been an instructor for the course "Valuing Intangible Assets for Litigation," which is part of the requirements of the Certified Forensic Financial Analyst designation issued by the National Association of Certified Valuation Analysts (NACVA).

Mr. Torres has been active in the area of the copyright and rights of publicity infringement issues, encompassing from the unlicensed use of celebrity images to a class action lawsuit against the major social networking site.

 Mr. Torres is also the editor and author of the online "Patent Value Guide" and his perspectives on the value of patents and other intellectual property assets have been cited in the media, including Managing Intellectual Property, The New York Times, Forbes.com, Business News Network, Business Valuation Resources, and The Democrat & Chronicle.

Mr. Torres is a member of the National Association of Forensic Economics, and of the Western Economics Association International, among others.  His career has spanned from academia, to branches of government, to private industry and consulting.

He first earned a B.A. in Economics from the Metropolitan University in Mexico City (1980), and went on to earn a Graduate Diploma in Economics from the University of East Anglia (U. K., 1981), and a Master of Science Degree specializing in Econometrics from the University of London, England (1982).



Fernando Torres
Qualifications and Experience
Page 2

Prior to specializing in IP, his career centered on financial analysis and management in the private sector, having been both a brand development consultant and an entrepreneur in several business ventures, mainly in computer services and the health care industry. During the 1980s, Mr. Torres was Professor of Economics at the Metropolitan University in Mexico City, teaching Economic Policy, Economic Growth, Microeconomics, and Quantitative Methods. Mr. Torres was later a financial consultant (NASD Series 7, 63, 65) for half a dozen years with AXA Advisors LLC.

## PROFESSIONAL ASSOCIATIONS

- National Association of Forensic Economics
- Western Economics Association International
- American Economic Association
- International Trademark Association

## PUBLICATIONS

- "Why only some patents are valuable" in: IPmetrics Blog, (May 13, 2015).

- "General Principle I – Lack of Intrinsic Value" in: PatentValueGuide.com, (February 11, 2013).

- "General Principle II – Patent Use is Key to Value" in: PatentValueGuide.com, (February 8, 2013).

- "Conceptual Patent Value Framework" in: PatentValueGuide.com, (January 31, 2013).

- "The Impact of Reorganization on Trademark Values," in: IP Management and Valuation Reporter, March 2012, BVR, Portland, OR.

- "Fundamental Principles of Patent Value," in: IP Management and Valuation Reporter, January 2012, BVR, Portland, OR.

- "Key Factors of Infringement Damages Apportionment in the Java & Android Case" in: IPmetrics Blog, (December 8, 2011).

- Book Chapter: "Valuation, Monetization, and Disposition in Bankruptcy" in *IP Operations and Implementation for the 21st Century Corporation,* John Wiley and Sons, Inc. (November, 2011).

- "Have Patent Litigation Damages Awards Been Worth It?" in: IPmetrics Blog, (April 29, 2011).

- "Celebrity Advertising and Endorsement" in: IPmetrics Blog, (March 2, 2011).

- "The Patent to Trademark Value Transition: Nespresso" IPmetrics Blog, (February 3, 2011).



- "The Liquidation Value of IP" in: <u>IPmetrics Blog</u>, (January 26, 2011).

- "An Econometric Model of Trademark Values" in: <u>IPmetrics Blog</u>, (January 25, 2011).

- Chapter 15: "Copyrights" in <u>Wiley Guide to Fair Value Under IFRS</u>, John Wiley and Sons, Inc. (May, 2010).

- "The Road to Asia," Feature Article (co-author) in: <u>World Trademark Review</u>, No. 23, February/March 2010, pp. 19-22.

- "Trademark Values in Corporate Restructuring" (July, 2007). <u>Social Sciences Research Network</u>: http://ssrn.com/abstract=1014741

- "Establishing Licensing Rates Through Options" (September, 2006) <u>Social Sciences Research Network</u>: http://ssrn.com/abstract=1014743 and in: http://formulatorres.blogspot.com/2006_05_01_archive.html

- Book Chapter: "Ch. 9:  Recent developments in Patent Valuation" in: Practicing Law Institute, <u>Patent Law Institute 2007: the Impact of Recent Developments on Your Practice</u>, PLI Course Handbook (March 19, 2007).

