FILED

1  Robert G. Hubbard
   E-Mail: robh@purbeverages.com
2  Robert G. Hubbard, Pro Se
   15 Northwood Ave.
3  Libby, MT 59923
   Telephone No.: 612-998-2086
4  Fax No.: 81-992-6155

5  Appearing Pro Se,
   Robert G. Hubbard dba PUR Beverages
6  And Northwest Beverage Distributors

2016 MAY -2  PM 2: 48

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

7

8                    **UNITED STATES DISTRICT COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10  POM WONDERFUL LLC, a              Case No. CV13-06917-RGK (JPRx)
    Delaware limited liability company,
11                                     **ROBERT G. HUBBARD'S**
                        Plaintiff,     **AMENDED COUNTERCLAIM**
12
       v.                              **DEMAND FOR JURY TRIAL**
13  ROBERT G. HUBBARD d/b/a PUR
    BEVERAGES, PORTLAND                **[Hon. R. Gary Klausner]**
14  BOTTLING COMPANY an
    Oregonian company, and DOES 1
15  through 10, inclusive,

16                      Defendants.

17  ─────────────────────────

18  ROBERT G. HUBBARD d/b/a PUR
    BEVERAGES,
19
                    Counterclaimant,
20
       v.
21  POM WONDERFUL LLC, a
    Delaware limited liability company,
22  THE WONDERFUL COMPANY
    LLC, an Delaware limited liability
23  company, STEWART RESNICK, an
    individual, LYNDA RESNICK, an
24  individual, and John and Jane Does 1-
    10
25
                    Counterdefendants.
26

27

28

BY FAX

HUBBARD'S AMENDED COUNTERCLAIM
Case No. 13-CV-06917 RGK (JPRx)

1   Counterclaimant Robert G. Hubbard ("Counterclaimant"), for his

2   Counterclaim against Counterdefendants POM WONDERFUL LLC, a Delaware

3   limited liability company ("Pom Wonderful") and THE WONDERFUL

4   COMPANY LLC, a Delaware limited liability company ("TWC") (Pom Wonderful

5   and TWC are collectively referred to hereinafter as "Plaintiffs/Counterdefendants"),

6   alleges as follows:

7                                   **PARTIES**

8       1.     Counterclaimant is an individual doing business as Pur Beverages.

9       2.     Counterclaimant is informed and believes, and thereon alleges, that

10  Plaintiff/Counterdefendant POM WONDERFUL LLC, is a limited liability

11  company organized under the laws of the State of Delaware.

12      3.     Counterclaimant is informed and believes, and thereon alleges, that

13  Plaintiff/Counterdefendant THE WONDERFUL COMPANY LLC, is a limited

14  liability company organized under the laws of the State of Delaware.

15      4.     Counterclaimant is informed and believes, and thereon alleges, that

16  Counterdefendant STEWART RESNICK and John and Jane Does 1-10 are

17  individuals residing in this judicial district, and is one of the owners of the

18  companies stated above, and therefore is a proper counter-defendant in this case.

19      5.     Counterclaimant is informed and believes, and thereon alleges, that

20  Counterdefendant LYNDA RESNICK is an individual residing in this judicial

21  district, and is one of the owners of the companies stated above, and therefore is a

22  proper counter-defendant in this case.

23                               **JURISDICTION**

24      6.     Subject matter jurisdiction in this Court is proper pursuant to 28 U.S.C.

25  §§ 1331, 1338(a), and 2201, 15 U.S.C. § 1 et seq. and §1121.

26      7.     Plaintiff/Counterdefendant Pom Wonderful has consented to the

27  personal jurisdiction of this Court, and venue is proper for the Counterclaim under

28  28 U.S.C. Section 1391.

HUBBARD'S AMENDED COUNTERCLAIM                    1
Case No. 13-CV-06917 RGK (JPRx)

8. Counterclaimant is informed and believes and thereon alleges that Counterdefendants STEWART RESNICK and LYNDA RESNICK and John and Jane Does 1-10 are subject to the personal jurisdiction of this Court because they conduct business in this judicial district.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

9. On or about October 17th, 2013, I was served with a complaint from Pom Wonderful for this lawsuit. Shortly thereafter, I began investigating the claims made against me and the available defenses to form the basis of my answer to the complaint.

