Robert G. Hubbard
E-Mail: robh@purbeverages.com
Robert G. Hubbard, Pro Se
15 Northwood Ave.
Libby, MT 59923
Telephone No.: 612-998-2086
Fax No.: 81-992-6155

Appearing Pro Se,
Robert G. Hubbard dba PUR Beverages
And Northwest Beverage Distributors

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| POM WONDERFUL LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT G. HUBBARD d/b/a PUR BEVERAGES, PORTLAND BOTTLING COMPANY an Oregonian company, and DOES 1 through 10, inclusive,<br><br>Defendants.<br>_____<br>AND RELATED COUNTERCLAIM | Case No. CV13-06917-RGK (JPRx)<br><br>**ROBERT G. HUBBARD'S MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON ABANDONMENT OF REGISTRATION NO. 2637053**<br><br>**Date:  June 13, 2016**<br>**Time: 9:00 a.m.**<br>**Ctrm: 850**<br><br>**[Hon. R. Gary Klausner]** |

## TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 13, 2016, at 9:00 a.m. or as soon thereafter as this matter may be heard, in Courtroom 850 of the United States District Court for the Central District of California, Roybal Federal Building, 255 East Temple Street, Los Angeles, CA 90012-3332, Los Angeles, California, before the Honorable R. Gary Klausner, United States District Judge, Defendant and Counterclaimant Robert G. Hubbard ("Defendant/ Counterclaimant" or "Hubbard") will and hereby does move for partial summary judgment on (1) his affirmative

defense of abandonment of United States Trademark Registration No. 2637053 (the "'053 Registration"), (2) his counterclaim for cancellation of trademark registration based on abandonment of the '053 Registration, and (3) on Pom Wonderful's claim for trademark infringement of the mark that is the subject of the '053 Registration. This motion is made pursuant to Federal Rule of Civil Procedure 56 on the grounds that there exist no controverted facts precluding entry of a ruling in favor of Hubbard on each of these claims and, therefore, Hubbard is entitled to such ruling as a matter of law.

This motion is based on this Notice and Motion, the attached Memorandum of Points and Authorities, the concurrently-filed Request for Judicial Notice of Declaration of Robert G. Hubbard and exhibits thereto, the concurrently-lodged Statement of Uncontroverted Facts, and all pleadings on file in this matter, and any additional evidence or argument to be received by the Court at the hearing on this matter.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on April 21, 2016.

Dated: May 17, 2016                    Robert G. Hubbard, Pro Se


By:  *//Robert G. Hubbard//*
     Robert G. Hubbard
     ROBERT G. HUBBARD, Pro Se
     dba PUR Beverages and
     Northwest Beverage Distributors

# **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................... 1

II.    UNCONTESTED MATERIAL FACTS ..................................................... 2

III.   ARGUMENT ............................................................................................. 4

     A.    Standards for Summary Judgment ...................................................... 4

     B.    Standards for Proving Abandonment of Trademark .............................. 5

          1.    Design Elements May Not Be Used As Part Of A Standard
               Character Mark .......................................................................... 6

          2.    The Heart in **PƠM** Is A Design Element ................................. 9

               (a)    The Heart is not in the Standard Character Set ................. 9

               (b)    There is a Design Code Provided for Hearts ..................... 9

               (c)    Pom Wonderful registered the Heart as a Design ........... 10

          3.    The Fact That USPTO Examining Attorney Accepted A
               Specimen With The Heart Design Element Does Not Mean
               **PƠM** Constitutes Use of the POM Standard Character Mark . 10

          4.    The Only Uses Made by Pom Wonderful of the POM
                Standard Character Mark Were Non-Trademark Uses .............. 11

               (a)    Webpage Use Which Purports to Show Use of the
                        Mark Without Ability to Purchase Do Not Constitute
                        "Use In Commerce" ......................................................... 11

               (b)    Webpage Uses Which Purport to Show an Ability to
                        Purchase Prior to 2008 but for Which There are No
                        Records of Sales Do Not Establish "Use In Commerce". 12

               (c)    Webpage Uses Post-2007 Which Are Not Trademark
                        Uses of the "POM" Standard Character Mark Do Not
                        Establish "Use In Commerce" .......................................... 14

                (d)    Use After More Than 10 Years of Non-Use Does Not
                        Reverse Abandonment ...................................................... 14

                (e)    Use of "POM" as Part of Its URL Does Not Constitute
                        Trademark Use ................................................................. 15

                (f)    Use of "POM" as Part of Its Corporate Name Does Not
                        Constitute Trademark Use ................................................ 16

         (g)     Use of Other of Pom Wonderful's Marks Does Not
Constitute Use of the "POM" Standard Character Mark . 16

    5.    Pom Wonderful Failed to Use the POM Standard Character
Mark Without the Heart Design Element For More than
Three Consecutive Years ............................................................. 19

    6.    Pom Wonderful Never Had Any Intent To Resume Use
of the POM Standard Character Mark ....................................... 19

IV.    CONCLUSION ....................................................................................... 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF AUTHORITIES**

**Cases**

*Am. Paging Inc. v. Am. Mobilphone Inc.*

   13 U.S.P.Q. 2d 2036 (T.T.A.B. 1989) ................................................................. 18

*AmBrit, Inc. v. Kraft, Inc.*

   805 F.2d 974, 1 U.S.P.Q.2d 1161 (11th Cir. 1986) ............................................. 15

*Anderson v. Liberty Lobby, Inc.,*

   477 U.S. 242, 248 (1986) ....................................................................................... 5

*Anvil Brand Inc. v. Consol. Foods Corp.*

   464 F. Supp. 474 (S.D.N.Y. 1978) ..................................................................... 19

*Brookfield Communs., Inc. v. W. Coast Entm't Corp.*

   174 F.3d 1036 (9th Cir. 1999) ............................................................................. 17

*Celotex Corp. v. Catrett,*

   477 U.S. 317, 322 (1986) ....................................................................................... 5

*Cunningham v. Laser Golf Corp.*

   222 F.3d 943, 55 USPQ2d 1842 (Fed. Cir. 2000) ............................................... 8

*Data Concepts, Inc. v. Digital Consulting, Inc.*

   150 F.3d 620 (6th Cir. 1998) ............................................................................... 18

*Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*

   458 F.3d 931 (9th Cir. 2006) ..................................................................... 5, 6, 19

*Fossil, Inc. v. The Fossil Group*

   49 USPQ2d 1451 (TTAB 1998) ...................................................................... 7, 8

*Hansen Bev. Co. v. Cytosport, Inc.*

   2009 U.S. Dist. LEXIS 120508 (C.D.Cal. Nov. 4, 2009, No. CV 09-0031-

   VBF(AGRx) ......................................................................................................... 18

*In re Abramof*
   2008 TTAB LEXIS 372 (TTAB Mar. 28, 2008)....................................................6

