JOIE MARIE GALLO (SBN 178064)
joie.gallo@roll.com
MICHAEL M. VASSEGHI (SBN 210737)
michael.vasseghi@roll.com
DANIELLE M. CRIONA (SBN 204074)
danielle.criona@roll.com
ROLL LAW GROUP PC
11444 West Olympic Boulevard
Los Angeles, California 90064-1557
Telephone:   (310) 966-8400
Facsimile:   (310) 966-8810

Attorneys for Plaintiffs
POM WONDERFUL LLC, and THE
WONDERFUL COMPANY LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| POM WONDERFUL LLC, a Delaware limited liability company, and THE WONDERFUL COMPANY LLC<br><br>Plaintiffs,<br><br>vs.<br><br>ROBERT G. HUBBARD d/b/a PUR BEVERAGES, PORTLAND BOTTLING COMPANY an Oregonian company, and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM. | Case No. CV13-06917-RGK (JPRx)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, AND SUMMARY ADJUDICATION OF DEFENDANT'S AFFIRMATIVE DEFENSES/COUNTER CLAIMS FOR ABANDONMENT, GENERICNESS AND FRAUD**<br><br>[Declarations of Danielle Criona, Michael Vasseghi and Molly Flynn, and Separate Statement of Undisputed Facts filed and [Proposed] Order lodged concurrently herewith]<br><br>Date:     June 13, 2016<br>Time:     9:00 a.m.<br>Crtrm.:   850<br><br>**[Hon. R. Gary Klausner]** |

{2557980.4}

TO DEFENDANT AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on June 13, 2016, at 9:00 a.m. or as soon thereafter as the matter may be heard, in Courtroom 850 of the United States District Court for the Central District of California, 255 East Temple Street Los Angeles, CA 90012-3332, Plaintiffs POM Wonderful LLC and The Wonderful Company LLC (collectively "POM Wonderful") will and hereby do move this Court for summary judgment as a matter of law on the grounds that there is no genuine issue as to any material fact and plaintiffs are entitled to judgment as a matter of law as to liability on the first claim asserted in POM Wonderful's Second Amended Complaint filed February 3, 2016 for trademark infringement pursuant to 15 U.S.C. Section 1114.  Since summary judgment is warranted on POM Wonderful's infringement claim, it is also warranted for Pom Wonderful's second claim for false designation of origin under 15 U.S.C. §1125(a), its third claim for unfair competition under Business & Professions Code §17200 and its fourth claim for unfair competition under California common law as a matter of law.

POM Wonderful also moves for summary adjudication on Defendant's affirmative defenses/counter claims of abandonment, fraud and genericness. Defendant has the burden of proof on these affirmative defenses/counterclaims and POM Wonderful has established that there is no competent evidence in support of any of these defenses/counterclaims.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Molly Flynn, Danielle Criona and Michael Vasseghi, the deposition testimonies of Robert Hubbard, Craig Cooper and Molly Flynn, all the pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at any hearing on the Motion.

///

///

The meet and confer conference as required by Local Rule 7-3, took place on April 21, 2016, between Defendant Robert Hubbard, *pro se*, and POM Wonderful's counsel.

DATED:  May 16, 2016                    ROLL LAW GROUP PC


                                        By:        /s/ Michael M. Vasseghi
                                               Michael M. Vasseghi
                                               Attorneys for Plaintiffs
                                               POM WONDERFUL LLC, and THE
                                               WONDERFUL COMPANY LLC

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................. 1

II. FACTUAL BACKGROUND .............................................................. 2

    A. POM Wonderful ....................................................................... 2

    B. The POM® Brand Intellectual Property .................................. 2

    C. POM Wonderful's Trademark Enforcement Activities and Third Parties' Acknowledgment of POM Wonderful's Rights In POM® ...................................................................................... 2

III. LEGAL ARGUMENT ...................................................................... 3

    A. Infringement And Summary Judgment Legal Standard ........... 3

    B. POM Wonderful Owns Valid Protectable Trademarks ............ 3

        1. The POM® Mark is Registered, Incontestable, And Therefore Cannot be Attacked for Being Descriptive ............... 3

        2. POM Wonderful Never Abandoned The POM Trademark ....... 4

        3. POM Is Not a Generic Word ................................................... 7

        4. Hubbard Has No Evidence POM Wonderful Committed Fraud ............................................................................... 10

    C. Hubbard Has Admitted That POM and pŏm Create a Likelihood of Confusion ........................................................................... 11

    D. The Ninth Circuit Has Held That Under *Sleekcraft* pŏm Is Likely to Cause Confusion With POM Wonderful's POM Trademark ........... 12

        1. There is No Competent Evidence To Create a Triable Issue of Fact That POM Wonderful's Trademarks Are Strong ........... 13

        2. There is No Competent Evidence To Create a Triable Issue of Fact That POM® and pŏm Are Similar ...................... 14

        3. There Is No Competent Evidence To Create a Triable Issue of Fact That The Products Are Related ............................ 16

        4. There Is No Competent Evidence To Create a Triable Issue of Fact That Pom's and Hubbard's Products Flow Through the Same Marketing And Trade Channels .................. 17

        5. There is No Competent Evidence To Create a Triable Issue of Fact That Given The Types Of Goods At Issue, The Degree Of Care Likely Exercised By Consumers Is

Low ........................................................................................ 18

     6.     There Are No Material Issues Of Fact With Respect To The Remaining Three *Sleekcraft* Factors All Of Which Are Neutral And Do Not Affect a Finding Of Likelihood of Confusion. ............................................................... 18

E.     POM Wonderful Is Entitled To Summary Judgment On Its Remaining Claims. ...................................................... 20

IV.     CONCLUSION ...................................................................... 20

## TABLE OF AUTHORITIES

<u>**Page**</u>

<u>CASES</u>

*Academy of Motion Picture Arts v. Creative House*
    944 F.2d 1446 (9th Cir. 1991) .................................................................. 19

*Accuride Int'l, Inc. v. Accuride Corp.*
    871 F.2d 1531 (9th Cir. 1989) .................................................................. 14

*Apple Computer, Inc. v. Formula Int'l. Inc.*
    725 F.2d 521 (9th Cir. 1984) ................................................................... 13

*Conversive, Inc. v. Conversagent, Inc.*
    433 F. Supp. 2d 1079 (C.D. Cal. 2006) ................................................... 20

*CSC Brands LP v. Herdez Corp.*
    191 F.Supp.2d 1145 (E.D. Cal. 2001) ..................................................... 18

