JOIE MARIE GALLO (SBN 178064)
joie.gallo@roll.com
MICHAEL M. VASSEGHI (SBN 210737)
michael.vasseghi@roll.com
DANIELLE M. CRIONA (SBN 204074)
danielle.criona@roll.com
ROLL LAW GROUP PC
11444 West Olympic Boulevard
Los Angeles, California 90064-1557
Telephone:   (310) 966-8400
Facsimile:    (310) 966-8810

Attorneys for Plaintiffs
POM WONDERFUL LLC, and THE
WONDERFUL COMPANY LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| POM WONDERFUL LLC, a Delaware limited liability company, and THE WONDERFUL COMPANY LLC<br><br>Plaintiffs,<br><br>vs.<br><br>ROBERT G. HUBBARD d/b/a PUR BEVERAGES, PORTLAND BOTTLING COMPANY an Oregonian company, and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>―――――――――――――――<br><br>AND RELATED COUNTERCLAIM. | Case No. CV13-06917-RGK (JPRx)<br><br>**PLAINTIFFS' OPPOSITION TO ROBERT G. HUBBARD'S MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON ABANDONMENT OF REGISTRATION NO. 2637053**<br><br>[Declaration of Michael Vasseghi, Response to Hubbard's Separate Statement and Statement of Additional Material Facts, filed concurrently herewith]<br><br>Date: June 20, 2016<br>Time: 9:00 a.m.<br>Ctrm: 850<br><br>**[Hon. R. Gary Klausner]** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   ARGUMENT .......................................................................................2

   A.   POM Wonderful Never Abandoned The POM® Trademark As a Matter of Law...................................................................................2

      1.   The USPTO Has Accepted POM's Specimen of Use ................3

      2.   The Stylized "O"/Heart Design Does Not Create An Uncommon Or Special Commercial Impression.........................4

      3.   Hubbard Confuses The Requirements for Proper Trademark Application With Proper Use of a Standard Character Mark in Commerce ......................................................6

         (a)   The Standard Character Set Is For The USPTO's Administerial Purposes Of Ensuring Proper Mark Classification ...............................................................6

         (b)   Standard Character Marks Are Routinely Used In Commerce With Design Elements ....................................7

   B.   Specimens Can Contain Design Elements And Still Be Proper Use of The Standard Character Mark .........................................................9

   C.   Trademark Trial and Appeal Board Authority Undermines Hubbard's Abandonment Theory ...........................................................11

   D.   The TTAB Cases Hubbard Cites Have Nothing To Do With Whether a Mark Should Be Cancelled for Abandonment Due To a Discrepancy Between The Mark As Used in Commerce And The Mark as Registered. ...............................................................12

   E.   This Court Should Not Second Guess The Trademark Examiner's Acceptance of The POM Specimen As Appropriate Use of the POM® Mark..........................................................16

   F.   The Concept of "Tacking" Has No Application To This Case ...........17

   G.   The Cancellation or Abandonment of The POM® Mark Does Not Eliminate POM Wonderful's Trademark Infringement Claim......18

   H.   Hubbard Has Created Triable Issues of Material Fact.........................18

III.  CONCLUSION ...................................................................................20

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>CASES</u>

*Century 21 Real Estate Corp. v. Century Life*
    10 USPQ.2d 2034 (TTAB 1989)...................................................................16

*Fossil Inc. v. Fossil Group*
    49 USPQ2d 1451 (TTAB 1998)............................................................13, 14

*Imperial Tobacco Ltd., v. Philip Morris, Inc.*
    899 F.2d 1575 (Fed. Cir. 1990).................................................................4

*In re Abramof*
    2008 WL 853828 (TTAB 2008)...............................................................13

*In re Dell. Inc.*
    71 U.S.P.Q.2d 1725 (TTAB 2004)..........................................................19

*In re Genitope Corp.*
    78 U.S.P.Q.2d 1819 (TTAB 2006)..........................................................19

*In re Ginc UK Ltd.*
    2001 WL 256197 (TTAB 2001).........................................................13, 15

*In re Morton Norwich Products, Inc.*
    221 USPQ 1023 (TTAB 1983)..................................................................5

*In re NBA Properties,*
    2000 TTAB LEXIS 863 (TTAB 2000)..................................................13, 14

*In re RealKidz Inc.*
    2010 TTAB LEXIS 247 (TTAB 2010)......................................................13

*In re United Services Life Insurance Company*
    181 USPQ 655 (TTAB 1973)....................................................................5

*In re wTe Corporation*
    87 USPQ2d 1536 (TTAB 2008)..........................................................11, 12

*Marshall Field & Co. v. Mrs. Fields Cookies*
    11 USPQ2d 1355 (TTAB 1989)................................................................4

*Pom Wonderful v. Hubbard*
    775 F.3d 1118 (9th Cir. 2014)........................................................passim

## I.      INTRODUCTION

Hubbard's motion is premised on the following incorrect theory: Pom Wonderful owns a registration for the standard character trademark, POM.  POM Wonderful does not use POM but rather POM on its products.  Therefore, because Pom Wonderful does not use POM, but POM, that amounts to non-use and abandonment of its POM mark, allowing Hubbard to use pŏm on his beverage.

