1  Robert G. Hubbard
   E-Mail: robh@purbeverages.com
2  Robert G. Hubbard, Pro Se
   15 Northwood Ave.
3  Libby, MT 59923
   Telephone No.: 612-998-2086
4  Fax No.: 801-992-6155

5  Appearing Pro Se,
   Robert G. Hubbard dba PUR Beverages
6  And Northwest Beverage Distributors

7

8              **UNITED STATES DISTRICT COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10

11  POM WONDERFUL LLC, et al,          Case No. CV13-06917-RGK (JPRx)

12              Plaintiff,

13          v.                          **ROBERT G. HUBBARD'S REPLY
                                         IN SUPPORT OF MOTION FOR
14  ROBERT G. HUBBARD d/b/a PUR         PARTIAL SUMMARY JUDGMENT**
    BEVERAGES, et al.,
15                                       Date:      June 20, 2016
                Defendants.             Time:      9:00 a.m.
16                                       Ctrm:      850

17  _____

18  AND RELATED COUNTERCLAIM

19  _____

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

# I.    INTRODUCTION

In Pom Wonderful's Opposition to my Motion for Partial Summary Judgment, it has not argued that any of the uses discussed in my motion that do not contain the heart design element constitute uses of the '053 Registration.   Therefore, it is undisputed that Pom Wonderful has made no trademark use of the "POM" standard character mark without the heart design element.  Pom Wonderful argues only that its use of the **POM** mark constitutes use of the "POM" standard character mark.[1] This argument contradicts a wealth of authorities.  Pom Wonderful relies mainly on its misrepresentation that the Ninth Circuit supposedly confirmed that the '053 Registration covers uses with designs.  In fact, the Ninth Circuit never addressed the adequacy of Pom Wonderful's use of the "POM" standard character mark because the validity of the mark was not challenged at the preliminary injunction stage.  Pom Wonderful has also failed to provide any evidence that could permit the Court to consider **POM** and the "POM" standard character mark convey the same commercial impression.  Pom Wonderful has failed to establish that it has *ever* used the mark that is the subject of the '053 Registration, and has made no effort to establish that it has (or ever had) any intent to resume use of the '053 Registration and, therefore, my motion for partial summary judgment on my counterclaim and affirmative defense based on abandonment of the '053 Registration should be granted.

# II.   ARGUMENT

## A.    The TTAB Has *NOT* Accepted Pom Wonderful's Specimen of Use For The '053 Registration

Pom Wonderful argues that the USPTO Examining Attorney accepted the specimen including the heart design element and, therefore, the use is valid.  Pom

---

[1] Another problem with Pom Wonderful's position concerning the use of **POM** is that it doesn't even use that mark – it actually uses **POM** WONDERFUL, rather than **POM**, but since **POM** does not constitute use of the "POM" standard character mark, the fact that Pom Wonderful doesn't even use **POM**, and instead only uses **POM** WONDERFUL, doesn't come into play.

Wonderful states that the USPTO is "the authority charged with granting trademark registrations and ruling on whether a trademark is valid or abandoned[.]"  This is false.  The USPTO does process trademark applications and makes a determination that the basic requirements for issuance of a registration are met.  But it is the Trademark Trial and Appeal Board ("TTAB") that determines whether registrations are valid or abandoned, and the TTAB makes it abundantly clear that the Examining Attorney's acceptance of the specimen including the design element is *not binding* on the TTAB, and has not "accepted" the specimen for the '053 Registration.  Rather, in connection with my Petition to Cancel the '053 Registration, the TTAB specifically *rejected* Pom Wonderful's argument that the specimen was valid because the Examining Attorney accepted it.  Instead, the TTAB *denied* Pom Wonderful's motion to dismiss on the basis that the *Examining Attorney's acceptance of the specimen is not binding.*  Pom Wonderful's effort to spin this ruling in some different (and misleading) direction is disingenuous.