- "Establishing Licensing Rates through Options," in: <u>ipFrontline</u>, September 12, 2006 (http://www.ipfrontline.com/depts/article.asp?id=12586&deptid=3).


**SPEECHES AND PRESENTATIONS**

- "What is a Brand Worth?" MCLE webinar (IP_3-10-15), The State Bar of California, Trademark Interest Group, March 2015.

- "Intellectual Property Valuation Techniques," MCLE presentation for Pillsbury Winthrop Shaw Pittman, San Diego, CA, August 2014.

- "10 Common Mistakes in IP Valuation/Damages", CLE presentation to Jeffer Mangels Butler & Mitchell LLP, Los Angeles, CA, July 2014.

- "Intellectual Property Valuation Techniques," MCLE presentation, San Diego, CA, April 2013

- "Intellectual Property Valuation and Monetization," a seminar for the Special American Business Internship Training (SABIT) Intellectual Property Rights program, U.S. Department of Commerce. March, 2013.

- "Valuing IP in the Context of Bankruptcy," webinar for the Certified Patent Valuation Analyst curriculum, Business Development Academy. October, 2011.

- "Recent Developments in Intellectual Property Economic Damages," Presentation at the Annual Conference of the National Association of Forensic Economics. June, 2011.

- "Valuing the Intangible: Where to Start?" CLE presentation to Sheppard Mullin Richter & Hampton, LLP. December, 2009.



Fernando Torres
Qualifications and Experience
Page 4

- "Defending and Enforcing Your Technology." Panelist at: Foley's Emerging Technologies Conference: Navigating a New World – San Diego, CA (Foley & Lardner LLP); September 2009.

- "Intellectual Property Valuation, Monetization and Disposition in Bankruptcy" – CLE presentation at the Spring Trademark Program of the NY Intellectual Property Law Association – New York, NY; June 2009.

- "Damages Valuation and Expert Witnesses" (co-presenter) – CLE presentations to:
  - Gibson, Dunn & Crutcher LLP – Irvine, CA (June, 2008)
  - Arent Fox, LLP — Washington, DC  (April, 2008)
  - Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P.  – Washington, DC  (April, 2008)

- "Valuing Intangible Assets for Litigation" (Instructor) – National Association of Certified Valuation Analysts (NACVA) – Fort Lauderdale, FL; December 2007

- "Valuing Intangible Assets for Litigation" (Instructor) – National Association of Certified Valuation Analysts (NACVA) – Philadelphia, PA; October 2007

- "Trademark Values in Corporate Restructuring" – Western Economics Association International 82nd Annual Conference – Seattle, WA; July, 2007

- "Entrepreneurship and Innovation" (Session Chair) – Western Economics Association International 82nd Annual Conference – Seattle, WA; July, 2007

- "Alternative Focuses for 'But For' Scenario Specification in Commercial Litigation" (Discussant) – National Association of Forensic Economics, Western Conference – Seattle, WA; June, 2007

- "Patent Values in the Evolving I.P. Market" – Practicing Law Institute – Hot Topic Briefing Teleconference; May 2007  (CLE Presentation)

- "Key Issues in Intellectual Property Due Diligence" – Due Diligence Symposium 2007 – ACG – Iselin, NJ; April 2007

- "Life Sciences IP Due Diligence" – American Conference Institute – San Francisco, CA; January 2007

- "Developments in Patent Valuation" – Practicing Law Institute – San Francisco, CA; January 2007  (CLE Presentation)

- "Collins & Aikman Europe and Other Cross-Border Asset Sales: A Tale of Two Venues" – American Bankruptcy Institute, Winter Leadership Meeting – Phoenix, AZ; December 2006

- "Valuing Intangible Assets for Litigation" (Instructor) – National Association of Certified Valuation Analysts (NACVA) – San Diego, CA; December 2006.