10. I did online legal research to understand how to properly answer a complaint. Based on that research, I formed the opinion that I would need to assert affirmative defenses as well, as long as the various affirmative defenses are applicable to the facts of this case.

11. I embarked on a daily investigation of Pom Wonderful, the history of their company, the history of their trademark practice, the history of their litigation practices, and the available affirmative defenses.

12. Based on the facts that were revealed in that research, I concluded that there were 44 affirmative defenses that seemed to fit within the revealed facts of the research.

13. At the time of the answer and subsequent amended answer, I was under the impression that my only "redress" was affirmative defenses. Not realizing that I should have called some of them "counterclaims", rather than "affirmative defenses". I have since learned the proper names of the counterclaims that I previously called affirmative defenses, and am asking the court to allow the amendment.

14. Although additional facts have come to light in the two and a half years this litigation is pending, all of the facts that support the counterclaims were known at the time of the original answer and/or amended answer. Additional facts became

1  known to support these counterclaims over the litigation, but the counterclaims are
2  the same.

3      15.    I discovered on or after October 17th, 2013 that, in the year 2000, the
4  original name of the Plaintiff/Counterdefendant's company was Paramount Juice
5  Company. Plaintiff/Counterdefendants and their owners and various employees
6  have formed an enterprise and developed a very elaborate scheme to intentionally
7  submit fraudulent documents to the USPTO, in order to receive trademark
8  protection for various words and terms that would not have been registered if not for
9  the blatant and fraudulent representations to the trademark office.

10      16.    The scheme involved, among other facts, obtaining standard character
11 trademarks and a subsequent design element trademark. Both marks have different
12 levels of rights that go along with the trademark. Plaintiffs/Counterdefendants'
13 various design marks were intentionally made very distinct and different in order for
14 the mark to stand out. Those various design marks are the only marks that
15 Plaintiffs/Counterdefendants use on their goods in commerce.

16      17.    The Plaintiffs/Counterdefendants in some instances, submitted
17 specimens to the USPTO to show that the standard character mark is actually being
18 used on the goods, when in fact, those goods were not in commerce at all that were
19 shown in the specimen documents. If it weren't for the intentional submission of
20 the fraudulent documents, the USPTO would not have issued the registration.

21      18.    Additionally, the Plaintiffs/Counterdefendants' scheme involved
22 intentionally and fraudulently filing section 8 and section 15 affidavits stating that
23 the standard character mark registrations have been in use consecutively and
24 currently, which in turn the USPTO relied on those willful, false, and fraudulent
25 affidavits and issued incontestability status on numerous standard character marks.

26      19.    On or about April 24, 2001, Plaintiff/Counterdefendant applied to the
27 United States Patent and Trademark Office ("USPTO") for registration of the
28 standard character mark "POM" in the category of fruit juices. Based on

1   representations made by Plaintiff/Counterdefendant in connection with the

2   application, Registration No. 2637053 (the "'053 Registration") was issued by the

3   USPTO on October 15, 2002.

4         20.    In connection with the aforementioned application,

5   Plaintiff/Counterdefendant knowingly made fraudulent and false, material

6   representations with the intent to deceive the USPTO.  Specifically,

7   Plaintiff/Counterdefendant knowingly represented to the USPTO that it intended to

8   use, and had used, the standard character mark "POM" in commerce in a manner

9   sufficient to establish and maintain rights in the mark.

10        21.    In fact, Plaintiff/Counterdefendant never intended to and never actually

11  utilized the standard character mark "POM" in commerce.

12        22.    Plaintiff/Counterdefendant was at all times aware that they were not

13  making any use of the standard character mark in commerce, and have never put the

14  standard character mark on any goods in the category that were actually sold in

15  commerce.

16        23.    Plaintiff/Counterdefendant repeatedly (and at times simultaneously)

17  applied for registration of both a standard character mark and the same mark with

18  the heart design element as a design mark, with the intent to only use the design

19  marks in commerce, while being able to enforce the rights to the standard word

20  marks with sham litigation towards other competitors in the various markets and

21  gaining a monopoly in the various markets based on the fraud.