*In re Carinhoso Globo B.V, supra*
   2001 TTAB LEXIS 195, *6.......................................................................................8

*In re Carinhoso Globo B.V.*
   2001 TTAB LEXIS 195 (TTAB Feb. 28, 2001) ....................................................6

*In re Ginc UK Ltd.*
   2007 TTAB LEXIS 83 (TTAB Sept. 4, 2007) ...................................................6, 8

*In re NBA Props.*
   2000 TTAB LEXIS 863 (TTAB Dec. 29, 2000)....................................................7

*In re Pollio Dairy Products Corp., Inc.*
   8 USPQ2d 2012 (TTAB 1988)............................................................................7, 8

*In re RealKidz Inc.*
   2010 TTAB LEXIS 247, *10....................................................................................8

*In re Sergio Abramof, supra*
   2008 TTAB LEXIS 372, *7......................................................................................8

*In re Supply Guys, Inc.*
   86 USPQ2d 1488 (TTAB 2008)...........................................................................16

*In re Unclaimed Salvage & Freight Co.*
   192 U.S.P.Q. 165 (T.T.A.B. 1976) ......................................................................16

*INB National Bank v. Metrohost*
   22 USPQ2d 1585, 1588 (TTAB 1992)..................................................................7

*Learning Internet v. Learn.com, Inc.*
   2009 U.S. Dist. LEXIS 126180 (D.Or. Nov. 25, 2009, No. CV 07-227-AC) ......15

*Lockheed Martin Corp. v. Network Solutions, Inc.*
   985 F.Supp. 949 (C.D.Cal. 1997) ........................................................................15

*One Indus., LLC v. Jim O'Neal Distrib.*
   578 F.3d 1154 (9th Cir. 2009) .............................................................................18

*Phillips Petroleum v. C.J. Webb* 442 F.2d 1376, 170 USPQ 35, 36 (CCPA 1971) 7, 8

*Pro-Cuts v. Schilz-Price Enters. Inc.*

   27 U.S.P.Q. 2d 1224 (T.T.A.B. 1993) ...................................................18

*Pure Imagination, Inc. v. Pure Imagination Studios, Inc.*

   2004 U.S. Dist. LEXIS 19838 (N.D.Ill. Sep. 29, 2004, No. 03 C 6070) ..............15

*Rivard v. Linville*

   133 F.3d 1446 (Fed. Cir. 1998) .......................................................5, 19

*S.E.C. v. Seaboard Corp.,*

   677 F.2d 1289, 1293 (9th Cir. 1982) ...................................................4

*Silverman v. CBS Inc.*

   870 F.2d 40 (2nd Cir. 1989) ..........................................................19

*SoDIMA v. International Yogurt Co., Inc.*

   662 F. Supp. 839, 3 U.S.P.Q.2d 1641 (D. Ore. 1987).................................15

*Specht v. Google, Inc.*

   747 F.3d 929, 110 U.S.P.Q.2d 1319 (7th Cir. 2014)..................................15

*Uncas Mfg. Co. v. Clark & Coombs Co.*

   309 F.2d 818 (1st Cir. 1962)..........................................................19

*Unuson Corp. v. Built Entm't Group, Inc.*

   2006 U.S. Dist. LEXIS 2207, at *16-17 (N.D.Cal. Jan. 23, 2006, No. C 05-03705
MHP)..................................................................................20

*Van Dyne-Crotty, Inc. v. Wear-Guard Corp.*

   926 F.2d 1156 (Fed. Cir. 1991) .......................................................18

**Statutes**

15 U.S.C. § 1127..........................................................................6

15 U.S.C. § 1127(1).......................................................................19

37 CFR 2.52, § 2.52.......................................................................9

FED. R. CIV. P. 56(a)............................................................................................4

FED. R. CIV. P. 56(c) ...........................................................................................5

FED. R. CIV. P. 56(e).............................................................................................5

**Other Authorities**

2 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition
      § 17:25-27 (4th ed. 1998) .............................................................................17

U.S. Dept. of Commerce, Patent and Trademark Office,
Trademark Manual of Examining Procedure
      § 1202.02, at 1202-4 (2d ed. May 1993).......................................................16

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

I am seeking partial summary judgment on Pom Wonderful's claim for trademark infringement of Registration No. 2637053 (the "'053 Registration") on the basis of the affirmative defense of abandonment and on my counterclaim for cancellation based on abandonment of the '053 Registration.  Pom Wonderful never intended to use, and never used, the standard character mark "POM" that is the subject of the '053 Registration in any manner sufficient to establish rights or avoid abandonment.[1]  Therefore, the '053 Registration has been abandoned, is subject to cancellation, and I cannot be liable for infringement of the '053 Registration as a matter of law.  Thus, I am also entitled to partial summary judgment on Pom Wonderful's claim for trademark infringement as to the '053 Registration.

Pom Wonderful's '053 Registration is invalid and subject to cancellation because it has been abandoned.  Pom Wonderful has failed to use the mark in commerce for a period of more than three years without any intent to resume such use.  I have conducted extensive written discovery and depositions, yet Pom Wonderful can produce ***no evidence that Pom Wonderful has ever used the '053 Registration in commerce*** after fraudulently obtaining the registration by misrepresenting to the USPTO that it was, in fact using the mark.  Further, there is no evidence that the mark has been used on goods at any point in time.  Rule 30b6 deposition testimony confirms Pom Wonderful never intended to use the mark in commerce, and have no intent to ever use the mark.  Documentary evidence

---

[1] The registration was obtained by Pom Wonderful as part of a scheme to fraudulently register marks it never used and never intended to use to gain a monopoly in the pomegranate market.  Pom Wonderful used these fraudulently-obtained registrations to force others out of the market, when it has no right to exclude others from using the marks that it has never used.  Pom Wonderful has done this with many marks, registered as both design and standard character marks, but has only ever used the design marks.  The '053 Registration is the main weapon in Pom Wonderful's arsenal against me.  However, the registration is invalid.