*E. & J. Gallo Winery v. Gallo Cattle Co.*
    955 F.2d 1327, modified on other grounds, 967 F.2d 1280 (9th Cir.
    1992) .................................................................................................. 13, 20

*Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*
    198 F.3d 1143 (9th Cir. 1999) ................................................................ 7, 8

*GoTo.com, Inc. v. Walt Disney Co.*
    202 F.3d 1199 (9th Cir. 2000) ................................................ 13, 15, 19, 20

*Imperial Tobacco Ltd., v. Philip Morris, Inc.*
    899 F.2d 1575 (Fed. Cir. 1990) ................................................................. 5

*In re Bose Corp.*
    580 F.3d 1240 (Fed. Cir. 2009) .......................................................... 10, 11

*In re wTe Corporation*
    87 USPQ2d 1536 (TTAB 2008) ............................................................. 6, 7

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*
    150 F.3d 1042 (9th Cir. 1998) ................................................................. 13

*KP Permanent Make-Up, Inc. v. Lasting Impression, Inc.*
    543 U.S. 111 (9th Cir. 2004) ................................................................... 3, 7

*Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*
    799 F.2d 867 (2nd Cir. 1986) .................................................................. 19

*Marshall Field & Co. v. Mrs. Fields Cookies*
    11 USPQ2d 1355 (TTAB 1989) ................................................................. 5

*Nutri/System, Inc. v. Con-Stan Indus., Inc.*
    809 F.2d 601 (9th Cir. 1987) ................................................................... 17

*Oculu, LLC v. Oculus VR, Inc.*
    2015 WL 3619204 (C.D. Cal. June 8, 2015) ...................................................19

*Official Airline Guides v. Goss*
    6 F.3d 1385 (9th Cir. 1993)........................................................................13

*Park 'n Fly, Inc. v. Dollar Park 'n Fly, Inc.*
    469 U.S. 189 (1985) ....................................................................................4

*Pom Wonderful LLC v. Hubbard*
    775 F.3d 1118 (9th Cir. 2014).........................................................1, 16, 20

*Rearden LLC v. Rearden Commerce, Inc.*
    683 F.3d 1190 (9th Cir. 2012)...................................................................12

*Surfvivor Media, Inc. v. Survivor Prods.*
    406 F.3d 625 (9th Cir. 2005).....................................................................19

*Tri-Star Pictures, Inc. v. Unger*
    14 F.Supp.2d 339 (S.D.N.Y. 1998) ...........................................................18

*Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*
    419 F.3d 925 (9th Cir. 2005).......................................................................9

**STATUTES**

15 U.S.C. § 1057(b) ............................................................................................3

15 U.S.C. § 1115(b) ............................................................................................4

**TREATISES**

1 *J. Thomas McCarthy, Trademarks and Unfair Competition* § 12.01 (3d
    Ed.1992) .....................................................................................................8

## I.      INTRODUCTION

Under its POM trademark, Pom Wonderful ("PW") sells what is likely the most well-known pomegranate-based product in the United States.  POM Wonderful coined the "pom" mark. It is not a word in a dictionary to mean pomegranate nor an abbreviation for it. Hubbard chose to use the POM trademark in the form of "pŏm" in connection with his own pomegranate based beverage.

Hubbard claims PW has abandoned its POM trademark because it is used on its product in the following manner: POM.  Hubbard also incorrectly claims that PW committed fraud on the United States Patent and Trademark Office ("USPTO") by submitting an image of its product that utilizes POM as evidence of use of POM. Finally, Hubbard has taken the unsupportable position that the POM trademark has become generic. All of Hubbard's defenses lack merit as a matter of law.

First, PW's use of POM® with a stylized "O" as POM does not result in abandonment as a matter of law because a standard character mark can be depicted with some stylization or design as part of the mark.  Second, Hubbard cannot establish fraud as a matter of law.  The Trademark Trial and Appeal Board ("TTAB") has accepted POM as proper use of POM.  Third, POM is not generic. PW actively polices and protects its mark from being used in a generic manner.

To establish trademark infringement, this Circuit employs its *Sleekcraft* test for likelihood of confusion.  The Ninth Circuit has already held ***in this case***, 1) the similarity of marks, 2) the products on which the marks are placed, 3) the channels of trade where the products are sold, 4) the advertising for those products, and 5) the target consumers for the products, are either identical or nearly identical.  *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118 (9th Cir. 2014).  Courts routinely grant summary judgment when only several of the more important factors tip in one party's favor.  Finally, ***Hubbard himself has admitted to likelihood of confusion.***

There is no competent evidence to create a triable issue of fact that 1) PW has a valid, registered trademark and 2) that a likelihood of confusion exists between

1 | pŏm and POM. PW's motion should be granted.

2 | **II.     FACTUAL BACKGROUND**

3 | **A.     POM Wonderful**

4 | POM has been used in connection with beverages since 2002. (SUF 1).  PW

5 | has invested tens of millions of dollars in the creation, development, production,

6 | marketing and sales of the POM® brand and its products.  (SUF 2).  PW's

7 | advertisements include Sunday newspaper inserts, in-store promotions, print media,

8 | billboards in select geographic areas, and television commercial campaigns. (SUF

9 | 3). The POM brand pomegranate juice is sold in every state. (SUF 4).  Domestic

10 | sales exceed one-quarter of a billion bottles since 2002. (SUF 5).  PW's

11 | pomegranate juice, is sold to consumers in supermarkets. (SUF 6).

12 | **B.     The POM® Brand Intellectual Property**

13 | PW owns numerous trademark registrations and pending applications in the

14 | U.S. for its POM mark.  (SUF 7).  The POM brand trademarks are used in

15 | connection with various goods like fresh pomegranate fruit, pomegranate juice, juice

16 | blends and pomegranate flavored teas. (SUF 8). The POM trademark is an

17 | extremely valuable and highly protected component of PW's business.  Hubbard

18 | cannot claim that he wanted to use "pŏm" because it is an abbreviation or short hand

19 | for pomegranate. Even though "pom" is the first syllable of the word pomegranate,

20 | it is not an abbreviation for it.  "Pom" has no independent meaning and is not in the

21 | dictionary to mean pomegranate. (SUF 9).

22 | **C.     POM Wonderful's Trademark Enforcement Activities and Third Parties' Acknowledgment of POM Wonderful's Rights In POM®**

23 | Prior to PW's adoption and use of POM, no one in the food or beverage

24 | industry was known to be using "pom" in any way.  (SUF 10).  PW actively polices

25 | third-party uses that it believes infringe its rights in the POM® family of marks.