The Ninth Circuit in this case, as well as opinions from the Trademark Trial and Appeal Board ("TTAB") of the United States Patent and Trademark Office ("USPTO") and actions by the USPTO completely disembowel Hubbard's abandonment theory.  The Ninth Circuit has held in this case that POM Wonderful has exclusive rights to use POM in any manner because that mark "covers all design variations of the word" since it was  registered as a standard character mark.  The USPTO has also found, repeatedly, that POM Wonderful's use of POM on its product is a proper use of its standard character mark:  POM.  Notably, Hubbard's motion does not cite to a single case or authority, where a court or the TTAB has cancelled a mark for abandonment because the mark's use in commerce did not precisely match the standard character mark on the register.  That is because no such case exists.  To the contrary, trademark owners routinely use their trademarks with some wort of design on their products (POM) while holding registrations for just the standard character word mark (POM).

Trademark protection policy and USPTO regulations not only allow, but expect variations between a registered standard character word mark and how that trademark appears on a product.  So long as the mark as used in commerce does not create an "uncommon or special commercial impression" from the standard character mark, this variation is acceptable.  When the proper legal standard is applied, POM does not create an uncommon or special impression of POM.  Trademark owners such as Coca-Cola and Rockstar Energy Drinks, routinely place design elements on their products not found on their registered standard character

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

word mark.  Yet, their trademark registrations are not considered abandoned due to non-use.  Furthermore, the USPTO accepts those companies' specimens showing the mark used with a design even though the corresponding trademark registration is for the standard character word mark.

Hubbard's reliance on decisions by the TTAB for the proposition that use of a design in a standard character mark is "prohibited", completely misses the mark. First, those cases do not stand for the proposition Hubbard asserts.  Second, those cases have nothing to do with abandonment of trademarks but rather what constitutes likelihood of confusion between marks for purposes of registration before the USPTO.

Finally, Hubbard has created triable issues of material fact by arguing that POM Wonderful's use of its POM mark on its websites is not proper trademark use. The facts and the law pertaining to what constitutes proper trademark use on a website, establish that those uses, do in fact, constitute proper trademark use.

For these reasons and those set forth below, not only should Hubbard's motion be denied, but POM Wonderful's Motion for Summary Judgment on this issue and others should be granted.

## II.   ARGUMENT

### A.   POM Wonderful Never Abandoned The POM® Trademark As a Matter of Law

Hubbard's motion in premised on the theory that POM Wonderful uses a stylized "O" (or as he wrongly calls it a "design element"[1]) in the POM mark such

---

[1] The distinction is worth noting. Hubbard calls the heart a "design element" instead of a stylized "o" intentionally, to avoid admitting that it is read, spoken and written as "pom", the same mark as his infringing mark: pŏm.  However, the trademark is not registered as p-heart-m.  Instead, the trademark registration specifically describes the mark this way:  "The mark contains **the word POM** with **a heart design in place of the letter 'O'**". See, Reg. No. 3047447 for POM attached as Exhibit A to the Declaration of Michael Vasseghi, ("Vasseghi Decl.").

1  that it is written in the form **POM** on its products.  Therefore, Hubbard argues POM

2  Wonderful no longer uses the POM mark which he claims amounts to its

3  abandonment.  Decisions from both the USPTO as well as from the Ninth Circuit

4  completely undermine Hubbard's counter-claim[2]/affirmative defense of

5  abandonment.  Specifically, the Ninth Circuit in *this* case has held:

> Importantly, Pom Wonderful's exclusive right to use the "POM®" mark
> ***covers all design variations of the word*** because "POM®" was registered as a
> standard character mark.  Standard character registrations "are federal mark
> registrations that make no claim to any particular font style, color, or size of
> display." *Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1349
> (Fed.Cir. 2011).  Because a word registered in standard characters is "not
> limited to any particular rendition of the mark," *In re Mighty Leaf Tea*, 601
> F.3d 1342, 1348 (Fed. Cir. 2010) (internal quotation marks omitted), the
> registration covers the word per se, 3 McCarthy on Trademarks and Unfair
> Competition § 19:58 (4th ed.) (updated Sept. 2014).  ***Therefore, Pom
> Wonderful's exclusive right to use its "POM" standard character mark is
> extremely broad, covering the word in all types of depictions.***

15  *Pom Wonderful v. Hubbard,* 775 F.3d 1118 at 1125 (9th Cir. 2014) (emphasis

16  added).

17    Here, POM Wonderful's use of **POM** is a design variation of the POM

18  trademark, just as the registration describes (see footnote 1) and therefore an

19  accepted use of POM.