As the TTAB pointed out in connection with my Petition to Cancel the '053 Registration, the TTAB is not bound by the acceptance of specimens by examining attorneys or the USPTO's Post-Registration Branch.  *In re Nett Designs Inc.*, *supra,* 57 USPQ2d 1564 at 1566; *In re Rodale Inc.*, *supra,* 80 USPQ2d at 1699.  When denying Pom Wonderful's Motion to Dismiss my Petition to Cancel the '053 Registration, the TTAB further cited to *Otto Int'l Inc. v. Otto Kern GmbH*, 83 USPQ2d 1861, 1863 (TTAB 2007) and *In re Morton Norwich Products, Inc.*, 221 USPQ 1023, 1023 (TTAB 1983) (A mark cannot be shown as a typed or standard character drawing if it "is stylized or has a design element [that] engenders an uncommon or 'special' commercial impression that would be altered or lost were registration to issue based on a typed drawing.").  (RJN, Exh. A.)  Thus, despite the errant issuance of the '053 Registration based on a specimen showing the mark combined with the heart design element (and WONDERFUL), the heart is not within the scope of protection provided by the '053 Registration.

2

**B.     Pom Wonderful Has Produced No Evidence Of The Commercial Impression Created By Either The '053 Or '447 Registrations**

Pom Wonderful's entire defense to my counterclaim and affirmative defense based on abandonment is that Pom Wonderful's use of POM constitutes use of the '053 standard character mark registration, but fails to provide any evidence that the marks convey the same "commercial impression". Pom Wonderful argues that POM does not create a different commercial impression than "POM" – not by offering any evidence of the commercial impressions conveyed by either the '053 or the '447 marks -- by re-defining "commercial impression" as something beyond whether a design element is involved. I do not disagree. The fact that the mark contains a design element does not necessarily render the commercial impression conveyed thereby different than the standard character mark. However, this does not establish that the heart design element is acceptable as part of the standard character mark. Rather, it is Pom Wonderful's burden to establish that POM and "POM" convey the same commercial impression if they want the Court to find that the use of POM constitutes use of the standard character mark.

Pom Wonderful's reliance on the case of *In re wTe Corporation,* 87 USPQ2d 1536 (TTAB 2008), demonstrates the need for evidence of commercial impression. Pom Wonderful argues that, since the stylized "c" in "Spectramet" in that case was ultimately determined to be an acceptable use of a design element in a standard character registration, so must be the heart design element in POM. However, the ruling in the case of *In re wTe Corp.* was grounded on proof that the mark with and without the stylized "c" conveyed the same commercial impression. The TTAB found the standard character mark and the mark with the stylized "c" had the same "commercial impression" and, therefore, the stylized "c" was acceptable. If Pom

Wonderful desires to equate [POM], [POM] WONDERFUL and the "POM" standard character mark, it must show the commercial impression is the same.

The Ninth Circuit described the showing necessary to carry the burden to show "commercial impression" in *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1164 (9th Cir. 2013): "The 'commercial impression' of a trademark is the meaning or idea it conveys or the mental reaction it evokes." [citations omitted] . . . ***Commercial impression, however, should be resolved by considering a range of evidence, ideally including consumer survey evidence***. [citations omitted]." *Hana Fin., Inc. v. Hana Bank, supra,* at 1164 (emphasis added). If Pom Wonderful wants this Court to consider its use of [POM] as use of the "POM" standard character mark, it must establish *with evidence* that the marks convey the same commercial impression. "When a defendant's motion shows that there are no genuine issues of material fact, a plaintiff's unsupported assertion to the contrary is insufficient to forestall summary judgment." *Christy v. Hodel,* 857 F.2d 1324, 1328 (9th Cir. 1988), citing *Celotex Corp. v. Catrett,* (1986) 477 U.S. 317, 324 ("Once the moving party shows the absence of evidence [to support the nonmoving party's case], the burden shifts to the nonmoving party to designate '"specific facts showing that there is a genuine issue for trial."'") Pom Wonderful has produced no evidence that [POM], [POM] WONDERFUL and the "POM" standard character mark have the same commercial impression. It has not offered any evidence to meet this burden, and no triable issue of material fact exists as to whether the marks convey the same commercial impression. Therefore, the Court cannot consider use of [POM] when determining whether Pom Wonderful has abandoned the '053 Registration for the "POM" standard character mark.