IPmetrics®
Intellectual Property Consulting

Fernando Torres
Qualifications and Experience
Page 5

## LITIGATION-RELATED EXPERIENCE

*(July 2005 to date)*

| Date Range | Parties | Case No. | Court | Status | Nature | Hired by | Involvement |
|---|---|---|---|---|---|---|---|
| July 2005 | *Lawrence Peter Berra aka Yogi Berra* v. Turner Broadcasting System, Inc. | 05-cv-02233 05/600339 | Supreme Court of the State of New York, County of New York | *Settled* | *Rights of Publicity* | *Davidoff Malito & Hutcher* | Expert report re: rights of publicity damages |
| July 2005 – Sept. 2005 | *Fleetwood Enterprises, Inc., and Fleetwood Folding Trailers, Inc.,* v. The Coleman Company, Inc., and Coleman Holdings, Inc. | 03 DV 2029 | US District Court, Sedgwick County, Kansas | *Settled* | *Trade-mark* | *Klenda, Mitchell, Austerman & Zuercher, LLC.* | Expert report re: licensing customs and practices. |
| July 2005 – Oct. 2005 | *Jimmy Dean v. Sara Lee Corporation* | 5-04-0039 | US District Court, Northern District of Texas, Lubbock Division | *Settled* | *Trade-mark* *Contract* | *Vinson & Elkins, LLP* | Expert report re: personal brand valuation |
| June – Aug. 2005 | *Cache La Poudre Feeds, Llc v. Land O' Lakes, Inc., et al.* | .04-D-329 CBS | US District Court, District of Colorado | *Settled* | *Trade-mark* | *Dorsey and Whitney LLP* | Expert rebuttal report re: reverse confusion damages |
| Aug. 2005 | *Precision Replacement Parts Corp. v. Auto Glass Components, Inc.* | 04-CV-566L | US District Court, Western District of Washington at Seattle | *Settled* | *Trade-mark* | *Shuttleworth & Ingersoll* | Expert rebuttal report re: Alleged trademark infringement damages |
| Aug.– Oct. 2005 | *Kevin Trudeau et al.* v. George Lanoue, et al. | 04C-7165 | US District Court, Northern District of Illinois, Eastern Division | *Settled* | *Trade-mark* *Domain Names* | *Winston and Strawn, LLP* | Expert report on intellectual property damages |



Fernando Torres
Qualifications and Experience
Page 6

| Date Range | Parties | Case No. | Court | Status | Nature | Hired by | Involvement |
|---|---|---|---|---|---|---|---|
| Sept. 2005 – Feb. 2006 | *Collins & Aikman Corporation, et al.* | 05-55927 | US Bankruptcy Court, Eastern District Of Michigan, Southern Division | Liqui-dated | Patent Value | Kirkland & Ellis, LLP | Valuation Report For The Debtor In Possession Regarding European Patent Sale |
| January – April 2006 | Richard Bach and Russell Munson v. *Forever Living Products U.S., et al.* | 05-0970 | US District Court, Western District of Washington at Seattle | Settled | Trade-mark Copyright | Perkins Coie, LLP | Expert report re: to valuation of damages for the infringement of trademarks and copyrights |
| April 2006 | Digital Envoy Inc. v. *GOOGLE Inc.* | 04-01497 | U.S. District Court of the Northern District of California, San Jose Division | Settled | Trade Secrets | Wilson Sonsini Goodrich & Rosati | Expert consulting re: breach of non-disclosure agreement and trade secret misappropriation |
| July – November 2006 | *El Comandante Management Company, LLC., et al.* | 04-10938 ESL | US Bankruptcy Court District of Puerto Rico | Ch.11 Reorg. Con-firmed. | Trade-mark Intangible Asset Fair Value | Anderson, Kill & Olick | Expert valuation & opinion reports re: Intellectual property and Liquidating trust value. |
| 2006-2008 | *Interstate Bakeries Corp., et al.* | 04-45814 | US Bankruptcy Court, Western District Of Missouri, Kansas City Division | Ch. 11 Reorg. Con-firmed | Trade-mark | Miller Buckfire & Co. | Expert Trademark Valuation Reports |
| October 2006 | *MTS Inc. (dba Tower Records), et al.* | 06-10886 | US Bankruptcy Court, District Of Delaware | Ch 11 Liqui-dated | Trade-mark Contract | McGuire Woods, LLP | Valuation Of The Trademark and Other Intangible Property. |