22        24.    Pom Wonderful , the owners of Pom Wonderful, employees of Pom

23  Wonderful and various trademark attorneys (co conspirators) knew that it had not

24  made any use sufficient to establish rights in the standard character mark to entitle

25  Plaintiff/Counterdefendant to registration thereof, Plaintiff/Counterdefendant used

26  the broad scope of rights fraudulently obtained to threaten and induce others in the

27  market of pomegranate-related products to enter into agreements to cease utilizing

28  any form of the word "pom" and/or cease conducting business with anyone who

1 utilized any form of the word "pom" in an effort to chill and/or impede competition
2 in the market of pomegranate-related products.

3     26.   Plaintiff/Counterdefendant never intended to make and never actually
4 made use of the "POM" standard character mark and obtained the registration by
5 fraud and for the improper purpose of occupying the market for pomegranate-related
6 products to impede competition.

7     27.   The intent of the scheme, was to be able to enforce the very broad
8 rights that come along with an incontestable standard word mark and monopolize
9 the various markets of the goods.

10     28.   The Plaintiffs/counterdefendants' scheme involved engaging in sham
11 litigation and sham cease and desist letters whereby the Plaintiffs/Counterdefendants
12 would either send a cease and desist letter to a competitor, oppose a competitor's
13 trademark registrations, file to cancel already registered marks, and file shame
14 litigation lawsuits. Those actions were taken by the Plaintiffs/Counterdefendants
15 with the sole purpose to prohibit any competition in various markets and to gain a
16 monopoly in the various markets.

17     29.   The scheme that involves the sham litigation techniques mentioned
18 above, would result in the competition entering into settlement agreements that
19 would not enter the market, pay Pom Wonderful for damages asserted, changing the
20 name of their products, having their insurance company pay
21 Plaintiffs/Counterdefendants to settle the various actions, and/or putting the
22 company out of business because of the mounting legal expenses that are incurred
23 defending the baseless actions.

24     30.   The results of the scheme culminated in Plaintiffs/Counterdefendants
25 making money for the enterprise by the various payments received directly from
26 settlement agreements in addition to benefiting from the profits obtained by selling
27 their various products with little to no competition because they have formed a
28 monopoly on the various industries and markets.

31.   All of the actions above were intentional, willful, and fraudulent.  They were all actions taken by the Plaintiffs/Counterdefendants and their various co-conspirators in the enterprise, and they were taken with the intent to profit from the scheme itself by various payments as well as the additional profits obtained by inhibiting competitors from being able to enter the various markets, allowing for a monopoly on the markets and subsequent sales of the markets.

## FIRST COUNTERCLAIM

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT

### (Against Plaintiffs/Counterdefendants)

32.   Paragraphs 1 through 31 of this Counterclaim are incorporated by reference as a part of this claim.

33.   Plaintiffs/Counterdefendants assert trademark rights in one or more registered trademarks that Plaintiffs/Counterdefendants know to be unenforceable and/or not infringed by Counterclaimant.

34.   Counterclaimant submits that consumers are not likely to be misled, deceived and/or confused by the simultaneous uses of Counterclaimant and Plaintiffs/Counterdefendants in connection with their various products.

35.   Counterclaimant submits that Plaintiffs/Counterdefendants' suit for trademark infringement is without basis and seeks a declaration that there is no likelihood of confusion.

36.   Counterclaimant's statements and conduct demonstrate that an actual case or controversy exists between the parties hereto regarding the asserted infringement.  By reason thereof, Counterclaimant is entitled to a binding declaration clarifying the parties' rights and declaring that Counterclaimant's use does not infringe any right Plaintiffs/Counterdefendants may have.

37.   Counterclaimant submits that the case is an exceptional case such that Counterclaimant is entitled to an award of damages, both actual and statutory, and attorney fees.

## SECOND COUNTERCLAIM

## CANCELATION OF TRADEMARK REGISTRATIONS FOR FRAUD

### (Against Plaintiffs/Counterdefendants)

38.     Counterclaimant hereby realleges and incorporates herein by reference the above paragraphs 1 through 37 inclusive, as set forth above.