1

demonstrates insufficient use to avoid abandonment, and deposition testimony confirms there has never been any intent to commence or resume use of the "POM" standard character mark.  Therefore, the mark has been abandoned, and cannot serve as the basis for Pom Wonderful's claim of trademark infringement.

Pom Wonderful owns numerous registrations for design marks that it does, in fact use on goods, in connection with goods (on displays and hangtags) and on its website where such goods can be purchased.  However, not now, or in the past fifteen years since obtaining the registration, has Pom Wonderful used the standard character mark that is the subject of the '053 Registration on or in connection with goods.  Faced with the prospect of losing the '053 Registration when Hubbard revealed this failure, Pom Wonderful has now taken the position that the use of the various marks that it has *separately* registered can somehow save the '053 Registration.  Pom Wonderful argues that various uses were made of its other marks -- POM, POM Wonderful, "Pom Wonderful" standard character mark, and others, that it asserts are "interchangeable" with the "POM" standard character mark.  They are not interchangeable, and the law is clear that such uses of *other* marks will not save the '053 Registration.  Moreover, the scant examples of purported use of the "POM" standard character mark on Pom Wonderful's website and in its URL are as a matter of law not trademark use sufficient to avoid abandonment.[2]  Therefore, the mark is abandoned, the '053 Registration should be cancelled, and the claim for infringement of the mark should fail.

## II.   UNCONTESTED MATERIAL FACTS

On April 24, 2001, Paramount Juice Company LLC filed application assigned

---

[2] In a desperate attempt to show *some* use of the '053 mark, Pom Wonderful produced a trace amount of unauthenticated documentation that are "screenshots" of purported use on a website.  However, the information in those documents cannot be confirmed, and Pom Wonderful's Rule 30b6 representative couldn't authenticate them.  For this motion, I accept the screenshots show what they purport to show, but do not concede authenticity or admissibility of the documents for any other purpose.

Serial No. 76245687 with the United States Patent and Trademark Office

("USPTO") for registration of the standard character mark "POM" for fruit juices.

(UMF No. 1.)  Pom Wonderful LLC filed a Statement of Use dated June 4, 2002

with the USPTO in connection with application Serial No. 76245687 to which it

attached a specimen showing the mark used in combination with a heart design

element: POM.  (UMF No. 2.)  The USPTO issued Registration No. 2637053 in

2002 for application Serial No. 76245687 based on a specimen submitted by

Pom Wonderful showing the mark used in combination with a heart design element:

POM.  (UMF No. 3.)  Each subsequent specimen submitted by Pom Wonderful to

maintain the registration shows the mark used in combination with a heart design

element: POM.  (UMF No. 4.)

On November 22, 2002, the USPTO issued Registration No. 2640835 for the

standard character mark "POM WONDERFUL" based on a specimen showing the

mark used in combination with a heart design element: POM Wonderful.  (UMF

Nos. 5 and 10.)  On November 4, 2003, the USPTO issued Registration No.

2780314 for the "design plus words, letters, and/or numbers" mark: POM

Wonderful.  (UMF No. 6.)  On July 20, 2004, the USPTO issued Registration No.

2864641 for the "Design plus words, letters, and/or numers" mark: POM

Wonderful.  (UMF No. 7.)  On January 24, 2006, the USPTO issued to Pom

Wonderful LLC Registration No. 3047447 for the "design plus words, letters, and/or

numbers" mark: POM.  (UMF No. 8.)  The specimens filed to support Registration

Nos. 2640835, 2780314, 2864641 and 3047447 shows a mark identical to that used

to support Registration No. 2637053.  (UMF No. 9.)

The USPTO provides a standard character set from which standard character

marks can be formed.  That standard character set does not include a heart.  (UMF

No. 11.)  The USPTO also provides a Design Search Code Manual for identification

and location of design elements in trademarks.  That manual includes a design code

for hearts.  (UMF No. 12.)

The only uses made by Pom Wonderful of the POM mark are those which either do not qualify as "trademark" uses, or included the heart design element. (UMF Nos. 13 through 18.)  Of those uses that do not include the heart design element, Pom Wonderful has produced examples of: (1) webpage uses which purport to show use of the "POM" standard character mark with no ability to purchase from the webpage (UMF No. 13); (2) webpage uses which purport to show an ability to purchase prior to 2008 but for which there are no records of sales (UMF Nos. 14 and 15); (3) webpage uses which purport to show ability to purchase post-2007 which are not trademark uses of the "POM" standard character mark (UMF No. 16); (4) uses of the word "pom" in combination with other of Pom Wonderful's marks (UMF No. 18), (5) and uses made of the mark after more than 10 years of non-use (UMF No. 17).  Pom Wonderful has never made any trademark use of the mark that is the subject of the '053 Registration.  (UMF No. 19)

Pom Wonderful can show no use of the POM standard character mark for a period of more than three years, from 2002 through at least 2013.  (UMF No. 20.)  Pom Wonderful never had any intent to use the POM standard character mark without the heart design element.  (UMF No. 21.)  During the time when Pom Wonderful made no use of the POM standard character mark, it has no intent to resume use thereof.  (UMF No. 22.)

## III.   ARGUMENT

### A.   Standards for Summary Judgment

A federal court shall grant summary judgment if the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing version of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1289, 1293 (9th Cir. 1982).  A dispute is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*,

1  477 U.S. 242, 248 (1986).

2        Summary judgment is proper where the pleadings, depositions, answers to

3  interrogatories, and admissions on file, together with the affidavits, if any, show that

4  there is no genuine dispute as to any material fact and that the moving party is

5  entitled to a judgment as a matter of law.  *Anderson, supra*, 477 U.S. at 247; *Celotex*

6  *Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Under Rule 56(c) of the Federal Rules

7  of Civil Procedure, entry of summary judgment is mandated against a party who

8  fails to make a sufficient showing to establish the existence of an essential element

9  of that party's case and on which that party will bear the burden of proof at trial.