26 | PW has sent out at least 100 cease and desist letters in the past 7 years to stop

27 | infringers.  (SUF 11).  PW has required third-parties to modify their names and/or

28 | marks so as to avoid infringing PW's rights.  (SUF 12).

When third party infringers have refused to acknowledge its intellectual property rights, PW has engaged in litigation. It has been involved in eight lawsuits to protect its POM mark. (SUF 12).  One lawsuit was against an energy drink manufacturer that marketed an energy drink beverage called "BLU POM" (SUF 13). The case settled after that party agreed to stop its infringement.  (SUF 13). Another litigation stopped a company from using "Pom Tea" (SUF 14).  One company used "PerfectPoms" on a pomegranate product which it agreed to change to PerfectGems. (SUF 15).  A cereal company selling a product called "Blue Pom Wheat-fuls" changed its name to "Blueberry Wheatfuls".  (SUF 16).  Dairy Queen sold a "BERRY-POM", but after litigation, it removed "POM" from its product's name. (SUF 17).  These successful policing efforts evidence PW's valid and enforcable rights in the POM trademark, rather than a generic word that anyone can use.

## III.    LEGAL ARGUMENT

### A.    Infringement And Summary Judgment Legal Standard

To prevail on a claim of trademark infringement, PW must prove (a) its owns protectable trademarks, and that (b) the alleged infringer's imitating mark is similar enough to cause a likelihood of confusion, or to cause mistake, or deceive consumers.  *KP Permanent Make-Up, Inc. v. Lasting Impression, Inc.*, 543 U.S. 111, 117 (9th Cir. 2004).  Summary judgment is appropriate when the non-moving party has no "competent evidence" with which to create a triable issue of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982).

### B.    POM Wonderful Owns Valid Protectable Trademarks

#### 1.    The POM® Mark is Registered, Incontestable, And Therefore Cannot be Attacked for Being Descriptive

PW owns many valid and protectable trademarks, evidenced by their certificates of registration.  (SUF 18).  A certificate of registration constitutes "*prima facie* evidence of the validity of the trademark and of the facts stated in the certificate."  15 U.S.C. § 1057(b).  Moreover, several of PW's registered trademarks, including POM and POM are incontestable pursuant to 15 U.S.C.

Section 1065.  Incontestable marks are those which have been registered with the USPTO for more than five years.  The effect of incontestability is set forth in Section 33(b) of the Lanham Act:

> [The incontestable] registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce ... on or in connection with the goods or services specified in the affidavit filed under the provisions of section 1065….

15 U.S.C. § 1115(b).  Accordingly, PW's registered trademarks are presumed valid.

Hubbard used pŏm as a shorthand to describe the pomegranate flavor of his drink. (SUF 19).  But, the U.S. Supreme Court has ruled that the incontestability status of the marks precludes Hubbard from challenging POM or POM for being descriptive of the word pomegranate.  In *Park 'n Fly, Inc. v. Dollar Park 'n Fly, Inc.*, 469 U.S. 189 (1985) the Court held that incontestable marks cannot be challenged on grounds of descriptiveness.  *Id*. at 196-197.

"Pom" is not a word with meaning, it is a registered trademark - POM - and that trademark has reached incontestable status and cannot be attacked on grounds of mere descriptiveness.  Therefore Hubbard's use of pŏm is use of a non-descriptive, incontestable, registered trademark.  Hubbard's attempt to excuse his use by saying pŏm describes his product is the very thing the Supreme Court prohibits him from doing.

## 2.     POM Wonderful Never Abandoned The POM Trademark

One of Hubbard's affirmative defenses/counter claims is for abandonment of the POM® trademark.  Hubbard theorizes that because PW uses a stylized "O" in the form of POM (rather than POM®) on its product, it no longer uses POM, and as a result of this non-use has abandoned the POM trademark.  Decisions from both the USPTO and the Ninth Circuit have disemboweled Hubbard's theory.  Specifically, the Ninth Circuit in *this* case has held:

> Importantly, Pom Wonderful's exclusive right to use the "POM" mark ***covers all design variations of the word*** because "POM" was registered as a

standard character mark.  Standard character registrations "are federal mark registrations that make no claim to any particular font style, color, or size of display."  *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1349 (Fed.Cir. 2011).  Because a word registered in standard characters is "not limited to any particular rendition of the mark," *In re Mighty Leaf Tea*, 601 F.3d 1342, 1348 (Fed. Cir. 2010) (internal quotation marks omitted), the registration covers the word per se, 3 McCarthy on Trademarks and Unfair Competition § 19:58 (4th ed.) (updated Sept. 2014).  ***Therefore, Pom Wonderful's exclusive right to use its "POM" standard character mark is extremely broad, covering the word in all types of depictions.***

*Pom Wonderful supra* at 1125 (9th Cir. 2014)(emphasis added).

Here, PW's use of POM is a stylized variation of the POM trademark, and therefore an accepted use of POM.[1]  Even the USPTO – the authority on what constitutes proper trademark use in commerce - has determined that POM is a proper and valid use of POM.  The USPTO requires proof of use of trademarks in order to maintain their registration.  For years and for many of the POM standard character word marks, PW has submitted images of its products containing the stylized "O", i.e. POM, as a specimen for, and proof of use of, the POM trademark. (SUF 20).  A specimen is usually a picture of the product that bears the registered trademark.

The very purpose of a specimen is "to show the mark as it is actually used." *Marshall Field & Co. v. Mrs. Fields Cookies*, 11 USPQ2d 1355, *4 (TTAB 1989). Since it was being used, the POM® mark cannot be abandoned since abandonment is based on non-use of a mark.  *Imperial Tobacco Ltd., v. Philip Morris, Inc.*, 899 F.2d 1575, 1577 (Fed. Cir. 1990).  The examining attorney at the USPTO never rejected the specimen as not constituting use of POM.  The reason for this is simple: the POM mark is not "pm with a heart in the middle," or "p-heart-m" as Hubbard claims, but instead, the POM mark is "POM with a stylized 'O'".  Therefore, the

---

[1] The use of a design in lieu of a letter, especially the letter "O", in trademarks that are registered as a standard character marks is not unique or even uncommon.  For example, the marks WOWERFUL, , TROMAX , REVOX and IROAR are all registered as standard character trademarks, yet all of them have a design in place of the letter "O", on their respective goods as used in commerce.  (SUF 24).

1   POM® mark is inherently included in POM and a specimen showing use of POM

2   inherently includes the use of POM as a matter of law.