### 1.    The USPTO Has Accepted POM's Specimen of Use

21    The USPTO – the authority charged with granting trademark registrations and

22  ruling on whether a trademark is valid or abandoned - has determined that **POM** is a

23  proper and valid use of POM.  The USPTO requires proof of use of a trademark in

24  order to maintain its registration.  To comply with this requirement, a trademark

25  owner must submit a "specimen of use" (evidence of use) to the USPTO.  The

---

27  [2] Hubbard's counter-claim for abandonment, filed without leave of court on May 6,
28  2016, is not yet at issue.  POM Wonderful's motion to dismiss that counter-claim
(among others), is set for hearing on June 27th.

purpose of a specimen is "to show the mark as it is actually used." *Marshall Field & Co. v. Mrs. Fields Cookies*, 11 USPQ2d 1355, *4 (TTAB 1989). Most trademark owners provide a photo of the product bearing the registered mark. POM Wonderful has complied with this accepted practice. For many years, POM Wonderful has submitted an image of its product – which has always had POM on the bottle - as a specimen for, and proof of use of, the POM trademark. (Additional Statement Of Undisputed Material Fact ("ASUMF") No. 1.)

Since the POM mark has been continuously used in its POM form since inception of the company, it cannot be abandoned since abandonment is based on non-use of a mark. *Imperial Tobacco Ltd., v. Philip Morris, Inc.*, 899 F.2d 1575, 1577 (Fed. Cir. 1990). The USPTO has never rejected POM Wonderful's specimen of use as being insufficient for, or improper use of, or not constituting use of the standard character word mark POM. The reason for this is simple. As the Ninth Circuit explained in this case, because POM Wonderful has a registered trademark for the POM mark, that right allows it to use the mark in "all design variations" and in "all types of depictions". POM is inherently a depiction of POM and a specimen showing use of POM inherently includes the use of POM as a matter of law.

### 2. The Stylized "O"/Heart Design Does Not Create An Uncommon Or Special Commercial Impression

Hubbard argues that because POM Wonderful uses a heart in its "O" – which is a design and not found on the USPTO's "Standard Character Set"[3], "there can be no question that the heart design element in POM engenders an uncommon or 'special' commercial impression." (Motion 9:4-6) Hubbard then concludes that, because the heart creates a special commercial impression, its use does not constitute the use of POM. Tt is apparent that Hubbard does not know what

---

[3] The Standard Character Set is attached as Exhibit O to Hubbard's Request for Judicial Notice filed in support of his motion [Docket No. 163-15].

1  constitutes "an uncommon or special commercial impression."  Uncommon/special
2  commercial impressions have nothing to do with the existence of any design
3  element or whether any portion of the mark is or is not found in the USPTO's
4  Standard Character Set.

5       Two cases from the USPTO, one of which was cited by Hubbard, explain this
6  concept.  In the first case, United Services filed an application for the word mark
7  "FOR LIFE INSURANCE SEE US".  *In re United Services Life Insurance*
8  *Company*, 181 USPQ 655 (TTAB 1973).  However, in the specimen (proof) of use,
9  the mark was shown in the following manner:

10  *for life insurance see US*

11
12  The Board refused registration of the mark because the specimen showed the "US"
13  portion of the mark in larger lettering and underlined, suggesting a double entendre
14  because "US" could stand for applicant's name "United Services" or for the pronoun
15  "us".  *Id*. at *1.  If viewed as the pronoun "us", it "may be devoid of the capability
16  of identifying and distinguishing the life insurance services of any one particular
17  company" thereby becoming an "unregistrable mark[] and slogan[]" *Id*. at *1.  Due
18  to this uncommon and unique commercial impression, registration was refused.
19  Notably, the presence or absence of a design element was not relevant to the inquiry.

20       Likewise in *In re Morton Norwich Products, Inc*., 221 USPQ 1023 (TTAB
21  1983), a case Hubbard also cites, applicant sought to register the mark "LABID" for
22  pharmaceutical preparations for illnesses related to asthma and lung disorders.  *Id*. at
23  *1.  However, in the specimen of use, the mark was in the following form:

24  **LĀBID**

25
26       The TTAB refused registration of the mark because the letter "a" is smaller
27  lettering with a diacritical accent that sets off the "BID" portion of the mark.  The
28  problem was that the term "BID" had an accepted meaning as applied to drug

prescriptions, i.e. "twice a day".  *Id*.  However, the directions for use on the drug was *one or* two tablets every twelve hours.  *Id*.  Therefore the applied for trademark was inconsistent with the range of recommended dosage for this drug, thus creating a special/uncommon impression.  Notably, every letter and the diacritical mark above the "a" is found on the Standard Character Set.  Therefore whether a mark creates an uncommon or special commercial impression hinges on issues beyond any design incorporation in the mark.