**C.     The Ninth Circuit Did Not Consider The Validity Of The '053 Registration Or Whether Use Of [POM] Constitutes Use of the "POM" Standard Character Mark**

4

Pom Wonderful places heavy reliance on dicta from the Ninth Circuit Court of Appeals' ruling in this case.  In that dicta, the Ninth Circuit describes the rights conferred by a standard character mark registration as very broad, and describes the right to use the "POM" mark as "covers all design variations of the word".  Pom Wonderful hangs its hat on the poor choice of the word "design" used by the Ninth Circuit.  Importantly, the validity of the standard character mark registration had not yet been challenged when the Ninth Circuit reviewed the denial of Pom Wonderful's motion for preliminary injunction.  The validity of the '053 Registration was assumed for the purposes of the motion.  The Ninth Circuit was not called upon to address whether Pom Wonderful's use of  constituted use of the standard character mark "POM",[2] and its repeated insinuation that the Ninth Circuit made such a finding is nothing short of a blatant falsehood.

### D.   It Is Simply Not Accurate That Standard Character Marks Are Routinely Used In Commerce With Design Elements

Pom Wonderful makes the ludicrous argument that standard character marks are "routinely" used in commerce with design elements based on its misleading reference to a handful of registered marks.  In fact, nearly all of the marks referenced by Pom Wonderful to support this argument are registered as *both* design and standard character marks, and the standard character registrations were issued based on specimens that showed use of the mark *without* any design element.  Thus, the use in commerce that Pom Wonderful is referencing is actually use of the design mark, not of the standard character mark.  For most of these marks, there is independent use of the standard character mark in commerce, without the design element, as evidenced by the specimen.

---

[2] Rather, the Ninth Circuit was evaluating only whether the "POM" standard character mark (assuming it is valid) gave Pom Wonderful rights broad enough to exclude me from using "pŏm".  It did not address whether  constitutes use of the "POM" standard character mark.

Pom Wonderful's reference to these marks is misleading in numerous respects. Of the seven marks referenced, five were registered as both design and standard character marks. (REVOX, IROAR, PRO YO, CORE COMMUNICATIONS and SOS, RJN Exhs. B, D, F, H and I.) Four of the standard character registrations (REVOX, IROAR, PRO YO and CORE COMMUNICATIONS) were issued based on specimens showing both standard character use *and* a use with a design element. (RJN Exhs. C, E, G and I.) Notably, while the specimens are attached to the Vasseghi Declaration as Exhibit C, Pom Wonderful included only the first page of the two-page specimen for PRO YO, conveniently omitting the page showing use of the mark without a design element. This can't be an oversight, but is an obvious effort to mislead the Court. The fifth and sixth marks (WOWERFUL and SOS) contain stylized "O"s that are not recognizable as anything other than an "o" (unlike the heart in ) so the marks in a standard form and with the stylized "O" create the same commercial impression. (RJN Exh. J, Vasseghi Decl., Exh. D.) The seventh mark (TROMAX) was only recently issued and has not been challenged, so the propriety of the specimen or extent of use in commerce are not known. (Vasseghi Decl., Exh. D.) But the fact that a single registration for a standard character mark was issued based on a specimen including a design element does not make it "routine" as argued by Pom Wonderful.

I do not contest that it is not uncommon for a trademark holder to register versions of its marks as both standard character and design marks. What is uncommon is for the standard character registration to be issued based upon a specimen showing use with a design element. Pom Wonderful has provided no authorities where, when such a mark has been challenged, the standard character mark has been permitted to stand (1) without having been used in commerce without a design element, and (2) without evidence that the marks with and without the design element convey the same commercial impression. See *In re wTe Corporation,* 87 U.S.P.Q.2d 1536 (TTAB 2008). The mere issuance of the registration is not a binding determination that the

specimen shows a proper use of the standard character mark.  The TTAB is not bound by the acceptance of specimens by examining attorneys.  *In re Nett Designs Inc.*, 236 F.3d 1339, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001); *In re Rodale Inc.*, 80 USPQ2d 1696, 1699 (TTAB 2006).