Fernando Torres
Qualifications and Experience
Page 7

| Date Range | Parties | Case No. | Court | Status | Nature | Hired by | Involvement |
|---|---|---|---|---|---|---|---|
| August - October 2007 | *Adjustment Of Rates And Terms For Preexisting Subscription Services and Satellite Digital Audio Radio Services.* (**XM Radio, Sirius Satellite**) | 2006-1 CRB DSTRA | Copyright Royalty Board, Library Of Congress, Washington, D.C. | *Rates Set* | *Copyright* *Trade-mark* | *Wiley Rein,LLP Weil, Gotshal & Manges, LLP* | Expert Rebuttal Report Re: Apportion-ment of Compensa-tion For Brand, Endorse-ment And Exclusivity Value Compo-nents. |
| January 2007 – May 2008 | ***Louis Vuitton Malletier*** v. *Dooney & Bourke, Inc.* | 04 - 2990 | US District Court, Southern District Of New York | *Closed* | *Trade-mark* | *Arent Fox, LLP Mintz Levin, LLP Sheppard Mullin, LLP* | Expert Report Regarding Trademark Infringement And Dilution Damages |
| April 2006 – October 2007 | ***Aronchick / Inkine*** v. *Wolf Block, et al.* | 0712 | Court Of Common Pleas, Philadelphia County, PA | *Settled* | *Patent Value* *Licensing Customs & Practices* | *White & Williams* | Expert Report & Rebuttal Report Re: Customs And Practices / Economic Damages - Lost Patent Royalties due to malpractice |
| November 2007 | ***A. Flores And P. Wong*** v. *ASI Computer Technologies, Inc.* | 06-00135 | U.S. District Court, Southern District Of Texas | *Closed* | *Trade-mark* *Contract* | *Notzon & Maddox* | Expert Trademark Valuation Report |
| October – November 2007 | *Verizon, Inc. and Verizon Wireless, Inc. v.* ***Oversee.net, et al.*** | 07-1732 | U.S. District Court, Central District Of California | *Settled* | *Trade-mark* *Domain Name* | *Quinn Emmanuel* | Expert Rebuttal Report of Intellectual Property Damages |
| November 2007 – January 2009 | ***Gerd Petrik*** v. *Abbott Laboratories and Abbott GmbH & Co. KG* | *Arbitration* | Int. C. of C. - International Court Of Arbitration Paris, France | *Closed* | *Trade-mark* *Contract* | *Pestalozzi Lachenal Patry (Switzer-land)* | Expert Trademark Valuation Report |



Fernando Torres
Qualifications and Experience
Page 8

| Date Range | Parties | Case No. | Court | Status | Nature | Hired by | Involvement |
|---|---|---|---|---|---|---|---|
| February – March 2008 | *Big Fish Games, Inc*. v. *IWin, Inc., et al.* | C07-0718 Jcc | US District Court, Western District Of Washington | *Settled* | *Trade Secrets* | *Perkins Coie, LLP* | Consulting Re: Valuation Of Trade Secret Misap-propriation |
| January – 2008 | *Warner Bros. Entertainment. Inc., et al. v.* **Dave Grossman Creations, Inc., et al.** | 4:06-Cv-00546 | US District Court, Eastern District Of Missouri, Eastern Division | *Closed* | *Copyright* | *Collen IP* | Expert Report Re: Copyright Damages Assessment |
| June – 2008 | **Spanski Enterprises, Inc. et al.** v *Telewizja Polska, S.A., et al.* | 07 Civ 930 | US District Court, Southern District of New York | *Settled* | *Contract, Copyright* | *Loeb & Loeb, LLP* | Expert Rebuttal Report, Deposition |
| July - 2008 | **Rodney D. Tow, Chapter 7 Trustee For Cyrus II, L.P., Et Al.** v. *Schumann Rafizadeh, et al.* | 05-39857-H1-7 Adv. Pro. NO. 07-03301 | US Bank-ruptcy Court Southern District Of Texas | *Settled* | *Adversary Proce-eding – Use of Estate Funds* | *Munsch, Hardt, Kopf & Harr, P.C.* | Expert Report Re: Intellectual Property Investment Valuation |
| October, 2008 | **The OCUC of Adamson Apparel, Inc.,** V. *Aris Industries, Inc., Et Al* | 04-30799 | US Bankruptcy Court, Central District, California | *Settled* | *Adversary Proce-eding* | *Pachulski, Stang, Ziehl & Jones LLP* | Expert Report Re: Trademark License Valuation |
| March - 2009 | **Société Des Bains De Mer Et Du Cercle Des Etrangers à Monaco vs.** *PlayShare Plc, Grand Monaco Ltd., Gamshare (UK) Ltd., Lucan Toh, Maxwell Wright, Hillstead, Ltd.* | 07- CV - 4802 | US District Court , Southern District of New York | *Closed* | *Trademark Infringe-ment* | *Quinn Emmanuel* | Expert Report Re: Trademark Infringement and Cyber-squatting Damages |
| April - 2009 | **Shipson, LLC and Victor Dahan** vs. *Joe's Jeans, Inc., et al.* | BC386316 | Superior Court Of The State Of California (Los Angeles County) | *Closed* | *Contract* | *Mark V. Asourian, Esq. APC* | Expert Declaration: Customer Database Value |