39.     In connection with the application for registration filed by Plaintiffs/Counterdefendants to the USPTO on or about April 24, 2001, Plaintiffs/Counterdefendants knowingly misrepresented to the USPTO that they intended to use, and had used, the standard character mark "POM" in commerce in a manner sufficient to establish and maintain rights in the mark.

40.     In the Intent-To-Use Application for the '053 Registration, Plaintiffs/Counterdefendants falsely represented that they intended to use the standard character mark "POM" in commerce.

41.     In the Statement of Use filed by Plaintiffs/Counterdefendants with the USPTO, Plaintiffs/Counterdefendants represented that the mark was in use in commerce as of April 11, 2002, but submitted a specimen showing use only in conjunction with the heart design element.  As of the date of the Statement of Use filed with the USPTO, the mark was not in use in commerce, and Plaintiffs/Counterdefendants were aware that the representation to the USPTO was false.

42.     Plaintiffs/Counterdefendants made the very same representations in connection with the applications for registration of each of the following standard character marks, in addition to the '053 Registration: POM WONDERFUL (Reg. Nos. POM WONDERFUL (Reg. Nos. 2640835 and 3687491); POM TEA (Reg. No. 3411595); LIGHT POM TEA (Reg. No. 3391707); POM IN A PILL (Reg. No. 3337435); POM POWER (Reg. No. 2944481); POMx (Reg. Nos. 3562516 and 3674405); POMx SHOTS (Reg. No. 3667882); POMX SHOTS (Reg. No. 3667882); and POWERED BY POMx (Reg. No. 3208934) (collectively "the POM

1    standard character mark registrations").

2        43.    But for the intentional fraudulent and false statements made by

3    Plaintiffs/Counterdefendants in connection with the applications for the '053

4    Registration and the POM standard character mark registrations, the registrations

5    would not have issued.

6        44.    Counterclaimant asserts that the '053 Registration and the POM

7    standard character mark registrations are subject to cancellation as a result of the

8    fact that they were obtained by fraudulent conduct and, absent such fraudulent

9    conduct, the '053 Registration and the POM standard character mark registrations

10   would not have issued from the USPTO.

11       45.    Counterclaimant seeks an order from the Court that the '053

12   Registration and the POM standard character mark registrations are to be cancelled

13   by the U.S. Patent and Trademark Office.

14                        **THIRD COUNTERCLAIM**

15   **DAMAGES FOR FEDERAL TRADEMARK REGISTRATION OBTAINED**

16              **BY FRAUD (15 U.S.C. § 1120)**

17              **(Against Plaintiffs/Counterdefendants)**

18       46.    Counterclaimant hereby realleges and incorporates herein by reference

19   the above paragraphs 1 through 45 inclusive, as set forth above.

20       47.    Plaintiffs/Counterdefendants obtained the '053 Registration and the

21   POM standard character mark registrations as a result of the aforementioned

22   material and fraudulent representation to the USPTO. Plaintiffs/Counterdefendants'

23   trademark registrations were thus obtained in violation of 15 U.S.C. § 1120.

24       48.    Counterclaimant has been forced to defend this action for infringement

25   of registered trademarks against Plaintiffs/Counterdefendants, a party with

26   fraudulently-procured trademark registrations. Thus, Counterclaimant has been

27   injured by Plaintiffs/Counterdefendants' misrepresentations and fraudulent scheme.

28

HUBBARD'S AMENDED COUNTERCLAIM                  8
Case No. 13-CV-06917 RGK (JPRx)

**FOURTH COUNTERCLAIM**

**CANCELATION OF TRADEMARK REGISTRATION FOR**

**ABANDONMENT**

**(Against Plaintiffs/Counterdefendants)**

49.     Counterclaimant hereby realleges and incorporates herein by reference the above paragraphs 1 through 48 inclusive, as set forth above.

50.     As of the date that '053 Registration and the POM standard character mark registrations were issued by the USPTO, no use had been made of the marks subject to those registrations in commerce in a manner sufficient to establish or maintain Plaintiffs/Counterdefendants' rights therein.

51.     Since the date of issuance of the '053 Registration and the POM standard character mark registrations, Plaintiffs/Counterdefendants have failed for a period of more than three consecutive years to make use of the marks in commerce in a manner sufficient to establish and/or maintain rights therein.