10  *Celotex, supra*, 477 U.S. at 323-24 ("The moving party bears the initial burden of

11  establishing the absence of a genuine issue of material fact.").  The moving party

12  can meet its burden by "pointing out to the district court that there is an absence of

13  evidence to support the nonmoving party's case." *Id.* at 325.  Once the moving party

14  has met its initial burden, "Rule 56(c) . . . requires the non-moving party to go

15  beyond the pleadings and by . . . affidavits or by the 'depositions, answers to

16  interrogatories and admissions on file,' designate 'specific facts showing that there

17  is a genuine issue for trial.'" *Celotex, supra*, 477 U.S. at 324 (quoting FED. R. CIV.

18  P. 56(e)).  If the non-moving party fails to point to specific facts, the moving party is

19  entitled to judgment as a matter of law.  *Celotex, supra*, 477 U.S. at 323.

20        Whether trademark abandonment has occurred is a factual issue which can be

21  resolved on summary judgment in the absence of conflicting evidence concerning

22  use of the mark at issue.  *Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.,*

23  458 F.3d 931, 937 (9th Cir. 2006), citing *Rivard v. Linville,* 133 F.3d 1446, 1449

24  (Fed. Cir. 1998).  Here, as discussed below, there is no factual dispute as to the uses

25  made.  Thus, partial summary judgment as to all claims dependent on the validity of

26  the '053 Registration is proper.

27      **B.**    **Standards for Proving Abandonment of Trademark**

28        This Circuit set out the applicable standards for proving abandonment of a

5

trademark in *Electro Source, supra,* 458 F.3d at 936.  The Lanham Act defines abandonment as (1) discontinuance of trademark use and (2) intent not to resume such use.  Nonuse for three consecutive years constitutes prima facie evidence of abandonment.  The "use" that must be made of the mark to avoid abandonment is bona fide use made in the ordinary course of trade, and not made merely to reserve a right in a mark.  15 U.S.C. § 1127.  According to the *Electro Source* court, "Section 1127 thus provides that 'use' of a trademark defeats an allegation of abandonment when: the use includes placement on goods sold or transported in commerce; is bona fide; is made in the ordinary course of trade; and is not made merely to reserve a right in a mark."  *Electro Source, supra*, 458 F.3d at 936.  Moreover, "abandonment under § 1127 requires an intent not to resume trademark use, as opposed to a prospective intent to abandon the mark in the future."  *Id.*

### C.   Pom Wonderful Abandoned the '053 Registration

#### 1.   Design Elements May Not Be Used As Part Of A Standard Character Mark

Pom Wonderful takes the position that POM (either alone, or as part of the mark "POM Wonderful") and the "POM" standard character mark are interchangeable and, therefore, each use of POM constitutes use of the mark that is the subject of the '053 Registration.  This position is untenable, since use of a design element is prohibited in a standard character mark such as that which is the subject of the '053 Registration.  Both TTAB and federal court decisions are clear on the scope of rights conferred by virtue of the registration of a standard character mark. The rights conferred by registration of standard character marks extend to the mark in a variety of forms and styles, including different fonts and colors.  They *do not* extend to include protection for those words combined with a design element.  *In re Ginc UK Ltd*., 2007 TTAB LEXIS 83 (TTAB Sept. 4, 2007); *In re Abramof,* 2008 TTAB LEXIS 372 (TTAB Mar. 28, 2008) (not precedent of the TTAB); *In re Carinhoso Globo B.V.*, 2001 TTAB LEXIS 195 (TTAB Feb. 28, 2001) (not

precedent of the TTAB); *In re NBA Props.*, 2000 TTAB LEXIS 863 (TTAB Dec. 29, 2000) (not precedent of the TTAB).

As discussed in the matter of *Fossil, Inc. v. The Fossil Group*, 49 USPQ2d 1451, 1454 (TTAB 1998):

> First, because opposer's registrations of FOSSIL are in typed drawing form, this means that opposer's rights in the word mark FOSSIL are "not limited to the mark depicted in any special form." *Phillips Petroleum v. C.J. Webb*, 442 F.2d 1376, 170 USPQ 35, 36 (CCPA 1971). Accordingly, in any likelihood of confusion analysis, we "must consider all reasonable manners in which [the word FOSSIL] could be depicted." *INB National Bank v. Metrohost*, 22 USPQ2d 1585, 1588 (TTAB 1992). Thus, opposer's typed drawing registrations of FOSSIL afford opposer a scope of protection which encompasses all reasonable manners in which the word FOSSIL could be depicted including, simply by way of example, all lower case block letters, all upper case block letters, a mixture of lower case and upper case block letters and various script forms. However, opposer's registrations of the word FOSSIL in typed drawing form do not afford opposer rights in the word FOSSIL combined with other wording or with designs. Hence, opposer's registrations of FOSSIL per se in typed drawing form do not encompass opposer's alleged mark AUTHENTIC FOSSIL GENUINE and oval design.

*Fossil, Inc., supra,* 49 USPQ2d 1454.  In *In re NBA Properties, Inc.*, *supra,* 2000 TTAB LEXIS 863 [*8], the TTAB reiterated this rule:

> A typed drawing allows protection for all reasonable manners of presentation. *See Phillips Petroleum Co. v. C. J. Webb, Inc.,* 442 F.2d 1376, 170 USPQ 35 (CCPA 1971) and *INB National Bank v. Metrohost Inc.*, 22 USPQ2d 1585, 1588 (TTAB 1992). This is so because rights in the typed word reside in the word itself not in any particular display of the term. Thus, rights in the term would not be extended to include protection for that word combined with, for example, other words or a design element. *See Fossil Inc. v. Fossil Group*, 49 USPQ2d 1451 (TTAB 1998) and *In re Pollio Dairy Products Corp., Inc.*, 8 USPQ2d 2012 (TTAB 1988). Consequently, it would not be reasonable to assume that regis-trant's mark KAPS would be presented with the design element appearing in applicant's mark.

This limitation of the rights conferred by a standard word mark registration has been consistently enforced. *In re Carinhoso Globo B.V, supra*, 2001 TTAB LEXIS 195, *6 ([R]ights in the typed word reside in the word itself not in any particular display of the term. Thus, rights in the term would not be extended to protect that word combined with other matter such as a design element or additional wording.) *In re Ginc UK Limited, supra*, 2007 TTAB LEXIS 83; 90 U.S.P.Q.2D (BNA) 1472 ([R]ights in the term ZOGGS TOGGS would not extend to include protection for those words combined with a design element.) *In re Sergio Abramof, supra*, 2008 TTAB LEXIS 372, *7 ([R]ights in the term SERGIO'S would not extend to include protection for that word combined with other wording or design elements.)