3       *In re wTe Corporation*, 87 USPQ2d 1536 (TTAB 2008) is instructive and

4   illustrates the point that a trademark as registered, versus, as it is used in commerce,

5   can vary yet still constitute appropriate use.  In *In re wTe Corporation*, applicant

6   sought to register the standard character mark for SPECTRAMET.  In the specimen

7   provided for the registration, the letter "c" was replaced with the following double

8   arrow design: *Spe⇄tramet*.  The Examining Attorney refused the registration on the

9   grounds that SPECTRAMET was not the same as *Spe⇄tramet* since the "c" in the

10  specimen was not a "c" but a double arrow design.  Applicant appealed arguing that

11  "there is no corresponding requirement that, however, that [*sic*] the commercial use

12  of the mark should match the same generic typed form."  *Id.* at *2.  The Board

13  agreed with applicant, reversed the Examiner's decision, and held that *Spe⇄tramet*

14  was an acceptable specimen and use for the SPECTRAMET typed drawing mark.

15      The appropriate issues to consider are whether POM and POM are "the same

16  in essence and is recognizable regardless of the form or manner of display," *In re*

17  *wTe Corporation* at *2, and whether the marks create the same commercial

18  impression.  "[T]he arrow design is not a very significant element and the mark in

19  the drawing and the specimens remain 'in essence the same'".  *In re wTe*

20  *Corporation* at *2.  "There would be little reason for consumers to view the mark as

21  displayed on the specimen as anything other than SPECTRAMET." *Id.*

22      Similarly here, there is no evidence that anyone reads POM as anything but

23  POM.  PW's Director of Marketing testified that in all her years at the company, not

24  once did anyone question how POM should be read. (SUF 21).  Even Hubbard

25  himself, at his deposition picked up one of PW's juice products (containing POM on

26  the label) and when asked to read the label, read it as POM.  (SUF 22).  For this

27  reason, time and again, a specimen showing the use of POM on a product has been

28  accepted as an appropriate specimen for, and evidence of use of, the POM standard

1   character mark.

2   The rationale for why the specimen in this case, bearing POM, constitutes

3   acceptable use of POM is explained by the TTAB in *In re wTe Corporation*:

> We agree with applicant that when an applicant submits a standard character drawing it will often not be an 'exact representation' of the mark shown on the drawing because the very purpose of the typed or standard character drawing rule is to permit an applicant to apply for a mark without showing any particular style or design. ***The mere fact that there is a design element associated with the word in the mark does not prevent an applicant from using a typed or standard character drawing.***

8   *In re wTe Corporation*. at *3 (emphasis added).  In fact, the USPTO has contemplated

9   instances where the specimen/use in commerce is not identical to the typed drawing

10  submitted for registration, nevertheless confers rights to and use of the typed drawing:

> The USPTO encourages the use of standard character drawings.  As a general rule, an applicant may submit a standard character drawing when the word, letter, numeral, or combination thereof creates a distinct commercial impression apart from any stylization or design element appearing on the specimen.  ***If a mark remains the same in essence and is recognizable regardless of the form or manner of display that is presented, displaying the mark in standard character format affords a quick and efficient way of showing the essence of the mark.***

15  *In re wTe Corporation* at *2. (emphasis added).  PW has been selling products with

16  the POM label continuously since 2002. (SUF 23).  Because POM legally constitutes

17  use of POM, POM was never abandoned.

### 3.   POM Is Not a Generic Word

19  "Federal registration of a trademark endows it with a strong presumption of

20  validity." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596,

21  604 (9th Cir. 2005).  "The general presumption of validity resulting from federal

22  registration includes the specific presumption that the trademark is not generic." *Id*.

23  The presumption "is a strong one, and the burden on the defendant necessary to

24  overcome that presumption at summary judgment is heavy." *Zobmondo  Ent. LLC.*

25  *v. Falls Media, LLC*, 602 F.3d 1108, 1115 (9th Cir. 2010).

26  The Ninth Circuit also uses the "who-are-you/what-are-you" test.  *Filipino*

27  *Yellow Pages, Inc. v. Asian Journal Publications, Inc*., 198 F.3d 1143, 1147 (9th

28  Cir. 1999) "A mark answers the buyer's questions 'Who are you?' 'Where do you

1  come from?' 'Who vouches for you?'" *Id.*  But the [generic] name of the product

2  answers the question 'What are you?'" *Id.* quoting 1 *J. Thomas McCarthy,*

3  *Trademarks and Unfair Competition* § 12.01 (3d Ed.1992).  "Under this test, if the

4  primary significance of the trademark is to describe the type of product rather than

5  the producer, the trademark is a generic term and cannot be a valid trademark." *Id.*

6  Evidence that a challenger may use to prove genericness can include: (1)

7  generic use by competitors of the mark that has not been contested by the owner of

8  the mark; (2) generic use of the trademark by the proponent of the trademark; (3)

9  dictionary definitions to determine public usage; (4) generic usage in the media of

10  the trademark, such as in trade journals and newspapers; (5) testimony of persons in

11  the trade; and (6) consumer surveys.  *McCarthy on Trademarks and Unfair*

12  *Competition* § 12:13; *Filipino Yellow Pages,* 198 F.3d at 1150–51.

13  Here, a review of these factors shows that POM® is not generic.  Merriam

14  Webster Dictionary defines pom as a shortened version of the word "pommy" which

15  is a disparaging reference to someone from Australia or New Zealand.  POM is not

16  found in any recognized dictionary to mean an abbreviation for, or generic term for,

17  pomegranate.  (SUF 25).

18  PW is not aware of any beverages that use "pom" on the product to denote

19  pomegranate flavor.  (*See* Molly Flynn Decl. ¶ 6).  To the extent there have been a

20  handful of beverages who have utilized "pom" on their product, as explained above,

21  PW has successfully stopped those infringing uses via its trademark policing efforts.

22  To the extent PW uses POM, it does so in a way to denote the brand name,

23  and not as a generic or interchangeable word for pomegranate. (*See* Molly Flynn

24  Decl. ¶ 7).  The one possible exception was when PW was first starting out as a

25  company, on one of its web pages, it stated that "POM stands for pomegranate" (SUF

26  28).  However, as PW's Director of Marketing explained in her deposition, the

27  context of that statement was so that consumers would understand that the POM®

28  brand stood for a company that makes pomegranate based products. (SUF 29).  That

1  web page has not been utilized in at least 10 years, and that was one web page out of

2  over at least one-hundred web pages PW has created over the years. (SUF 30).