### 3. Hubbard Confuses The Requirements for Proper Trademark Application With Proper Use of a Standard Character Mark in Commerce

#### (a) The Standard Character Set Is For The USPTO's Administerial Purposes Of Ensuring Proper Mark Classification

As best as POM Wonderful can tell, Hubbard argues the following:  POM is a standard character mark.  The USPTO's Standard Character Set provides what symbols, letters, and diacritical marks can be used in a standard character mark registration.  Since a heart is not found in the Standard Character Set (the "Set"), it cannot be used as part of a standard character mark, and use of the heart on POM Wonderful's products amounts to no use of the POM mark, resulting in abandonment.

Hubbard is either completely confused or this is a red herring argument designed to confuse this court.  The Set has *nothing* to do with how a mark may be *used in commerce*.

The USPTO's Set only governs how an Examining Attorney at the USPTO treats *the drawing of the mark* that is submitted with the application for registration in evaluating whether the drawing matches the claims made in the application itself.  For instance, if you claim rights to the standard character mark in your application, but your drawing includes more than just standard characters in it, the Examining Attorney will require a correction of one or the other.  The standard characters the Examining Attorney looks at are those in the Set.  As the Examination Guide

1  explains, "if the drawing includes elements that are not in the set, the examining

2  attorney must treat the drawing as a special form drawing and require applicant to

3  delete the standard character claim." (Examination Guide 1-03 Section I.A.2 (page

4  2/9) attached as Exhibit B to Vasseghi Decl.) By way of example, if POM

5  Wonderful, had submitted POM as a standard character drawing, the Examining

6  Attorney would have required a correction of either the application or the drawing,

7  because the heart design in POM is not in the Set, as Hubbard correctly points out.

8  However, the Set is only relevant to the proper description of a mark (e.g., "standard

9  character" mark versus, "word plus design" mark versus "design" mark etc.). The

10 Set is simply a trademark application/drawing examination tool and has absolutely

11 nothing to do with what qualifies as a proper use of the mark in commerce.

12 Hubbard offers no authority to the contrary.

13
14
### (b)   Standard Character Marks Are Routinely Used In Commerce With Design Elements

15      The Ninth Circuit found that the POM standard character mark can be used in

16 "all design variations" and in "all types of depictions." *Pom Wonderful, supra,* at

17 1125. This is not surprising as there are numerous examples of marks that are

18 registered as a standard character mark, but their actual use in commerce varies

19 slightly. The use of a design in lieu of a letter, especially the letter "O", in

20 trademarks registered as standard character marks is not unique or even uncommon.

21 A fifteen minute search on the USPTO's website reveals several examples of marks

22 that are registered as a standard character mark, but their use in commerce has a

23 design element in the letter "O". For example WOWERFUL is

24 used as , TROMAX as , REVOX as , IROAR as

25  . PRO YO as , SOS as , and CORE COMMUNICATIONS as

26  . These marks are all registered as standard character trademarks *but*

27 *specimens showing the mark used with a design are proof of use of the standard*

28 *character mark*. (*See* Exhibit C to Vasseghi Decl.). As evidenced here, all but one

1  of these marks are also separately registered with the design element in the "O."

2  (Exhibit D to Vasseghi Decl.).  This is how trademark owners protect their marks.

3  The common practice and purpose of registering a mark both as a standard

4  character mark (POM) and also with a design element (POM) is, in part, to ensure

5  that an infringer, like Hubbard, cannot argue (as he does in this case), that a slight

6  variation  (like his breve above the o as pŏm instead of a stylized "O" (POM)), even

7  if the mark is otherwise identical, eliminates the infringement.  Clearly, that cannot

8  be the case otherwise the policy behind trademark law which would be eviscerated.

9  This is exactly why the Ninth Circuit held that POM Wonderful's "exclusive right to

10  use the "POM" mark *covers all design variations* of the word because 'POM®' was

11  registered as a standard character mark."  *Pom Wonderful, supra,* at 1125 (9th Cir.

12  2014) (emphasis added).

13  Hubbard claims that "[t]he rights conferred by registration of standard

14  character marks [sic] extend to the mark in a variety of forms and styles, including

15  different fonts and colors.  They *do not* extend to include protection of those words

16  combined with a design element."  (Motion 6:26-28) (italics in original).  According

17  to Hubbard such designs are "prohibited in a standard character mark" and therefore

18  the standard character mark is somehow abandoned.  (*See* Motion 6:22).

19  First, Hubbard uses the word "design" intentionally, again, to avoid calling it

20  what it is, a stylized "o" in the term "pom".

21  Second, apparently Hubbard thinks he knows better than the Ninth Circuit

22  which held *exactly the opposite* when it stated that the POM mark "covers all design

23  variations" of the word, and offers no authority for this position.