TTAB opinions establish that combining a design element with a standard character mark is prohibited.  As discussed in *Fossil, Inc. v. The Fossil Group*, 49 USPQ2d 1451, 1454 (TTAB 1998):

> [O]pposer's typed drawing registrations of FOSSIL afford opposer a scope of protection which encompasses all reasonable manners in which the word FOSSIL could be depicted . . . ***However, opposer's registrations of the word FOSSIL in typed drawing form do not afford opposer rights in the word FOSSIL combined with other wording or with designs***.  Hence, opposer's registrations of FOSSIL per se in typed drawing form do not encompass opposer's alleged mark AUTHENTIC FOSSIL GENUINE and oval design.

*Fossil, Inc., supra,* 49 USPQ2d 1454 (emphasis added).

In *In re NBA Props.*, 2000 TTAB LEXIS 863 (TTAB Dec. 29, 2000) [*8], the TTAB reiterated this rule:

> A typed drawing allows protection for all reasonable manners of presentation. [citations omitted] . . . ***Thus, rights in the term would not be extended to include protection for that word combined with, for example, other words or a design element.*** [citations omitted] Consequently, it would not be reasonable to assume that regis-trant's mark KAPS would be presented with the design element appearing in applicant's mark.

7

1  *In re NBA Properties, Inc.*, *supra,* 2000 TTAB LEXIS 863 [*8] (emphasis added).
2  This prohibition against design elements in standard word mark registrations has been
3  consistently enforced.  See *In re Carinhoso Globo B.V.,* 2001 TTAB LEXIS 195 [*6]
4  (TTAB Feb. 28, 2001) ([R]ights in the typed word reside in the word itself not in any
5  particular display of the term. Thus, rights in the term would not be extended to
6  include protection for that word combined with other matter such as a design element
7  or additional wording.); *In re Ginc UkK Ltd.,* 90 U.S.P.Q.2D (BNA) 1472, (TTAB
8  Sept. 4, 2007) ([R]ights in the term ZOGGS TOGGS would not extend to include
9  protection for those words combined with a design element.); *In re Abramof*, 2008
10 TTAB LEXIS 372. [*7] (TTAB Mar. 28, 2008) ([R]ights in the term SERGIO'S
11 would not extend to include protection for that word combined with other wording or
12 design elements.)  Most recently, the rule was reiterated in *In re RealKidz Inc.,* 2010
13 TTAB LEXIS 247 [*10] (TTAB June 9, 2010) (not precedent of the TTAB): " . . .
14 ***rights in the typed mark FOR REAL KIDS would not extend to include protection***
15 ***for those words combined with a design element."***  *In re RealKidz, Inc. supra*
16 (emphasis added)*, citing Fossil Inc. v. Fossil Group, supra*, and *In re Pollio Dairy*
17 *Products Corp., Inc.*, 8 USPQ2d 2012 (TTAB 1988).

18 **III.   CONCLUSION**

19      Pom Wonderful's Opposition to my Motion for Partial Summary Judgment
20 fails to raise any controverted facts that preclude summary judgment.  It has made no
21 argument that any of its uses of "POM" without the heart design element constitute
22 trademark use, and has argued only that its use of  constitutes use of the
23 standard character mark.  Pom Wonderful has failed to provide any evidence that
24  and "POM" convey the same commercial impression, so there is no
25 evidence to be weighed on this potential issue, and it remains uncontested.  Finally,
26 Pom Wonderful's reliance on the Ninth Circuit's ruling on the denial of its motion for
27 preliminary injunction did not address any challenge to the validity of the '053
28 Registration, did not address whether use of  constitutes use of the standard

character mark, and the dicta in that ruling is not applicable in the context of this motion.  As there are no controverted issues of fact that preclude summary judgment, I am entitled to summary judgment as a matter of law on my counterclaim and affirmative defense based on abandonment of the '053 Registration.


Dated: June 6, 2016                        Robert G. Hubbard, Pro Se

                                           By:  _//Robert G. Hubbard//_____
                                                Robert G. Hubbard
                                                ROBERT G. HUBBARD, Pro Se
                                                dba PUR Beverages and Northwest
                                                Beverage Distributors