Fernando Torres
Qualifications and Experience
Page 9

| Date Range | Parties | Case No. | Court | Status | Nature | Hired by | Involvement |
|---|---|---|---|---|---|---|---|
| April – 2009 | *Woody Allen v.* **American Apparel, Inc.** | *08 CV - 3179* | United States District Court<br><br>Southern District of New York | *Settled* | Rights of Publicity, False Endorsement | *Loeb & Loeb, LLP* | Expert Report on Damages |
| April – 2009 | **Ironwood Capital Ltd v.** *Ironwood Capital Management, et al.* | *07 CV - 1624* | United States District Court<br><br>District of Connecticut | *Closed* | Trademark Infringement, False Endorsement | *Harris Beach, PLLC* | Expert Report on Damages |
| May - 2009 | **Korea Radio USA, Inc. d/b/a RADIO KOREA, vs.** *NY METRO RADIO KOREA, Inc. d/b/a NY RADIO KOREA, et al.* | *07-7418 ODW* | United States District Court<br><br>Central District of California | *Closed* | *Trademark & Contract* | *Karacter Law and Jay Hong, Esq.* | Declaration on trademark infringement damages. |
| July - 2009 | *Curtis J. Jackson III, p/k/a 50 Cent, v.* **Taco Bell Corp.** | *08-06545 NRB* | United States District Court<br><br>Southern District of New York | *Settled* | Rights of Publicity, False Endorsement | *Patterson Belknap Webb & Tyler, LLP* | Expert Rebuttal Report and Opinion on Damages |
| August - 2009 | *Gen. C.E. Yeager v.* **Cingular Wireless LLC, et al** | *07-02517 FCD GGH* | United States District Court<br><br>Eastern District of California | *Closed* | Rights of Publicity, False Endorsement | *Mennemeier Glassman & Stroud LLP* | Expert Rebuttal Report and Opinion on Damages |
| April - 2010 | *Credit Solutions LLC v.* **KVIS LLC** | *No. 33-145-00373-09* | American Arbitration Association – (St. Petersburgh, Fla.) | *Closed* | Unfair Competition Claims and trade secret misappropriation | *Karla Gonzalez-Acosta, Esq.* | Damages Expert Report, Deposition and Arbitration Testimony |
| December – 2010 | *In Re: McConnell and* **Gregg** | *07D005483* | Superior Court of the State of California – County of Orange | *Closed* | Value of Estate Assets | *Hughes & Sullivan, PPC* | Patent Value Court Testimony |
| November 2010 – March 2011 | *Miller International, Inc. v.* **Clinch Gear, Inc., et al.** | *10-CV-01167WDM* | United States District Court for the District Of Colorado | *Settled* | Trademark Infringement | *Quinn Emmanuel* | Expert report on likelihood of trademark confusion |