52.     During the period of non-use of the marks that are the subject of '053 Registration and the POM standard character mark registrations, Plaintiffs/Counterdefendants had no intent to resume use of the marks in any manner sufficient to establish or maintain rights therein.

53.     Counterclaimant asserts that '053 Registration and the POM standard character mark registrations are subject to cancellation as a result of the fact of Plaintiffs/Counterdefendansts nonuse of the marks for a period of more than three consecutive years with no intent to resume use in any manner sufficient to establish or maintain rights therein.  Plaintiffs/Counterdefendants have therefore abandoned the marks, and '053 Registration and the POM standard character mark registrations are, therefore, subject to cancelation.

54.     Counterclaimant seeks an order from the Court that '053 Registration and the POM standard character mark registrations are to be cancelled by the U.S. Patent and Trademark Office.

## FIFTH COUNTERCLAIM

## CANCELATION OF TRADEMARK REGISTRATION FOR GENERICNESS

### (Against Plaintiffs/Counterdefendants)

55.   Counterclaimant hereby realleges and incorporates herein by reference the above paragraphs 1 through 54 inclusive, as set forth above.

56.   The mark that is the subject of the '053 Registration has become a widely-used term by the general public as a generic designation for pomegranate-related or pomegranate-flavored goods.  Prospective purchasers have come to perceive the mark that is the subject of the '053 Registration primarily as a generic designation for the category, type, or class of the goods with which it is used.

57.   As the mark that is the subject of the '053 Registration has become generic, it is not protectable as a trademark and is subject to cancellation.

58.   Counterclaimant seeks an order from the Court that the '053 Registration is to be cancelled by the U.S. Patent and Trademark Office.

## SIXTH COUNTERCLAIM

## VIOLATION OF 5 U.S.C.S. § 2

### (Against Plaintiffs/Counterdefendants)

59.   Counterclaimant hereby realleges and incorporates herein by reference the above paragraphs 1 through 58 inclusive, as set forth above.

60.   Plaintiffs/Counterdefendants possesses monopoly power in the market of pomegranate-related products.  Plaintiffs/Counterdefendants willfully acquired that power by fraudulently obtaining trademark registrations for standard character marks they have never used and never intended to use, and obtained for the sole purpose of preventing others in the market from using the descriptive abbreviation "pom" to describe the contents or flavor of pomegranate-related products.

61.   Plaintiffs/Counterdefendants' monopolistic scheme includes wrongfully enforcing and threatening to enforce against others trademark rights to which they have no right and obtained only by fraud on the USPTO.

1    Plaintiffs/Counterdefendants have misused those fraudulently-obtained registrations

2    to squelch the ability of Counterclaimant and others to lawfully compete in the

3    market for pomegranate-related products.

4          62.    Counterclaimant has suffered antitrust injury as a result of

5    Plaintiffs/Counterdefendants' anti-competitive conduct.

6                         **SEVENTH COUNTERCLAIM**

7              **VIOLATION OF 18 U.S.C.A. §§ 1961 et seq.**

8        **(Against Stewart Resnick and Lynda Resnick and attorneys and co**

9                **conspirators, John and Jane Does 1-10)**

10         63.    Counterclaimant hereby realleges and incorporates herein by reference

11   the above paragraphs 1 through 62 inclusive, as set forth above.

12         64.    Stewart Resnick and Lynda Resnick (collectively, the "Resnick

13   Counterdefendants"), their attorneys and co conspirators in the enterprise, directed

14   Plaintiff/Counterdefendant and their employees and co conspirators to obtain

15   registrations in trademarks including, but not limited to, the '053 Registration and

16   the POM standard character mark registrations, which the Resnick

17   Counterdefendants had no intention of using in commerce, and which are

18   descriptive of the product genus of pomegranate-related products, so as to gain a

19   monopoly in the various markets.

20         65.    The Resnick Counterdefendants and Pom Wonderful, and the enterprise

21   and co conspirators received money through directing the wrongful enforcement of

22   the fraudulently-obtained trademark rights against third party competitors in the

23   pomegranate-related product market, by threatening sham and/or baseless litigation

24   and/or forcing payment of settlements and agreements to cease using the descriptive

25   term "pom", as well as agreements to cease conducting business with others who

26   continue to use the descriptive and generic term "pom" in connection with the sale

27   of pomegranate-related products.