Most recently, the rule was again reiterated in the case of *In re RealKidz Inc.*, 2010 TTAB LEXIS 247, *10 (not precedent of the TTAB):

> In addition, the cited mark FOR REAL KIDS is registered in typed form, and we must consider all reasonable manners in which registrant could depict its mark. See *Phillips Petroleum v. C.J. Webb*, 442 F.2d 1376, 58 C.C.P.A. 1255, 170 USPQ 35, 36 (CCPA 1971). See also *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1847-48 (Fed. Cir. 2000) (typed drawings are not limited to any particular rendition of the mark). Registrant could reasonably depict its mark in a wide variety of typefaces or fonts, including a display very similar to the stylized format of the wording in the '504 application thereby increasing the visual similarity of these marks. n3

> n3 Contrary to the examining attorney's contention, however, rights in the typed mark FOR REAL KIDS would not extend to include protection for those words combined with a design element. See *Fossil Inc. v. Fossil Group,* 49 USPQ2d 1451 (TTAB 1998); *In re Pollio Dairy Products Corp., Inc.*, 8 USPQ2d 2012 (TTAB 1988).

The requirements of 37 CFR 2.52, § 2.52 plainly prohibit the inclusion of a design element in a standard character mark, and the TTAB and federal courts continue to enforce this prohibition.

In the matter of *In re Morton Norwich Products, Inc.*, 221 USPQ 1023, 1023

(TTAB 1983), the TTAB remarked that a mark cannot be shown as a typed or standard character drawing if it "is stylized or has a design element [that] engenders an uncommon or 'special' commercial impression that would be altered or lost were registration to issue based on a typed drawing."  In this instance, there can be no question that the heart design element in POM engenders an uncommon or "special" commercial impression.  The fact that Pom Wonderful also registered the mark POM as a design mark confirms its agreement that the heart design element engenders an uncommon or "special" commercial impression.

### 2.    The Heart in POM Is A Design Element

#### (a)    The Heart is not in the Standard Character Set

The USPTO provides a "Standard Character Set" from which standard character marks can be drawn.  At http://www.uspto.gov/trademark/standard-character-set, the many standard characters from which a standard character mark may be created does not include a heart.  (RJN, Exh. O.)

#### (b)    There is a Design Code Provided for Hearts

The USPTO Design Search Code Manual lists hearts in Section 02.11.01:  At http://tess2.uspto.gov/tmdb/dscm/dsc_02.htm#021101, the USPTO Design Search Code for heart design elements is listed as follows:

**02.11   Parts of the human body, skeletons, skulls**

02.11.01   Hearts

**Excluding:**    Hearts depicted on playing cards are in 02.11.12; Hearts used as background or carriers are in 02.11.13.

 CARDI♥CARD 

(RJN, Exh. P.)  Notably, one of the examples provided for the heart design element which falls within the code number 02.11.01 is the use of a heart in the place of an

1  "o", just as Pom Wonderful uses the heart design element in POM.  Given that a

2  heart is not included on the USPTO's list of standard characters, but is provided a

3  design code for searching design marks that include hearts, there can be no question

4  that a heart is a design element, rather than the stylization of a standard character.

5          **(c)      Pom Wonderful registered the Heart as a Design**

6          In a plain admission that the heart used in POM is a design element,

7  Pom Wonderful has repeatedly registered POM as a design mark – both as part of

8  the mark "POM" Wonderful and simply as "POM".  (RJN, Exhs. H, K and M,

9  Registration certificates for Registration Nos. 2780314, 2864641 and 3047447.)

10 Were POM and "POM" truly interchangeable, there would have been no reason

11 for Pom Wonderful to register POM as a design mark, since the "POM" standard

12 character mark registration would have protected that iteration of the mark.  The fact

13 that Pom Wonderful separately registered POM as a design mark is an admission

14 that Pom Wonderful understands the standard character mark does not extend to

15 protection of the heart design element.  Thus, use of POM does not constitute use

16 of the "POM" standard character mark.

17       **3.     The Fact That USPTO Examining Attorney Accepted A**

18              **Specimen With The Heart Design Element Does Not Mean**

19              **POM Constitutes Use of the POM Standard Character**

20              **Mark**

21         In briefs in this case and at deposition, Pom Wonderful has argued that proof

22 of the fact that POM and the POM standard character mark are interchangeable

23 can be found in the fact that the examining attorney issued the '053 Registration

24 based upon a specimen that contained the heart design element.  However, it is well-

25 established that the TTAB is not bound by the acceptance of specimens by

26 examining attorneys or the USPTO's Post-Registration Branch.  *In re Nett Designs*

27 *Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001); *In re Rodale Inc.*, 80

28 USPQ2d 1696, 1699 (TTAB 2006).  Thus, issuance of the registration based upon a

specimen showing an improper use is not determinative of whether use of **POM**

constitutes use of the POM standard character mark.

### 4.  The Only Uses Made by Pom Wonderful of the POM Standard Character Mark Were Non-Trademark Uses

In discovery, Pom Wonderful produced what it claims are all uses made of the POM standard character mark that do not include the heart design element.[3] These purported uses fall into four general categories: (1) webpage uses which purport to show use of the "POM" standard character mark with no ability to purchase from the webpage; (2) webpage uses which purport to show an ability to purchase prior to 2008 but for which there are no records of sales; (3) webpage uses which purport to show ability to purchase post-2007 which are not trademark uses of the "POM" standard character mark; and (4) webpage uses since 2013.  Pom Wonderful also claims that it has used the "POM" standard character mark (5) as part of its URL and (6) as part of its corporate name.  Each of these categories of purported uses of the "POM" standard character mark fails to constitute a trademark use sufficient to establish rights in or avoid abandonment of the mark.

### (a)  Webpage Use Which Purports to Show Use of the Mark Without Ability to Purchase Do Not Constitute "Use In Commerce"

Pom Wonderful has produced a number of samples of purported use of the "POM" standard character mark on its website which do *not* provide a means by which the product can be purchased.[4]  Use of a trademark on a website is not "use in commerce" unless the goods with which the mark is associated can be purchased

_____

[3] While Pom Wonderful claims that **POM** and the "POM" standard character mark are interchangeable, in the last section, I established that use of the heart design element cannot establish rights in the standard character mark.  Therefore, all remaining purported "uses" of the mark to be addressed are those that do *not* include the heart design element.