3         PW is not aware of any instance where any trade journal or newspaper has

4  used "pom" to denote or mean pomegranate or generic pomegranate juice.  (SUF

5  31).  Pom Wonderful is not aware of anyone in the beverage industry using "pom"

6  in a generic fashion to refer to a pomegranate. (SUF 32).  Finally, Hubbard has

7  offered no survey to show that "pom" has an independent meaning to consumers or

8  that POM® has become generic. (SUF 33).

9         Even the authorative USPTO does not consider "pom" to be generic.  If it did,

10  it would not issue repeated renewals for the POM registered trademark, and also

11  allow PW to register more than twenty other POM-formative marks to PW over the

12  last 15 years, the most recent being in May 2015. (SUFs 18 & 34).

13         The only "evidence" Hubbard has offered as proof that POM is generic, is an

14  expert report by a branding expert who reached that conclusion by claiming that the

15  POM is purportedly currently being used on several products, a few of which are

16  beverages. (SUF 35).  "The crucial date for the determination of genericness is the

17  date on which the alleged infringer entered the market with the disputed mark or

18  term." *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d

19  925, 928 (9th Cir. 2005).  Hubbard's PUR pŏm was first sold in 2013.  (SUF 36).

20  Therefore whatever products are on the market now is immaterial.  There is no

21  evidence that any of these products were on the market in 2013.  In any event, due to

22  PW's policing efforts, none of the beverage products Hubbard's expert cites to as

23  containing "pom" are still being sold.  (*See* Danielle Criona Decl. ¶ 12).

24         Hubbard's expert conducted no survey, spoke to no-one in the beverage

25  industry, and didn't cite a single trade journal before reaching his conclusion that

26  POM® is generic.[2]  (SUF 38).  His conclusion was also based on his theory that

27

28  _____
   [2] See *Daubert* Motion filed concurrently herewith with respect to this expert.

1  "pom and its derivative words are descriptive of pomegranate, pomegranate juice or

2  flavor, and therefore 'pom' is a generic term."  (SUF 39).  However this conclusion

3  flies in the face of U.S. Supreme Court authority which holds that incontestable

4  marks like POM, cannot, as a matter of law, be descriptive of anything.

5  **4.    Hubbard Has No Evidence POM Wonderful Committed Fraud**

6  Hubbard's final theory for why that PW does not have a valid trademark is

7  premised on his other flawed theory that because POM does not equal POM, PW's

8  filings with the USPTO averring that the POM mark was used in commerce was

9  fraudulent.  However, there are no facts to support a claim that PW committed any

10  fraud on the USPTO, let alone disputed facts from competent evidence.

11  As explained and evidenced above, as a matter of law, use of POM in

12  commerce constitutes use of POM.  PW has repeatedly submitted images of its

13  products bearing POM as specimens of use for the POM trademark and they have

14  been accepted by the USPTO.  (SUF 40).  There can be no fraud where an applicant

15  or registrant truthfully apprises the trademark office of the manner it uses its mark.

16  That is because a specimen shows the mark as used on or in connection with the

17  goods or services, which is what PW did here. *See* Trademark Rules 2.56(a),

18  2.76(b)(2), 2.88(b)(2) and 2.161(g).  It submitted affidavits, attesting to the fact that

19  POM was used in commerce and submitted evidence of its use to the USPTO.  (SUF

20  41).  *Even if* PW was mistaken in its belief that its use of POM constituted use of

21  POM (and it is not mistaken), such a mistake would still not amount to fraud or

22  come even close to it.

23  A finding of fraud against the USPTO requires a showing of specific facts

24  establishing a trademark applicant's specific intent to commit fraud.  "[A]n

25  allegation of fraud in a trademark case, as in any other case, should not be taken

26  lightly."  *In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009).  "Thus, we hold

27  that a trademark is obtained fraudulently under the Lanham Act only if the applicant

28  or registrant knowingly makes a false, material representation with the intent to

1  deceive the PTO." *Id*.

2      In *In re Bose Corp*., much like Hubbard does here, Hexawave

3  counterclaimed against Bose Corp. for cancellation of its marks on fraud grounds

4  because Bose claimed use on all goods in the registration while knowing it had

5  stopped manufacturing and selling certain goods. *Id*. at 1242. The court in *In re*

6  *Bose* succinctly outlined the requisite evidence necessary to establish fraud:

7      Fraud in procuring a trademark registration or renewal occurs when an
        applicant knowingly makes false, material representations of fact in

8      connection with his application. A party seeking cancellation of a trademark
        registration for fraudulent procurement bears a heavy burden of proof.

9      Indeed, the very nature of the charge of fraud requires that it be proven 'to the
        hilt' with clear and convincing evidence. There is no room for speculation,

10     inference or surmise and, obviously, any doubt must be resolved against the
        charging party.

11  *In re Bose Corp.,* at 1243 (internal citations and quotation marks omitted).

12     Mere evidence that PW knew "or should have known" it made a material

13  representation of fact in any declaration filed with the USPTO does not amount to

14  evidence of fraud. *See In re Bose Corp*. at 1244. "Subjective intent to deceive,

15  however difficult it may be to prove, is an indispensable element of the [fraud]

16  analysis." *Id*. at 1245. "Mandated by the statute and case law, the Board had

17  consistently and correctly acknowledged that there is 'a material legal distinction

18  between a 'false' representation and a 'fraudulent' one, the latter involving an intent

19  to deceive, whereas the former may be occasioned by a misunderstanding, an

20  inadvertence, a mere negligent omission, or the like.'" *In re Bose Corp*. at 1243.

21  "In other words, deception must be willful to constitute fraud." *Id*.

22     There is not a scintilla of competent evidence that Hubbard can rely on to

23  suggest PW committed any fraud, let alone place material facts in dispute necessary

24  to prove fraud "to the hilt."

25  **C.  Hubbard Has Admitted That POM and pŏm Create a Likelihood
        of Confusion**

26     To the extent this court had any doubt as to whether there is a likelihood of

27  confusion between POM and pŏm, Hubbard provides clarification for the court. In

28  2014 and 2015, PW filed two trademark applications with the USPTO for the mark

1  POM for additional type of beverages it previously did not have registrations for,

2  such as fruit and vegetable juice and fruit flavored sodas.  (SUF 42).  Hubbard has

3  opposed those applications ***on the basis that those POM marks create a likelihood***

4  ***of confusion with his pŏm mark***. (SUF 43).  The importance of Hubbard's position

5  in those two proceedings cannot be overstated.  He has clearly admitted that POM

6  and pŏm are confusingly similar, and as such the latter infringes on the former.  It is

7  doubtful that there has been an easier case to grant summary judgment on the issue

8  of trademark infringement than this one.