24  Third, Hubbard's theory runs counter to the practice of trademark policing,

25  trademark enforcement, and well-established trademark law, including the Ninth

26  Circuit's holding in this case.

27  Hubbard claims that "[t]he fact that Pom Wonderful separately registered

28  POM as a design mark is an admission that Pom Wonderful understands the standard

1  character mark does not extend to protection of the heart design element.  Thus use

2  of P⊙M does not constitute use of the 'POM®' standard character mark."  (Motion

3  10:17-21).  Hubbard has it backwards.  If, for example, POM Wonderful only had a

4  registration for P⊙M, a potential infringer might use: *POM* or PΩM, and claim that

5  its infringing mark is not similar to P⊙M.  However, that infringer cannot make that

6  argument when the standard character POM mark is also registered and, particularly

7  in this case, where the standard character mark is encompassed within the mark

8  containing the stylization of a letter.  And that is why companies regularly register

9  their marks not only as word marks, but also with any specific designs or

10  stylizations within the letters in those words.  Indeed, that is precisely why P⊙M *does*

11  constitute use of POM.  The POM registration is "extremely broad, covering the

12  word in all types of depictions."  *Pom Wonderful v. Hubbard* at 1125.  If POM is

13  covered "in all types of depictions", how can P⊙M not be such a depiction?  It is.

14  What Hubbard considers abandonment, is actually common trademark and brand

15  protection practice, implemented by any company worth their salt.

### B.  Specimens Can Contain Design Elements And Still Be Proper Use of The Standard Character Mark

18  If Hubbard's abandonment theory was correct, then every trademark owner

19  who uses their standard character mark with some design element in the market

20  place, has abandoned their trademark.  According to Hubbard, none of the marks

21  above - TROMAX, WOWERFUL, REVOX, IROAR, PRO YO, SOS, CORE

22  COMMUNICATIONS - are in use because they are all used with a design in the

23  "O", and therefore their standard character marks have been abandoned.  That is not

24  how trademark law works.

25  Well-known brands such as Coca-Cola,  Rock Star Energy Drink, and a host

26  of other companies have abandoned their trademarks if Hubbard's interpretation of

27  the law is applied.  Like Pom Wonderful, Coca-Cola has a registered trademark for

28  the standard character mark: "COCA-COLA."  (*See* Exhibit E to Vasseghi Decl.)

1  And like POM Wonderful, Coca-Cola also has a registration for:



7  (*See* Exhibit F to Vasseghi Decl.).  Rock Star Energy Drink has a star in place of the

8  "A" on its product:



12  Yet this trademark *is only registered as a standard character word mark* "ROCK

13  STAR ENERGY DRINK" for beverages.[4]  And the specimen of use for this

14  standard character mark contains the star like the image above, in place of the letter

15  "A" - just like the marks TROMAX, WOWERFUL etc., above.  (*See* Exhibit G,

16  page 57 to Vasseghi Decl.)

17        None of these designs as described and used by Coca-Cola or Rockstar are

18  found in the USPTO's Standard Character Set, but rather, are designs with design

19  codes.  (*See* Coca-Cola's registration attached as Exhibit F to Vasseghi Decl. and

20  Rockstar's registration page attached as Exhibit H to Vasseghi Decl.).

21        According to Hubbard, since Coca-Cola uses the above "word plus design"

22  mark on its product, and Rockstar uses a star design in place of its  "A" on its

23  product, these companies have abandoned their rights in their standard character

24  marks "COCA-COLA" and "ROCKSTAR ENERGY DRINK", because those

25  marks contain design elements or stylization when used in commerce.  These two

---

27  [4] Rockstar does have a registration for its mark with star in place of the letter "A"
28  for goods such as luggage and bags, but not for beverages.  (*See* Exhibit H to
Vasseghi Decl.)

1   examples highlight the absurdity of Hubbard's abandonment theory.

2   **C.   Trademark Trial and Appeal Board Authority Undermines Hubbard's Abandonment Theory**

3

4   Opinions by the TTAB, the USPTO's internal appeal board, on this very issue

5   are consistent with the Ninth Circuit's holding in this case.  *In re wTe Corporation*,

6   87 USPQ2d 1536 (TTAB 2008) illustrates how a trademark as registered, versus, as

7   it is actually used in commerce, can vary yet still constitute appropriate use.  In *In re*

8   *wTe Corporation* applicant sought to register the standard character mark for

9   SPECTRAMET.  In the specimen provided for the registration, the letter "c" was

10  replaced with the following double arrow design: *Spe⮂tramet*.  The Examining

11  Attorney refused the registration on the grounds that SPECTRAMET was not the

12  same as *Spe⮂tramet* since the "c" in the specimen was not a "c" but a double arrow

13  design.  Applicant appealed to the TTAB, arguing that "there is no corresponding

14  requirement that, however, that [*sic*] the commercial use of the mark should match

15  the same generic typed form."  *Id.* at *2.  The TTAB agreed with applicant, reversed

16  the Examiner's decision, and held that *Spe⮂tramet* was an acceptable specimen and

17  use for the SPECTRAMET typed drawing mark.

18  The legal standard by which the TTAB decides whether SPECTRAMET and

19  *Spe⮂tramet* or POM and **POM** are the same for trademark use, is if they are "the

20  same in essence and is recognizable regardless of the form or manner of display."