Fernando Torres
Qualifications and Experience
Page 10

| Date Range | Parties | Case No. | Court | Status | Nature | Hired by | Involvement |
|---|---|---|---|---|---|---|---|
| June – Nov 2011 | Gen. C.E. Yeager v. **Aviat Aircraft inc.** & S. Horne | 10-CV-2055 | United States District Court Eastern District of California | Closed | Rights of Publicity, False Endorse-ment | Wilson Elser Moskowitz Edelman & Dicker LLP | Expert Rebuttal Report and Opinion on Damages |
| June 2011 | **Hebrew University of Jerusalem** v. General Motors LLC | 10-CV-3790 | United States District Court Central District of California | Closed | Rights of Publicity, False Endorse-ment | Arent Fox | Expert Damages Report, Deposition |
| June 2011 – Sept. 2011 | **Laserfiche** v. SAP AG, et al. | 10-CV-7843 | United States District Court Central District of California | Settled | Trademark Infringe-ment. | Law Offices of R. Weiss, Buchwalter Nemer,& MaceikoIP | Expert Damages Report – Rebuttal, Deposition |
| May – July 2011 | Yellow Pages Photos, Inc. **v. User-Friendly Phone Book, LLC, et al.** | 10-CV-00436 | United States District Court Middle District of Florida | Closed | Copyrights Advertising | David M. Snyder, PA | Expert Damages Rebuttal Report |
| February 2012 | **The Int'l. Aloe Science Council Inc.** V. Fruit of the Earth, Inc. | 11-CV-2255 | United States District Court District of Maryland | Settled | Trademark Infringe-ment. | Kane Kessler, P.C. | Expert Rebuttal Report on Damages, Depositions |
| March 2012 | **A. Fraley, et al** v. Facebook, Inc. | 11-CV-1726 | United States District Court Northern District of California | Settled | Rights of Publicity Class Action | The Arns Law Firm | Expert Declarations in Support of Motion for Class Certification, Value of Injunctive Relief, Deposition |
| April – May 2012 | **Estate of Michael Jackson, et al**, v. Howard Mann, et al. | 11-CV-0584 | United States District Court Central District of California | Settled | Rights of Publicity | Katten Muchin Resenman  Kinsella Weitzman Iser Kump & Aldisert | Expert Damages Report |
| June – July 2012 | Bruce Lee Enterprises v. **A.V.E.L.A., Inc. Urban Outfitters, Inc., Target Corporation, and  Leo Valencia** | 10-CV-2333 | United States District Court Southern District of New York | Settled | Rights of Publicity | Melissa W. Woo-Allen | Expert Damages Rebuttal Report |



Fernando Torres
Qualifications and Experience
Page 11

| Date Range | Parties | Case No. | Court | Status | Nature | Hired by | Involvement |
|---|---|---|---|---|---|---|---|
| Aug – Sept 2012 | *Essy Ghavamedinni v. AEG Facilities, et al.* | 11-CV-568 | United States District Court<br><br>Southern District of California | *Settled* | Copyright / Rights of Publicity | *Seyfarth Shaw LLP* | Damages Expert Consulting |
| Aug 2012– | *J.A. Fry/Fox Network Systems vs Aztec Doberman Pinscher Club of San Diego* | 11–1329 BTM | United States District Court<br><br>Southern District of California | *Settled* | Copyright | *Hamilton & McInnis* | Damages Expert Report |
| Oct – Dec 2012 | *Rock and Roll Religion, Inc. and Defiance USA Inc. vs CELS Enterprises, Inc. and R.Goldman* | 09-cv-05258 | United States District Court<br><br>Central District of California | *Settled* | Trade-mark | *The Taillieu Law Firm* | Likelihood of Confusion Expert Report |
| Nov – Dec 2012 | *BSH Home Appliances Corp. v. The Julia Child Foundation for Gastronomy and the Culinary Arts* | 12-cv-11590 | United States District Court<br><br>District of Massachu–setts | *Settled* | Rights of Publicity | *Miller Barondess, LLP* | Expert Damages Report |
| June-July 2013 | *ITC Textiles v. JC Penney & Bluprint* | 12-02975 | United States District Court<br><br>Central District of California | *Settled* | Copyright | *Ezra Brutzkus Gubner LLP* | Expert Damages Report |
| July-August 2013 | *Raul Lizalde, VEBS Inc. v. Advanced Planning Services, Inc., et al.* | 10-0834 | United States District Court<br><br>Southern District of California | *Settled* | Copyright | *Ward & Hagen LLP* | Preliminary Expert Damages Report |
| August 2013 | *Jude Law v. Paloform Inc.* | SC120354 | Superior Court of the State of California (Los Angeles) | *Closed* | Rights of Publicity | *Wilson Elser Moskowitz Edelman & Dicker LLP* | Preliminary Expert Damages Report, Arbitration |
| September -November 2013 | *Scidera, Inc. v. Newsham Choice Genetics, LLC* | AAA 16-174-00582-12 | American Arbitration Association | *Closed* | Contract, Database | *Neymaster Goode, PC* | Expert Damages Rebuttal Report, Deposition, Arbitration |
| October 2013 | *Americeuticals et al V. Bella Medical Products et al* | 13-CV-283 | United States District Court<br><br>Central District of California | *Closed* | Trademark Infringe-ment | *Hamrick & Evans, LLP* | Expert Damages Report |