28         66.    The Resnick Counterdefendants, Pom Wonderful, it's co conspirators,

HUBBARD'S AMENDED COUNTERCLAIM                11
Case No. 13-CV-06917 RGK (JPRx)

1   and the enterprise invested the funds received from these activities in

2   Plaintiffs/Counterdefendants' enterprise to fund the continuance of the scheme to

3   fraudulently register and misuse trademarks in the manner described above.

4         67.    The Resnick Counterdefendants and individual members of the

5   enterprise are persons within the meaning of 18 U.S.C.A. § 1961(3) and as persons

6   employed by or associated with said enterprise, conducted and participated, directly

7   and indirectly, in the conduct of the affairs of said enterprise through a pattern of

8   racketeering activity in violation of 18 U.S.C.A. § 1962(c).

9         68.    The acts of racketeering, occurring within five years of one another,

10  constitute a pattern of racketeering activity within the meaning of 18 U.S.C.A. §

11  1961(5).

12        69.    The conduct of the Resnick Counterdefendants resulted in an unfair and

13  anti-competitive advantage to Plaintiffs/Counterdefendants in the market of

14  pomegranate-related products in that it forced third party competitors out of the

15  market and created a disadvantage for third parties, including Counterclaimant,

16  remaining in the market by eliminating suppliers and purchasers who will do

17  business with those third parties, causing economic damages and competitive injury.

18  Moreover, the wrongful conduct by the Resnick Counterdefendants has created a

19  monopoly for Plaintiffs/Counterdefendants in the market for pomegranate-related

20  products.

21        70.    By reason of the Resnick Counterdefendants' violations,

22  Counterclaimant is entitled to threefold the damages sustained pursuant to 18

23  U.S.C.A. § 1964(c), with interest thereof at the statutory rate, and a reasonable

24  attorneys' fee in connection herewith.

25        **WHEREFORE**, Counterclaimant prays for judgment against Plaintiffs/

26  Counterdefendants and the Resnick Counterdefendants as follows:

27        (1)    That Plaintiffs/ Counterdefendants and the Resnick Counterdefendants

28  account and pay to Counterclaimant damages in an amount sufficient to fairly

1  compensate Counterclaimant for the injury sustained in an amount in excess of the

2  jurisdictional limits of this court;

3      (2)    That Plaintiffs/ Counterdefendants and the Resnick Counterdefendants

4  be ordered to pay to Counterclaimant the costs of this action and Counterclaimant's

5  attorneys' fees;

6      (3)    That Counterclaimant be granted a declaratory judgment as follows:

7          (a)    That Counterclaimant's conduct does not constitute infringement

8  of any trademark alleged by Plaintiffs/ Counterdefendants;

9          (b)    That all of the trademark registrations that were obtained by

10 fraud on the USPTO be canceled,

11          (c)    That all of the trademark registrations that have been abandoned

12     be canceled ; and

13          (d)    That the '053 Registration be canceled be reason that the mark

14 that is the subject thereof has become generic;

15          (e)    That the term "pom" be deemed generic,

16     (4)    That Counterclaimant be granted treble damages; and

17     (5)    That Counterclaimant be granted such other, further, different or

18 additional relief as this court deems equitable and proper.

19     I verify that the allegations in this counter claim are truthful in their entirety .

20

21 Dated: May 2, 2016                    Robert G. Hubbard, Pro Se

22                              By: _____

23                                  Robert G. Hubbard
                                     ROBERT G. HUBBARD, Pro Se
                                     dba PUR Beverages and Northwest
                                     Beverage Distributors

24

25

26

27

28

1

**DEMAND FOR JURY TRIAL**

2      Pursuant to Fed. R. Civ. P. 38(b), Mr. Hubbard demands a trial by jury of all

3   triable issues herein.

4

5   Dated: May 2, 2016                              Robert G. Hubbard, Pro Se

    By: _____

6                                                   Robert G. Hubbard
                                                    ROBERT G. HUBBARD, Pro Se
7                                                   dba PUR Beverages and Northwest
                                                    Beverage Distributors
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28