[4] See POM-PUR 36, 40, 46, 66-69, 71-100, 105, 107-108.  (Exh. Q)

through the website.

> A website page that displays a product, and provides a means of ordering the product, can constitute a "display associated with the goods," as long as the mark appears on the web page in a manner in which the mark is associated with the goods, and the web page provides a means for ordering the goods. The Trademark Trial and Appeal Board has held that web pages that display goods and their trademarks and provide for online ordering of such goods are, in fact, electronic displays which are associated with the goods. Such uses are not merely advertising, because in addition to showing the goods, they provide a link for ordering the goods. In effect, the website is an electronic retail store, and the web page is a shelf-talker or banner which encourages the consumer to buy the product. A consumer using the link on the web page to purchase the goods is the equivalent of a consumer seeing a shelf-talker and taking the item to the cashier in a store to purchase it. The web page is thus a point of sale display by which an actual sale is made. *In re Dell Inc.,* 71 USPQ2d 1725 (TTAB 2004); *In re Supply Guys, Inc.,* 2008 TTAB LEXIS 12, *13, 86 U.S.P.Q.2D (BNA) 1488, 1492, 86 U.S.P.Q.2D (BNA) 1488 (Trademark Trial & App. Bd. Mar. 6, 2008).

Without the ability to purchase the product through the website, the use of the mark on the website does not constitute a "display associated with the goods." Thus, each and every sample use of the "POM" standard character mark which constitutes a webpage that does *not* provide a means for purchasing the goods through the website must be discounted, as such samples cannot, as a matter of law, constitute a "display associated with the goods."

**(b)    Webpage Uses Which Purport to Show an Ability to Purchase Prior to 2008 but for Which There are No Records of Sales Do Not Establish "Use In Commerce"**

Pom Wonderful also produced samples of uses of the "POM" standard character mark on its website which appear to provide a manner in which to order goods through the website.[5]  However, no records showing sales were made through

---

[5] These samples appear at POM-PUR 1-33.  (Exh. R)

the website and, at deposition, Pom Wonderful admitted it has no manner in which to prove *any* sales were made through its website at any time prior to 2008.[6] Without proof that sales occurred through the website, Pom Wonderful's purported uses of the "POM" standard character mark are not uses sufficient to establish rights or avoid abandonment.

Merely showing that goods were offered for sale on a website is not sufficient.  The trademark owner must also show sales through the website.  See *Isaco Int'l Corp. v. EZ, Inc.,* 2013 TTAB LEXIS 427 (T.T.A.B. 2013) (mere fact that sales were "available" through website in United States did not suffice to show use in commerce where there was no showing that any sales were made in the U.S. or that goods bearing the mark traveled in U.S. commerce) (not citable as precedent); 1-3 Gilson on Trademarks § 3.02 (2015); citing *In re Nortech Invs., Ltd.,* 2013 TTAB LEXIS 387 (T.T.A.B. 2013).  "[P]utting up a website and offering services is not the same as providing them, and the mark will not be granted a federal registration if that is the only activity demonstrated by the applicant." *Couture v. Playdom, Inc.*, 778 F.3d 1379, 1382, 113 U.S.P.Q.2d 2042 (Fed. Cir. 2015) (stating that "rendering services requires actual provision of services").  Thus, since Pom Wonderful is not able to show any sales of goods through its website prior to 2008, none of the samples of use of the "POM" standard character mark on its website – even where it appears to offer goods for sale – are sufficient to establish rights or avoid abandonment of the mark.[7]

---

[6] See Rule 30b6 deposition, p. 105, line 3 through p. 106, line 21.  (Exh. S)

[7] Even if Pom Wonderful "finds" some evidence of sales through its web pages on which the purported trademark use was made of the "POM" standard character mark, nominal use is not sufficient.  Rather, it would have to show sales typical for the industry.  S. Rep. 100-515, 100th Cong., 2d Sess., pp. 44–45 (Sept. 15, 1988), Vol. 5, Pt. VI infra.

**(c)** **Webpage Uses Post-2007 Which Are Not Trademark Uses of the "POM" Standard Character Mark Do Not Establish "Use In Commerce"**

Pom Wonderful produced a number of examples of use of the word "POM" on its website in conjunction with the "Pom Wonderful 100% Pomegranate Juice Concentrate" product.[8] However, this use does not constitute a "trademark" use of the word "POM". Rather, it is used as shorthand for "pomegranate". Specifically, each example of such use states "POM Wonderful 100% Pomegranate Juice Concentrate" and then changes the reference to the product to "POM Concentrate" thereafter on the web page. The actual name of the product, and that which appears on the package is "POM Wonderful 100% Pomegranate Juice Concentrate" which is then referenced on the web page as "POM Concentrate" for short. Thus, "POM" is plainly employed in this instance not as a trademark, but as a shorthand for "Pomegranate". This use is not a trademark use, as it describes the nature of the product rather than the source of the product. Thus, this use is insufficient to establish rights in or avoid abandonment of the mark that is the subject of the '053 Registration.

**(d)** **Use After More Than 10 Years of Non-Use Does Not Reverse Abandonment**

As established in the above sections, Pom Wonderful can show no use of the "POM" standard character mark from the time of the issuance of the registration in 2002 through early 2013. This alone is sufficient to establish abandonment of the mark that is the subject of the '053 Registration. Pom Wonderful has also produced a number of samples of use of the "POM" standard character mark after I commenced use of the "pom" descriptor on his product in 2013 and/or *after* this

---

[8] These samples appear at POM-PUR 43-45, 50, 59-61 and 64. (Exh. T

1   lawsuit was filed and I raised his defense of abandonment of the registration.[9]

2   However, once a mark has been abandoned, subsequent use does not cure the

3   abandonment retroactively.  *AmBrit, Inc. v. Kraft, Inc.,* 805 F.2d 974, 1 U.S.P.Q.2d

4   1161 (11th Cir. 1986); *SoDIMA v. International Yogurt Co., Inc.,* 662 F. Supp. 839,

5   3 U.S.P.Q.2d 1641 (D. Ore. 1987).  Post-abandonment use does not serve to reclaim

6   trademark rights.  *Specht v. Google, Inc.,* 747 F.3d 929, 110 U.S.P.Q.2d 1319 (7th

7   Cir. 2014) (holding that, following plaintiff's abandonment of its mark in 2002, it

8   could not reclaim its rights by an attempt at use a month after a new user had begun

9   to use the mark in 2007).  Thus, each of the purported uses made *after* abandonment

10  – and after my first purportedly infringing use -- must be disregarded.