9       It is worth noting that Hubbard's filings with the TTAB are not an error or a

10  legal-strategy-gone-wrong by a *pro se* litigant.  At the time of those opposition filings

11  and even as of today, he was represented by counsel in those proceedings.  (SUF 44).

12  During his deposition in this case, with his former counsel present to defend him, he

13  confirmed that he had intended to file those proceedings and stood behind them.

14  (SUF 45).  This amounts to an admission against self-interest that serves a death knell

15  to Hubbard's claim that POM and pŏm are not confusingly similar.

16       **D.    The Ninth Circuit Has Held That Under *Sleekcraft* pŏm Is Likely to Cause Confusion With POM Wonderful's POM Trademark**

17       The Ninth Circuit has promulgated a multi-factor test to determine a

18  plaintiffs' probability of success on the likelihood of confusion question.  *AMF, Inc.*

19  *v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979); see also *Rearden LLC v.*

20  *Rearden Commerce, Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012).  The following

21  factors guide the determination of whether there is a likelihood of confusion, and

22  hence infringement, between two marks: (1) strength of PW's marks at issue; (2)

23  similarity of the marks; (3) proximity or relatedness of the products or services; (4)

24  defendant's intent on selecting its mark; (5) evidence of actual confusion; (6)

25  marketing channels used; (7) likelihood of expansion into other markets; and (8) the

26  degree of care likely to be exercised by purchasers.  *Sleekcraft*, 599 F.2d at 348-49.

27  The two most important *Sleekcraft* factors are similarity of the marks and

28  relatedness of the goods.  *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205

1  (9th Cir. 2000).  The court need not address all of the factors, nor must plaintiff

2  establish that each weighs in its favor to show likelihood of confusion.  *See Apple*

3  *Computer, Inc. v. Formula Int'l. Inc.* 725 F.2d 521, 526 (9th Cir. 1984).

4      In fact, courts grant summary judgment without evidence supporting all of the

5  *Sleekcraft* factors.  In *mophie, Inc. v. Shah*, 2014 WL 10988347, *21 (C.D. Cal.

6  November 12, 2014), Judge Gee granted summary judgment even though there was

7  insufficient evidence to evaluate three *Sleekcraft* factors, namely "degree of care,

8  defendant's intent and likelihood of expansion." *Id.*

9      Here, there is no factual dispute that 1) the POM mark is strong, 2) that POM/

10 POM and pŏm are similar, 3) that the goods are related, 4) that PW's and Hubbard's

11 products flow through the same marketing channels, 5) that Hubbard has

12 substantially expanded his product into other markets and 6) that the degree of care

13 by consumers of these products is low.  As such there is no material issue of fact

14 that there is a likelihood of confusion between the marks, and therefore pŏm

15 infringes on POM®/POM.

16      **1.    There is No Competent Evidence To Create a Triable Issue
        of Fact That POM Wonderful's Trademarks Are Strong**

17     A strong mark is one that is likely to make a consumer think a product or

18 service comes from a particular source.  *See Official Airline Guides v. Goss*, 6 F.3d

19 1385, 1392 (9th Cir. 1993) ("the stronger a mark, the more likely it is that

20 consumers will think that a product or service comes from a particular source").

21 The "strength of a trademark is evaluated in terms of its conceptual strength and

22 commercial strength." *GoTo.com, Inc.* at 1207.  To determine conceptual strength,

23 marks are placed within one of several categories which are referred to, in

24 increasing order of distinctiveness, as generic, descriptive, suggestive, arbitrary, or

25 fanciful. *See, Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042,

26 1047 (9th Cir. 1998).  The more distinctive on the scale, the stronger the mark.

27     Both the district court (Judge Morrow) and the Ninth Circuit have held that

28 POM® is suggestive: "The district court correctly found that the 'POM' mark is

1  suggestive because the word 'POM'—which is not ascribed independent

2  pomegranate-related meaning by conventional dictionaries—requires customers to

3  use some additional imagination and perception to decipher the nature of Pom

4  Wonderful's goods." *Pom Wonderful LLC*, at 1126 (9th Cir. 2014).

5      Even though POM is suggestive (rather than arbitrary or fanciful), its strength

6  is further bolstered by its commercial strength, as well as its length of exclusive use,

7  public recognition and uniqueness. *See Accuride Int'l, v. Accuride Corp.*, 871 F.2d

8  1531, 1536 (9th Cir. 1989); *see also Brookfield Communications, Inc. v. West Coast

9  Entm't, Inc.*, 174 F.3d 1036, 1058 (9th Cir. 1999) ("[t]he stronger a mark – meaning

10  the more likely it is to be remembered and associated in the public mind with the

11  mark's owner – the greater the protection it is afforded by the trademark laws").

12      The "commercial strength" of the POM mark is very high.  PW has been

13  marketing and selling its POM® brand in the United States for more than 14 years.

14  (SUF 46).  Just in 2011 and 2012, (the two years before Hubbard launched PUR

15  pŏm) PW spent over $24 million marketing and promoting the POM® pomegranate

16  juice brand in North America alone.  (SUF 46).  This amount was spent on items

17  such as marketing, promotions, displays, point of sale material, advertising

18  production, web media and trade shows.  (SUF 48).  Moreover, over 260 million

19  bottles of POM pomegranate juice have been sold since 2002.  (SUF 49).

20      When the Ninth Circuit also considered the marketplace recognition of POM®,

21  it concluded that PW's suggestive mark is indeed strong: "Considering the national

22  scope of Pom Wonderful's sales and marketing efforts, the district court correctly

23  found that Pom Wonderful enjoys sufficient marketplace recognition to render its

24  'POM' mark commercially strong." *Pom Wonderful LLC*, at 1126 (9th Cir. 2014).

25  There is no factual dispute as to the strength of the POM trademark.

26      **2.    There is No Competent Evidence To Create a Triable Issue of Fact That POM® and pŏm Are Similar**

27

28      In evaluating the similarity of the marks, "first, the marks must be considered

1  in their entirety and as they appear in the marketplace; second, similarity is adjudged

2  in terms of appearance, sound, and meaning; and third, similarities are weighed

3  more heavily than differences." *GoTo.com, Inc.*, *supra* at 1206. "The more similar

4  the marks in terms of appearance, the greater the likelihood of confusion. *K-Swiss,*

5  *Inc. v . USA Aisiqi Shoes, Inc.*, 291 F. Supp.2d 1116, 1123 (C.D. Cal. 2003).