21  *In re wTe Corporation* at *2, and whether the marks create the same commercial

22  impression.  "[T]he arrow design is not a very significant element and the mark in

23  the drawing and the specimens remain 'in essence the same'".  *In re wTe*

24  *Corporation* at *2.  "There would be little reason for consumers to view the mark as

25  displayed on the specimen as anything other than SPECTRAMET."  *Id*.

26  The rationale for why the specimen in this case, bearing **POM** constitutes

27  acceptable use of POM is explained by the TTAB in *In re wTe Corporation*:

28

> We agree with applicant that when an applicant submits a standard character drawing it will often not be an 'exact representation' of the mark shown on the drawing because the very purpose of the typed or standard character drawing rule is to permit an applicant to apply for a mark without showing any particular style or design. ***The mere fact that there is a design element associated with the word in the mark does not prevent an applicant from using a typed or standard character drawing.***

*In re wTe Corporation*. at *3 (emphasis added). In fact, the USPTO has contemplated instances where the specimen/use in commerce is not identical to the standard character mark submitted for registration, yet it is appropriate use of the standard character mark:

> The USPTO encourages the use of standard character drawings. As a general rule, an applicant may submit a standard character drawing when the word, letter, numeral, or combination thereof creates a distinct commercial impression apart from any stylization or design element appearing on the specimen. ***If a mark remains the same in essence and is recognizable regardless of the form or manner of display that is presented, displaying the mark in standard character format affords a quick and efficient way of showing the essence of the mark.***

*In re wTe Corporation* at *2 (emphasis added). Here, there is no reasonable possibility that the POM can be read as anything but POM, (*i.e.*, it cannot be read as P, heart design, M, just like the Board found that Spectramet cannot be read as anything but SPRECTRAMET). As the evidence demonstrates, no-one, including Hubbard himself, reads POM as anything but POM. (ASUMF 2). For this reason, time and again, a specimen showing the use of POM on a product has been accepted as an appropriate specimen for, and evidence of use of, the POM standard character mark. Because POM legally constitutes use of POM, the latter was never abandoned.

### D.   The TTAB Cases Hubbard Cites Have Nothing To Do With Whether a Mark Should Be Cancelled for Abandonment Due To a Discrepancy Between The Mark As Used in Commerce And The Mark as Registered.

Hubbard cites paragraph after paragraph to a handful of non-precedential

1   cases,[5] for the general proposition that rights to a typed mark do not extend to

2   include protection for those words combined with a design element or additional

3   wording.  (Motion at 6:16-9:4)  However, every single one of these decisions and

4   proceedings is factually and legally distinguishable.

5        None of those cases stand for the proposition that a difference between a

6   standard character mark (POM) and the use of that mark with the incorporation of a

7   stylization of a letter, (POM), or even a design in a letter, constitutes a basis for

8   cancellation of that word mark due to non-use.  Instead, all these cases evaluate the

9   issue of "likelihood of confusion" between two competing marks.  Each decision

10   looks to whether an application for a new mark is confusingly similar to a mark that

11   is already on the Register.  Specifically, these cases turned on whether a word mark

12   had rights over a mark with a design that was completely separate from the word

13   mark and whether or not such a design created a wholly separate and distinct

14   commercial impression from the word portion of the mark – an important

15   distinction.

16        Hubbard's cases all rely on and cite to a single sentence in *Fossil Inc. v.*

17   *Fossil Group*, 49 USPQ2d 1451 (TTAB 1998).  In *Fossil Inc.*, applicant sought to

18   register the mark "FOSSILSCAPES THE FOSSIL GROUP STONESCAPES &

19   Design" as shown here:

20

21

22   

23

24

25   _____

26   [5]  *In re Sergio Abramof*, 2008 WL 853828 (TTAB 2008) (not precedent of TTAB);
     *In re Carinhoso Globo B.V.*, 2001 WL 256197 (TTAB 2001) (not precedent of

27   TTAB); *In re NBA Properties*, 2000 TTAB LEXIS 863 (TTAB 2000) (not
     precedent of TTAB); *In re RealKidz Inc.*, 2010 TTAB LEXIS 247 (TTAB 2010)

28   (not precedent of TTAB); *In re Ginc UK Ltd.*, 2001 WL 256197 (TTAB 2001).

*See Fossil, Inc.* at *1.  The trademark owner for the mark "FOSSIL" challenged this

application.  *Id.* at *2.  Under this factual scenario, the Board in *Fossil Inc.* noted

that the FOSSIL trademark was not similar enough to applicant's, given the

additional wording in applicant's proposed mark (FOSSILSCAPES, THE, GROUP,

and STONESCAPES) or designs (circular design, shells etc.).

Moreover, the portion of the opinion cited by Hubbard has to do with whether

Fossil Inc.'s word mark "FOSSIL" provided "rights in the word FOSSIL combined

with other wording or designs."  *Id.* at 1454.  The design at issue is:



"Hence opposer's registrations of FOSSIL per se in typed drawing do not

encompass opposer's alleged mark AUTHENTIC FOSSIL GENUINE and oval

design."  *Id.*  It is no stretch to conclude that the word mark FOSSIL, by itself

cannot encompass the entirety of the design above.