Fernando Torres
Qualifications and Experience
Page 12

| Date Range | Parties | Case No. | Court | Status | Nature | Hired by | Involvement |
|---|---|---|---|---|---|---|---|
| November 2013 | *Imagenetix, Inc.* v. **Frutarom USA, Inc.** | *12-CV-02823* | United States District Court<br><br>Southern District of California | *Closed* | Breach of License/ Contract | *Duane Morris LLP* | Expert Rebuttal Report on Damages |
| December 2013 | **Soft Serve, Inc. d/b/a/ SPRINKLES** v. Sprinkles Cupcakes, LLC | *13-CV-01782* | U.S. District Court for the District of Columbia | *Settled* | Trademark Infringe-ment | *Wiley Rein LLP* | Expert Damages Report |
| February 2014 | **Lambert Corp.** v. LBJC, Inc.et al. | *13-CV-0778* | United States District Court<br><br>Central District of California | *Settled* | Copyright & Trademark Infringe-ment | *Ezra Brutzkus Gubner LLP* | Expert Damages Report, Deposition |
| April 2014 | **S. Mattocks** v. Black Entertainment Television LLC | *13-CV-61582* | United States District Court<br><br>Southern District of Florida | *Closed* | Intangible Asset Fair Market Value | *Tripp Scott PA* | Declaration, Expert Damages Report, Deposition |
| June- July 2014 | **AVELA, Inc.** v. The Estate of Marilyn Monroe, LLC | 12-CV-4828 | United States District Court<br><br>Southern District of New York | *Pending* | Trade-mark Infringe-ment | Technology Litigation Center | Rebuttal Expert Damages Report |
| July – Aug. 2014 | **Tierra Intelectual Borinquen, Inc.** v. Toshiba Corporation. | 13-cv-47 | United States District Court<br><br>Eastern District of Texas | *Settled* | Patent Infringe-ment | Ferraiuoli, LLC | Expert Damages Report, Deposition |
| Aug. 2014 | **S. Abu-Lughod** v. S. Calis, Tocali, Inc., ASCII Media, Inc., et al. | 13-cv-2792 | United States District Court<br><br>Central District of California | *Pending* | Contract, Software IP value | Kalbian Hagerty LLP | Expert Rebuttal Reports, Depositions |
| Feb – Mar 2015 | **S. Nerayoff** vs. L. Rokhsar | 203157-2012 | Supreme Court Of The State Of New York | *Pending* | Value of Patent Assets | Baker & Hostetler LLP | Expert Declaration on Patent Value, Trial testimony |
| Jan. - May 2015 | In Re Google, Inc., **Privacy Policy Litigation**. | 12-cv-1382 | United States District Court<br><br>Northern District of California | *Pending* | Breach of Contract Class Action | Grant & Eisenhofer P.A. | Expert Report on Privacy Damages, Deposition |



Fernando Torres
Qualifications and Experience
Page 13

| Date Range | Parties | Case No. | Court | Status | Nature | Hired by | Involvement |
|---|---|---|---|---|---|---|---|
| *March – April 2015* | **We Rock The Spectrum Kid's Gym LLC** *vs. KidZone LLC et al* | 14-cv-3888 | United States District Court<br><br>Central District of California | *Settled* | Trademark Infringement | *Ezra Brutzkus Gubner LLP* | Expert Damages Report |
| *May 2015* | **FPAP LLC et al** *vs. Fabian Perez, DeMontfort Fine Art Ltd., et al.* | 15-cv-01847 | United States District Court<br><br>Central District of California | *Pending* | Copyright Infringement, Breach of Contract | *Rome & Assoc. APC* | Expert Damages Report |
| *June 2015* | *Bausch & Lomb Inc.*<br>*v.*<br>**Faezeh Mona Sarfarazi, M.D.** | 09-cv-6041 | United States District Court<br><br>Western District of New York | *Pending* | Breach of Contract, Patent | *Napoli Bern Ripka Shkolnik, LLP* | Expert Damages Report |