11              **(e)      Use of "POM" as Part of Its URL Does Not Constitute**

12                                 **Trademark Use**

13          Pom Wonderful argues that its actions in printing its company website URL

14  on the back of each bottle of its product, www.pomwonderful.com, constitutes use

15  in commerce of the "POM" standard character mark.  For the reasons discussed

16  below in Section 5, such actions do not constitute use in commerce.  In addition,

17  mere registration of a domain name does not constitute the use of the domain name

18  as a trademark.  "Domain name registration is no more than a lease for a virtual

19  storefront, and does not constitute public use of a trademark."  *Pure Imagination,*

20  *Inc. v. Pure Imagination Studios, Inc..* 2004 U.S. Dist. LEXIS 19838 (N.D.Ill. Sep.

21  29, 2004, No. 03 C 6070)); see also *Learning Internet v. Learn.com, Inc.,* 2009 U.S.

22  Dist. LEXIS 126180 (D.Or. Nov. 25, 2009, No. CV 07-227-AC).  "Domain names,

23  like trade names, do not act as trademarks when they are used merely to identify a

24  business entity[.]"  *Lockheed Martin Corp. v. Network Solutions, Inc.,* 985 F.Supp.

25  949, 956 (C.D.Cal. 1997).  Use of a mark in a URL or as part of the internet address

26  of a webpage is not use as a trademark for goods sold on the website.  *In re Supply*

27  _____

28          [9] See POM-PUR 52, 58, 63, 65, 70, 101-104, 106, 111-115.  (Exh. U)

15

1  *Guys, Inc.,* 86 USPQ2d 1488, 1493 (TTAB 2008) (use of LEADING EDGE

2  TONERS as part of an internet address on a webpage was not use as a trademark for

3  goods sold on the website); see also TMEP § 904.03(i)(B)(2) ("[T]he use of the

4  mark embedded in an e-mail address would be viewed as part of the website address

5  where applicant may be contacted, rather than as a trademark.").  Thus, Pom

6  Wonderful's inclusion of www.pomwonderful.com on its product bottles does not

7  constitute use in commerce of the "POM" standard character mark.

8               **(f)     Use of "POM" as Part of Its Corporate Name Does Not**

9                         **Constitute Trademark Use**

10            Pom Wonderful asserts that the inclusion of its corporate name on the product

11  bottles constitutes use in commerce of the "POM" standard character mark.  For

12  starters, trade names do not act as trademarks when they are used merely to identify

13  a business entity.  *In re Unclaimed Salvage & Freight Co.,* 192 U.S.P.Q. 165, 168

14  (T.T.A.B. 1976) (affirming refusal of registration of trade name as trademark where

15  specimen demonstrated use only to identify applicant as a business); U.S. Dept. of

16  Commerce, Patent and Trademark Office, Trademark Manual of Examining

17  Procedure § 1202.02, at 1202-4 (2d ed. May 1993) (directing examiners to refuse

18  registration of material that functions only to identify a business).  Further, however,

19  for the reasons discussed in Section 5, below, such inclusion of the "POM" standard

20  character mark as part of the "POM Wonderful" corporate name does *not* constitute

21  use in commerce of the '053 Registration.

22               **(g)     Use of Other of Pom Wonderful's Marks Does Not**

23                         **Constitute Use of the "POM" Standard Character Mark**

24            Pom Wonderful has argued that use of its related marks, including P☮M,

25  P☮M Wonderful, "POM WONDERFUL" standard character mark, and others

26  constitutes use of the "POM" standard character mark because they give the same

27

28

commercial impression.[10]  Pom Wonderful's attempt to "tack" the use of its other marks to the '053 Registration fails, not just because the '053 Registration *preceded* the use of the marks to which it seeks to tack use, but also because Pom Wonderful has no evidence to support its assertion that the marks provide the same commercial impression.[11]

The Court in *Brookfield Communs., Inc. v. W. Coast Entm't Corp.,* 174 F.3d 1036 (9th Cir. 1999), addressed the same argument:

> This constructive use theory is known as "tacking," as the trademark holder essentially seeks to "tack" his first use date in the earlier mark onto the subsequent mark. See generally 2 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 17:25-27 (4th ed. 1998) [hereafter "McCarthy"].  We agree that tacking should be allowed if two marks are so similar that consumers generally would regard them as essentially the same. . . . The standard for "tacking," however, is exceedingly strict: "The marks must create the same, continuing commercial impression, and the later mark should not materially differ from or alter the character of the mark attempted to be tacked." Van Dyne-Crotty, 926 F.2d at 1159 (emphasis added) (citations and quotation marks omitted). In other words, "the previously used mark must be the legal equivalent of the mark in question or indistinguishable therefrom, and the consumer should consider both as the same mark." Id. (emphasis added); see also Data Concepts, 150 F.3d at 623 (adopting the Van Dyne-Crotty test). This standard is considerably higher than the standard for "likelihood of confusion[.]"

*Brookfield Communs., Inc., supra,* 174 F.3d at 1048.  The Ninth Circuit has stated that "tacking" should be "only in the exceptionally narrow instance[.]" *Hansen Bev. Co. v. Cytosport, Inc.,* 2009 U.S. Dist. LEXIS 120508 (C.D.Cal. Nov.

_____

[10] The purported uses include use of POMx (POM-PUR 34 and 62), POM Wonderful (POM-PUR 51, 53, 54, 56, 57 and 110) and LITE POM (POM-PUR 55, 48 and 49).  (Exh V)  Pom Wonderful holds separate registrations for each.

[11] Pom Wonderful obtained the '053 registration in 2002, the '835 registration in 2002 (for "POM WONDERFUL" standard character mark, the '314 registration in 2003 (for "POM Wonderful"), and the '447 registration (for "POM") in 2006.

17

4, 2009, No. CV 09-0031-VBF(AGRx).