6  Further, if the marks are used "with identical products or services, likelihood of

7  confusion would follow as a matter of course. *Brookfield*, 174 F.3d at 1056. "The

8  first *Sleekcraft* factor – the similarity of the marks – has always been considered a

9  critical question in the likelihood-of-confusion analysis." *Id.* at 1054.

10       Here, Hubbard has literally copied PW's POM® trademark. The only

11  difference is that Hubbard does not write "POM" in capitalized letters, and there is a

12  breve above the "o", such that it is written as "pŏm." Given that "POM" and "pŏm"

13  are virtually identical, in sight, and are identical in sound and meaning, the

14  "similarity of the marks" factor strongly supports a likelihood of confusion. The

15  Ninth Circuit has determined the legal similarity between POM and pŏm:

16       Turning first to the appearance of the "POM" mark on the left and the "pŏm"
         mark on the right, the marks possess many obvious visual similarities.

17       Most significantly, each mark is comprised of the same three letters. These

 

20       three letters are presented in the same order, with a stylized second letter (i.e.,

21       the "o" in "POM" is heartshaped, and the "o" in "pom" has a breve over it).
         In addition, the letters in both marks are uniformly cased (i.e., they are either

22       all uppercase, or all lowercase) and presented in a simplistic, white front that
         is offset by a dark maroon background.

23                              *        *        *

24       ***Balancing the marks' many visual similarities, perfect aural similarity, and
         perfect semantic similarity more heavily than the marks' visual***

25       ***dissimilarities—as we must—the similarity factor weighs heavily in Pom
         Wonderful's favor***. And, because a lesser degree of similarity is required

26       when a trademark holder's mark is strong, the commercial strength of the
         "POM" mark amplifies the significance of the marks' many similarities. *See*

27       *Perfumebay.com Inc. v. eBay Inc.*, 506 F.3d 1165, 1174 (9th Cir. 2007)
         ("[T]he fact that the similarity involves the use of a much stronger mark

28       would make that similarity weigh more heavily in the analysis of this factor."
         (Internal quotation marks omitted)). Mistakenly weighing the marks'

1  differences more heavily than their similarities, the district court clearly erred
   in finding that the similarity of marks factor weighed against Pom Wonderful.
2  *Pom Wonderful LLC v. Hubbard*, at 1128-1130 (9th Cir. 2014)(emphasis added)

### 3.   There Is No Competent Evidence To Create a Triable Issue of Fact That The Products Are Related

4  There is a greater likelihood of confusion when the goods themselves are very

5  similar. "[L]ess similarity between the marks will suffice when the goods are

6  complementary, [and] the products are sold to the same class of purchasers, ... or the

7  goods are similar in use and function." *Sleekcraft*, 599 F.2d at 350 (citations omitted).

8  Relatedness of a product is construed broadly for purposes of a trademark

9  infringement analysis. For instance, in *Polar Corp. v. PepsiCo, Inc.*, 789 F. Supp. 2d

10 219, 233 (D. Mass. 2011), defendant argued that its sodas were not "related" to

11 plaintiffs' slush drink product because (1) unlike plaintiffs' product, its product was

12 dispensed from stand-alone machines, and not sold in bottles; (2) plaintiffs' products

13 were slush drinks that were brightly-colored frozen beverages intended for immediate

14 consumption, which were distinguishable in overall look and feel from other

15 beverages; and (3) slush drinks are typically consumed in the afternoon as a snack, but

16 carbonated soda beverages are typically consumed with a meal. *Id*. Notwithstanding

17 these differences the Court found the beverages to be related for purposes of this

18 relatedness factor and issued a preliminary injunction. The Court reasoned:

19    Although slush beverages are "distinguishable in overall look and feel" from
      sodas and flavored water, that fact alone is not dispositive. The question is
20    not whether consumers would confuse a slush drink with a soda, but whether
      they would reasonably conclude that a soda manufacturer and distributor
21    would also produce slush drinks.

22 *Polar Corp*. at 232 (emphasis added).

23    Here, Defendant's and PW's products are clearly related: both are beverages.

24 Both are pomegranate based or pomegranate flavored. Both are sold in single serve

25 containers. (SUF 50). Both products are sold in the refrigerated section of

26 supermarkets. (SUF 51). The District Court and the Ninth Circuit also found that

27 PW's and Hubbard's products are related:

28    The district court correctly found—and Pur does not contest—that fruit-juice

> beverages and fruit-flavored energy drinks are sufficiently complementary and related that a reasonable consumer could connect them and be confused regarding the source of the products.  Both beverages are pomegranate-based or pomegranate-flavored, single-serve, and marketed for their healthful properties.  Although Pur's "pŏm" carbonated energy drink is somewhat different from Pom Wonderful's 100% juice beverages, the use and function of these products is clearly related.

*Pom Wonderful LLC* at 1127 (9th Cir. 2014).

Hubbard claims that his product is not even an energy drink.  (SUF 52).  This further supports the position that the products are related.  Even though PW and PUR's beverages are not identical in that one is carbonated and comes in a can while PW's products do not, there is no factual dispute that they are undoubtedly "related" for purposes of likelihood of confusion.

### 4. There Is No Competent Evidence To Create a Triable Issue of Fact That Pom's and Hubbard's Products Flow Through the Same Marketing And Trade Channels

The Ninth Circuit has held that "[c]onvergent marketing channels increase the likelihood of confusion.  Therefore, the courts examine the proximity of the marketing channels to one another and whether direct competition exists." *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987).  Both PW and Hubbard sell single-serve beverages which sell in overlapping trade channels such as supermarkets.  (SUFs 50 & 51).  Trade channels in this case are not just convergent, but identical in some instances.  By way of example, both PW's products and Defendant's products were at one point sold in the exact same super market chain - Albertson's.  (SUF 53).

PW need not show that the POM products and PUR pŏm are sold in the exact same brick and mortar stores – an error made at the district court level in this case, and as pointed out by the Ninth Circuit: "The district court clearly erred in finding that this factor weighed against Pom Wonderful, mistakenly requiring Pom Wonderful to prove that its beverages were sold in the very same brick-and-mortar stores as Pur's 'pom' beverage." *Pom Wonderful LLC* at 1131 (9th Cir. 2014).

PUR pŏm and PW are sold in overlapping states.  (SUFs 54 & 55).