Similarly, in *In re NBA Properties, Inc.*, applicant wanted to register the mark

CAPS which also contained a separate design element which looked like the U.S.

Capitol building:



*See In re NBA Properties, Inc.*, at *1.  The standard character mark KAPS was

already on the register.  In this context, the Board appropriately held that KAPS was

not similar to and could not stop use of the U.S. Capitol building design.

1    Also in *In re Ginc UK Ltd.*, the issue was whether applicant's ZOGGS
2  TOGGS was confusingly similar to the mark:

3
4  
5

6  *See In re Ginc UK Ltd.*, at *2.  Again, given that the applicant's mark had a star and
7  circle design element which was completely separate and apart from the typed
8  drawing, it stood to reason that "the term ZOGG TOGGS would not extend to
9  include protection for those words combined with a design element."  *Id.* at fn.7.
10 (Notably, despite this general rule, the Board still found likelihood of confusion
11 between the marks and refused registration.).
12    In *In re Sergio Abramof,* applicant sought to register SERGIO's as a standard
13 character mark.  *Id.* at *1.  The issue was whether SERGIO's was confusingly
14 similar to:

15
16 
17
18

19 *In re Sergio Abramof* at *2.  The general rule that the standard character mark
20 SERGIO's could not extend to include protection for the design of a person wearing
21 a sombrero and carrying food, was obvious and made logical sense.
22    In *In re Carinhoso Globo B.V.*, applicant sought to register OPPUS as a
23 standard character mark.  *Id.* at *1.  The issue was whether OPPUS was confusingly
24 similar to:

25
26
27    Once again, it was clear in this case that the word mark OPPUS had no rights
28 to a drawing of an opposum, and could not prevent its registration.

Finally *In re Realkidz, Inc.*, directly contradicts Hubbard's position. In that case, applicant sought to register the following two marks:

 

*See In re Realkidz, Inc.* at *1.  Opposer owned FOR REAL KIDS in typed form. Despite the design element in the proposed marks, the Board still refused registration because "the marks as whole create similar commercial impressions" as the standard character marks.  *Id*. at *4.

**E.    This Court Should Not Second Guess The Trademark Examiner's Acceptance of The POM Specimen As Appropriate Use of the POM® Mark**

The USPTO is charged with granting trademark rights and the USPTO has continually accepted POM as a proper specimen for POM, just like it has accepted a variety of design marks cited above as appropriate use of the standard character marks.  Hubbard claims that the TTAB is not bound by the acceptance of specimens by the Examining Attorneys.  (Motion 10:28-11:2).  By extension he suggests that this court shouldn't either.  While it may be true that the TTAB is not bound by its Examining Attorney's decisions, the TTAB is cautious in its review of an Examiner's judgment.  "We have previously stated that it is not the Board's function to review the work of the Examiner."  *Century 21 Real Estate Corp. v. Century Life*, 10 USPQ.2d 2034, *1 (TTAB 1989).  "We are not going to substitute our judgment for that of the Examiner, on the same facts that were before the Examiner, unless we are convinced that clear error was committed."  *Id*.  Hubbard is asking for this court to second guess the USPTO Examining Attorney's decision that POM is an appropriate specimen for and use in commerce of POM, and potentially find that such use amounted to no use at all.  The law does not support Hubbard's position.

### F.    The Concept of "Tacking" Has No Application To This Case

Hubbard spends a good portion of his brief arguing that "POM Wondeful's attempt to 'tack' the use of its other marks to the '053 Registration fails…." (Motion 17:1-2).  POM Wonderful has never argued that it is attempting to tack any trademark to any other trademark.  Either Hubbard does not know what tacking is or he, again, is using an inapplicable legal concept as a red herring.  Thomas McCarthy explains this concept in his treatise.  Generally, tacking is when a business decides to make changes in the format of their trademark over a period of years. *McCarthy on Trademarks* § 17:25.  For example, IBM's original trademark looked like this:



But over the years it has evolved and now it looks like this:



*Id*.  Such change in trademarks could be attacked on the grounds of abandonment of rights in the old form and that the change prevents the user from tracing priority of use back to a date of first use of the old form of the trademark.  *See Id*.  "Another way to state the priority issue is the trademark owner's ability to 'tack on' the prior use of the old format to the use of the new format to achieve priority of use over a rival."  *Id*.  Here, there is no dispute that POM Wonderful obtained its trademark rights long before Hubbard's use of pŏm.  Therefore, priority of rights is not at issue, and tacking has no application to this case.  Furthermore, POM is not the old form of POM or vice versa.  Both marks were in use within months of each other.  (*See* registrations of the two marks attached as Exhibit A to Vasseghi Decl.)  Therefore it is unnecessary for POM Wonderful to try and tack the rights of one mark onto the later registered one.