A survey of examples from other circuits was provided in *One Indus., LLC v. Jim O'Neal Distrib.,* 578 F.3d 1154 (9th Cir. 2009), as follows:

> Cases from other circuits and from the Trademark Board confirm that tacking will be allowed only if the marks are virtually identical. The Sixth Circuit has held that "dci" may not be tacked onto "DCI." *Data Concepts, Inc. v. Digital Consulting, Inc.*, 150 F.3d 620, 623-25 (6th Cir. 1998). The Federal Circuit has concluded that "CLOTHES THAT WORK. FOR THE WORK YOU DO" cannot be tacked onto "CLOTHES THAT WORK." *Van Dyne-Crotty, Inc. v. Wear-Guard Corp.,* 926 F.2d 1156, 1160 (Fed. Cir. 1991). The Trademark Board has refused to tack the phrase "AMERICAN MOBILPHONE PAGING" with a stars and stripes background onto "AMERICAN MOBILPHONE" with the same background. *Am. Paging Inc. v. Am. Mobilphone Inc.*, 13 U.S.P.Q. 2d 2036 (T.T.A.B. 1989). The Trademark Board has also refused to tack "PRO-CUTS" onto "PRO-KUT." *Pro-Cuts v. Schilz-Price Enters. Inc.*, 27 U.S.P.Q. 2d 1224, 1227 (T.T.A.B. 1993).

If the "CLOTHES THAT WORK. FOR THE WORK YOU DO" and "CLOTHES THAT WORK" cannot be tacked, "AMERICAN MOBILPHONE PAGING" and "AMERICAN MOBILPHONE" cannot be tacked, and "dci" and "DCI" cannot be tacked, it is clear that "POM" and "POM WONDERFUL", "POM" or "POM Wonderful" (or any other of the marks asserted by Pom Wonderful) cannot be "tacked" with the "POM" standard character mark. They are not legally equivalent, nor are they virtually identical. Moreover, Pom Wonderful is attempting to "tack" its use of *later*-registered marks to the '053 standard character mark registration. Pom Wonderful cannot retroactively breathe life into a mark in which it never established rights. Thus, this Court may find as a matter of law that Pom Wonderful's use of its other marks – including any marks with the heart design element or including other words -- does *not* constitute use of the "POM" standard character mark.

### 5.   Pom Wonderful Failed to Use the POM Standard Character Mark For More than Three Consecutive Years

The above authorities eliminate each and every purported use made by Pom Wonderful of the "POM" standard character mark between 2002 and 2013.  Thus, Hubbard has established a *prima facie* case for abandonment.  *Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*, 458 F.3d 931, 936 (9th Cir. 2006).

### 6.   Pom Wonderful Never Had Any Intent To Resume Use of the POM Standard Character Mark

Three years' consecutive non-use constitutes *prima facie* evidence of abandonment.  15 U.S.C. § 1127(1). Should the party seeking to establish abandonment make a prima facie showing, this showing can be rebutted with "valid reasons for nonuse or by proving lack of intent to abandon." *eMachines, Inc. v. Ready Access Memory,* 2001 U.S. Dist. LEXIS 13904, at *16-17 (C.D.Cal. Mar. 5, 2001, No. EDCV 00-00374-VAP (EEx); citing *Star-Kist Foods, Inc. v. P.J. Rhodes & Co*., 769 F.2d 1393, 1396 (9th Cir. 1985).  Once the presumption of nonuse is triggered, the burden shifts to the mark's owner to produce evidence of either actual use during the period in question or intent to resume use.  *Cerveceria, supra*, 892 F.2d at 1025-26.

In cases where there is a presumption of abandonment from nonuse, a mere statement declaring an intent not dispositive. *Electro Source, supra,* 458 F.3d at 937, fn. 4.  Intent not to resume may be inferred from circumstances.  *Id.*, citing *Rivard, supra,* 133 F.3d at 1448-49 (affirming summary judgment finding of abandonment where there was a presumption of abandonment from nonuse); *Silverman v. CBS Inc*., 870 F.2d 40, 46-48 (2nd Cir. 1989) (affirming finding of abandonment after a trial on the merits where there was a presumption of abandonment from nonuse); *Uncas Mfg. Co. v. Clark & Coombs Co.,* 309 F.2d 818, 819-20 (1st Cir. 1962) (same); *Anvil Brand Inc. v. Consol. Foods Corp.*, 464 F. Supp. 474, 481 (S.D.N.Y. 1978) (finding an unrebutted inference of abandonment from nonuse after a trial on the merits).

19

Pom Wonderful produced no evidence showing an intent to use the "POM" standard character mark (other than in conjunction with the heart design element).[12] In fact, Pom Wonderful's view that "P♡M" is interchangeable with the "POM" standard character mark *precludes* any concrete intent to resume use.  Evidence of intent to resume use is necessary to overcome the presumption of abandonment:

> An intent not to abandon, however, is insufficient to rebut a prima facie case of abandonment. [citations omitted]  A concrete "intent to use" is required. Id. This is so because "in every contested abandonment case, the respondent denies an intention to abandon its mark; otherwise there would be no contest." [citations omitted]  To overcome the presumption arising from lack of use, "[t]he registrant must put forth evidence with respect to what activities it engaged in during the nonuse period or what outside events occurred from which an intent to resume use during the nonuse period may reasonably be inferred." *Id*.

*Unuson Corp. v. Built Entm't Group, Inc.,* 2006 U.S. Dist. LEXIS 2207, at *16-17 (N.D.Cal. Jan. 23, 2006, No. C 05-03705 MHP).  Since Pom Wonderful sees no difference between use of "P♡M" and the "POM" standard character mark, there can be no question that it has no actual intent to resume use of the mark.

## IV.   CONCLUSION

For the reasons set forth herein, I am entitled as a matter of law to summary judgment in my favor on the affirmative defense of abandonment and on my counterclaim for cancellation of trademark registration based on abandonment as to Registration No. 2,637,053, as well as on Pom Wonderful's claim of infringement of the infringement of the '053 Registration.

Dated: May 17, 2016                          Robert G. Hubbard, Pro Se


                                        By:   *//Robert G. Hubbard//*
                                              Robert G. Hubbard
                                              ROBERT G. HUBBARD, Pro Se
                                              dba PUR Beverages and Northwest
                                              Beverage Distributors

---

[12] See Pom Wonderful Rule 30b6 Deposition, p. 62, lines 5-20.  (Exh. W)