1  Therefore, the geographic location of their sales channels also overlap.  Finally, both

2  PW POM products and Hubbard's PUR pŏm product are marketed through, and

3  sold on the internet. (SUF 37).

4       The overlap of trade channels and the similarity in marketing of these

5  competing products strongly supports a finding of likelihood of confusion.

6           **5.   There is No Competent Evidence To Create a Triable Issue of Fact That Given The Types Of Goods At Issue, The Degree Of Care Likely Exercised By Consumers Is Low**

7

8       Beverages are considered a "fast moving consumer good" available to a large

9  portion of the population, purchased by consumers frequently and with wide

10 distribution and relatively low cost.  A PUR pŏm beverage costs approximately

11 $2.00. (SUF 26).  PW's 8 oz. POM pomegranate juice product typically costs $1.99.

12 (SUF 27).  As such, "consumers of such are likely to pay little care and attention

13 when purchasing these products and therefore are inclined to be less sophisticated

14 buyers." *Tri-Star Pictures, Inc. v. Unger*, 14 F.Supp.2d 339, 358 (S.D.N.Y. 1998);

15 *CSC Brands LP v. Herdez Corp.*, 191 F.Supp.2d 1145, 1153 (E.D. Cal. 2001)

16 ("Given that these beverages are sold in supermarkets and are low cost, the degree of

17 care likely to be exercised by purchasers is minimal.  '[W]hen dealing with

18 inexpensive products, customers are likely to exercise less care, thus making

19 confusion more likely.'" *quoting Brookfield*, 174 F.3d at 1060.)  Given the low

20 degree of care exercised by consumers in purchasing a relatively inexpensive single-

21 serve beverage, this factor strongly supports a finding of likelihood of confusion.

22          **6.   There Are No Material Issues Of Fact With Respect To The Remaining Three *Sleekcraft* Factors All Of Which Are Neutral And Do Not Affect a Finding Of Likelihood of Confusion.**

23

24      The three remaining *Sleekcraft* factors are likelihood of expansion, actual

25 confusion and infringer's intent.  The likelihood of expansion factor focuses on

26 "whether existence of the allegedly infringing mark is hindering the plaintiffs'

27 expansion plans." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9[th]

28 Cir. 2005).  The likelihood of expansion factor "is relatively unimportant where the

1  two companies already compete to a significant degree." *Brookfield*, 174 F.3d at

2  1055.  As previously shown, PW and Defendant are competitors in the beverage

3  product market.  Both products are sold in the same trade channels.

4     The actual confusion factor is also not necessary for this court to grant PW's

5  motion.  "It is black letter law that actual confusion need not be shown to prevail

6  under the Lanham Act since actual confusion is very difficult to prove and the act

7  requires only a likelihood of confusion as to source." *Lois Sportswear, U.S.A., Inc.*

8  *v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2nd Cir. 1986); *see also GoTo.com, Inc. v.*

9  *Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000); *Sleekcraft*, 599 F.2d at 353.

10  When, as in this case, the marks in question are virtually identical, or at least

11  extremely similar, and there is a reasonable likelihood that consumers will assume

12  that a mark is associated with another source because of that similarity, a likelihood

13  of confusion will be found. *See, e.g. Academy of Motion Picture Arts v. Creative*

14  *House*, 944 F.2d 1446, 1456 (9th Cir. 1991).  Hubbard has no evidence to dispute

15  that pŏm and POM® are similar, that both of these marks are used on beverages,

16  and that both beverages are pomegranate flavored.

17     Furthermore, actual confusion is unnecessary to grant summary judgment.  In

18  *Oculu, LLC v. Oculus VR, Inc.*, 2015 WL 3619204 (C.D. Cal. June 8, 2015), the

19  court granted summary judgment finding likelihood of confusion even though there

20  was a "lack of any competent evidence of actual confusion despite the fact that

21  marks have co-existed for three years" *Id*. at *13.  "However this fact is not

22  dipositive." *Id*.  *Accord*, *Tommy Bahama Grp., Inc. v. Sexton*, 2009 WL 4673863, at

23  *10 (N.D. Cal. Dec. 3, 2009) aff'd, 476 F. App'x 122 (9th Cir. 2012) granting

24  summary judgment despite no evidence of actual confusion.  In *Hokto Kinoko Co. v.*

25  *Concord Farms, Inc.*, 738 F.3d 1085, (9th Cir. 2013) the Ninth Circuit upheld the

26  district court's granting of summary judgment despite no evidence of actual

27  confusion. *Id*. at 1098.  In *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457

28  F.3d 1062, 1070 (9th Cir. 2006) the Ninth Circuit ***reversed*** the ***denial*** of a summary

1    judgment motion *even though there was no evidence of actual confusion*.

2         The mere absence of intent is also irrelevant to granting this motion since

3    intent is not a requirement for infringement.  *E. & J. Gallo Winery v. Gallo Cattle*

4    *Co.*, 955 F.2d 1327, 1341, modified on other grounds, 967 F.2d 1280 (9th Cir. 1992)

5    ("[a] party claiming trademark infringement need not demonstrate that the alleged

6    infringer intended to deceive consumers").  "Similarly, evidence of the defendant's

7    intent to confuse customers or of product expansion is not required for a finding of

8    likelihood of confusion."  *Pom Wonderful LLC v. Hubbard* at 1131 (9th Cir. 2014)

9    citing *GoTo.com*, 202 F.3d at 1208 (characterizing the intent factor as minimally

10   important and explaining that intent to confuse consumers is not necessary to

11   demonstrate a likelihood of confusion).

12   **E.    POM Wonderful Is Entitled To Summary Judgment On Its Remaining Claims.**

13   Since PW is entitled to summary adjudication on its trademark infringement

14   claim, it is also entitled to summary adjudication on its remaining claims:

15   Because partial summary judgment is proper on Conversive's infringement
     claim, it is also warranted on Conversive's false designation of origin and

16   unfair competition claims under 15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code
     § 17200, and California common law as well. [S]tate common law claims of

17   unfair competition and actions pursuant to California Business and
     Professions Code § 17200 are 'substantially congruent' to claims made under

18   the Lanham Act.");

19   *Conversive v. Conversagent, Inc.*, 433 F.Supp.2d 1079, 1093-94 (C.D. Cal. 2006).

20   **IV.   CONCLUSION**

21        POM Wonderful respectfully requests that the Court grant its motion.

22

23   DATED:  May 16, 2016            ROLL LAW GROUP PC

24

25

26                                  By:    /s/ Michael M. Vasseghi

27                                         Michael M. Vasseghi
                                           Attorneys for Plaintiffs

28