### G. The Cancellation or Abandonment of The POM® Mark Does Not Eliminate POM Wonderful's Trademark Infringement Claim

Hubbard wrongly believes that if his motion were to be granted, it would undermine or somehow negate POM Wonderful's infringement claims against him. He is wrong. POM Wonderful's infringement claim would still survive since pŏm also infringes on and is likely to be confused with POM. In fact when the Ninth Circuit analyzed the marks for determining similarity, it considered the marks as they appeared on the products themselves:

> Turning first to the appearance of the "POM®" mark on the left and the "pŏm" mark on the right, the marks possess many obvious visual similarities.



> Most significantly, each mark is comprised of the same three letters. These three letters are presented in the same order, with a stylized second letter (i.e., the "o" in "POM" is heartshaped, and the "o" in "pom" has a breve over it). In addition, the letters in both marks are uniformly cased (i.e., they are either all uppercase, or all lowercase) and presented in a simplistic, white front that is offset by a dark maroon background.

*Pom Wonderful LLC v. Hubbard*, at 1128-1130 (9th Cir. 2014) (images part of original opinion).

Hubbard's pŏm mark infringes both POM and POM. Abandonment of POM does not relieve Hubbard of trademark infringement.

### H. Hubbard Has Created Triable Issues of Material Fact

Hubbard spends the majority of his motion arguing that the use of the POM mark on POM Wonderful's websites does not amount to proper trademark use of the mark.

As an initial matter, whether or not POM Wonderful's use of its POM mark on its website was sufficient trademark use, is irrelevant for purposes of defeating Hubbard's motion, since POM Wonderful has established that it has always used

1   and continues to use its POM trademark on it products in the form of POM and that

2   such use is proper as a matter of law.

3       To the extent the court concludes that POM Wonderful has not opposed

4   Hubbard's motion, by establishing non-abandonment of the POM mark as a matter

5   of law, then the fact of use or non-use of POM on its websites creates a triable issue

6   of material fact.

7       The TTAB utilizes a three-prong test to determine if the content of a web

8   page sufficiently constitutes trademark use: whether  "(1) it includes a picture of the

9   relevant goods; (2) it shows the mark sufficiently near the picture of the goods to

10  associate the mark with the goods; and (3) it includes the information necessary to

11  order the goods, (e.g., a phone number, mailing address, or e-mail address)".  *In re*

12  *Dell. Inc*., 71 U.S.P.Q.2d 1725 (TTAB 2004);  *In re Genitope Corp.*, 78 U.S.P.Q.2d

13  1819, 1822 (TTAB 2006).  Pom's websites meet all three criteria as shown here:

14

15

16  

17

18

19

20  (ASUMF 3; Exhibit R to Hubbard's Request for Judicial Notice, POM-PUR 1-

21  12,14-20, 22-25, 31).

22       Hubbard also argues that the use of POM in those websites and others is not

23  trademark use because "it describes the nature of the product rather than the source

24  of the product." (Motion 14:14-16).  However, Hubbard offers no evidence in

25  support of his personal opinion.  In fact, his guess at what POM Wonderful's use of

26  the POM mark signified, is contradicted by POM Wonderful's Director of

27  Marketing who testified that in instances where POM is used on the website, it does

28  not refer to pomegranates, but rather, it refers to the POM Wonderful brand of 100%

1   pomegranate juice.  (ASUMF 4).  Since Hubbard argues that POM Wonderful has

2   abandoned its POM trademark because its use of POM® on its website is improper,

3   there is a factual dispute over that issue, which must necessarily defeat his motion.

4          Hubbard also claims that POM cannot establish specific sales amounts from

5   its website.  However, POM Wonderful has provided Hubbard with its sales data

6   since 2002.  Additionally, as Hubbard concedes, POM Wonderful has provided

7   information for the amount of its website sales from 2008 onwards.  While POM

8   Wonderful may not have specific data relating to the amount of sales made online

9   prior to 2008, there is, at a minimum, a factual dispute as to whether such sales

10  occurred.

11         Finally, Hubbard's arguments – that POM as part of the URL or corporate

12  name does not constitute proper trademark use, is just a wasted effort.  POM

13  Wonderful does not contend that it does, and in any case, all the uses Hubbard

14  claims to constitute non-use (website, corporate name, URL) do not alter the fact

15  that POM has been in use as a matter of law because it has been continuously

16  depicted on the company's products since 2002. (ASUMF 1).

17  **III.    CONCLUSION**

18         For the foregoing reasons, Pom Wonderful respectfully requests that

19  Hubbard's Motion be denied, and that its cross motion for summary judgment on its

20  claims and summary adjudication on Hubbard's defenses, including abandonment,

21  be granted.

22  DATED:  May 27, 2016              ROLL LAW GROUP PC

23

24                                       By:  _____/s/ Michael M. Vasseghi_____

25                                            Michael M. Vasseghi
                                             Attorneys for Plaintiffs
26                                           POM WONDERFUL LLC, and THE
                                             WONDERFUL COMPANY LLC

27

28