JOIE MARIE GALLO (SBN 178064)
joie.gallo@roll.com
MICHAEL M. VASSEGHI (SBN 210737)
michael.vasseghi@roll.com
DANIELLE M. CRIONA (SBN 204074)
danielle.criona@roll.com
ROLL LAW GROUP PC
11444 West Olympic Boulevard
Los Angeles, California 90064-1557
Telephone:  (310) 966-8400
Facsimile:   (310) 966-8810

Attorneys for Plaintiffs
POM WONDERFUL LLC, and THE
WONDERFUL COMPANY LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| POM WONDERFUL LLC, a Delaware limited liability company, and THE WONDERFUL COMPANY LLC<br><br>Plaintiffs,<br><br>vs.<br><br>ROBERT G. HUBBARD d/b/a PUR BEVERAGES, PORTLAND BOTTLING COMPANY an Oregonian company, and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIM. | Case No. CV13-06917-RGK (JPRx)<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT, AND SUMMARY ADJUDICATION OF DEFENDANT'S AFFIRMATIVE DEFENSES/COUNTER CLAIMS FOR ABANDONMENT, GENERICNESS AND FRAUD**<br><br>Declaration of Michael Vasseghi, Reply Separate Statement and Response to Hubbard's Evidentiary Objections filed concurrently herewith]<br><br>Date:     June 20, 2016<br>Time:    9:00 a.m.<br>Crtrm.:  850<br><br>**[Hon. R. Gary Klausner]** |

{2579515.3}

PLAINTIFFS' REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

For the reasons set forth below, Hubbard's opposition to POM Wonderful's ("PW") motion does not come close to creating material issues of disputed fact.[1]

## II. ARGUMENT

### A. POM Is Used With And Without "Wonderful" On Various Products

Hubbard complains that PW has never used POM without WONDERFUL, therefore use of and reliance on POM alone is invalid. Hubbard is wrong. POM stands alone (without WONDERFUL) on several products including juices and teas. (*See* Criona Decl. in support of Motion Exhibit C pages 18 and 21-22); (*See* Original Complaint Exhibit A, pp 17 and 19 [Docket No. 1]).

That POM is used along with WONDERFUL on its 100% pomegranate juice product does not change the likelihood of confusion analysis. When the Ninth Circuit analyzed likelihood of confusion, it did so using a product bearing POM WONDERFUL on the bottle. *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1128 (9th Cir. 2014). Hubbard tries to defend his infringement by claiming PW abandoned, via non-use, it's POM mark. But Hubbard fails to recognize that pŏm also infringes the POM and POM WONDERFUL marks, both of which are in use, and he never contends otherwise. Since Hubbard's use of pŏm infringes several of PW's marks, his abandonment theory of POM is not a full defense to infringement. *Even if* this court found facts in dispute as to whether or not POM is abandoned, such a finding would still not preclude granting summary judgment since Hubbard has also infringed the other PW marks for which he never claimed abandonment.

### B. POM Wonderful Has Not Abandoned Its Mark

PW has addressed Hubbard's abandonment theory in detail in its Opposition to Hubbard's Motion for Partial Summary Judgment. [*See* Docket No. 195]. PW will not restate those arguments again here, but respectfully requests that the court

---

[1] PW met and conferred on all issues raised in its motion. (See Vasseghi Decl. ¶ 2).

incorporate the arguments PW made in that document as though set forth herein.

### C. No Evidence Of Generic-ness Exists

"Federal registration of a trademark endows it with a strong presumption of validity." *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.,* 408 F.3d 596, 604 (9th Cir. 2005) (quoting *Coca–Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1254 n. 10 (9th Cir. 1982). "The general presumption of validity resulting from federal registration includes the specific presumption that the trademark is **not generic**." *Id.* (Emphasis added.)  It is undisputed that both POM and POM are registered and incontestable pursuant to 15 U.S.C. §§ 1058, 1065.  "A second consequence of the registrations is that [PW] 'has met its initial burden of demonstrating that the genericness of the trademark does not raise a genuine issue of material fact." *Coca-Cola,* 692 F.2d at 1254. Thus, to survive PW's motion, Hubbard must designate specific facts from which a jury could find that POM is generic. *See Id.*

For the POM mark to be deemed generic, "the primary significance of it" to "a majority of the public" must be that POM means pomegranate. *Elliott v. Google Inc.*, 45 F.Supp.3d 1156, 1162 (D. Az. 2014) citing *Coca–Cola Co., supra,* at 1254 n. 10.  A mark is not "generic merely because it has *some significance* to the public as an indication of the nature or class of an article…In order to become generic the *principal significance* of the word must be its indication of the nature or class of an article…." *Elliott* at 1162 citing S. Rep. No. 98-627 at 5 (1984) *reprinted* in 1984 U.S.C.C.A.N. 5718, 5722 (emphasis in original).  There are various forms of evidence that courts have found relevant to the primary significance inquiry, including: dictionary usage; mark-holder usage; competitor usage; media usage; and consumer surveys. *See* 2 *McCarthy* § 12:13 to 14.  Hubbard has no evidence of dictionary usage, competitor usage, media usage nor has he conducted a consumer survey to establish genericism here.

Hubbard oddly faults PW for  having offered "no evidence that the consuming public associates "pom" with a source". (Oppo. 12:25-26).  However,

Hubbard has the heavy burden of proof here, not PW. *He* should have offered a survey on genericism. Hubbard erroneously tries to shift this burden of proof on PW by citing cases where a mark had been found to be generic and the trademark owner was trying to "recapture" a generic word and make it a trademark once more.[2] Here, there is no finding that POM has become generic, therefore PW does not need to offer evidence in support of its recapture. Hubbard's cases are inapplicable here, and the burden of generic-ness rests squarely on his shoulders.

Hubbard relies on a single webpage from PW's 2002 website that stated "POM stands for pomegranate" (Oppo. 12:8-9); and a "Google search [that supposedly] confirms that the public uses 'pom' as shorthand for pomegranate." (Oppo. 12:13-14). But as set forth in its moving papers, PW's Director of Marketing explained that the purpose of the statement was to convey to consumers that the POM® brand stood for *a company* that makes pomegranate based products. (SUF 29). Moreover, the webpage is 10 years old and a single webpage out of over one-hundred PW created over the years. (SUF 30). A single web page, more than a decade old, cannot rebut the strong presumption of validity and non-genericness that POM and POM enjoy. Furthermore, a single comment by a trademark owner does not result in genericism. For example, in *Elliott v. Google Inc.*, *supra*, plaintiff argued that "Google" was generic (a) because "Google co-founder Larry Page stated on July 8, 1998, 'Have fun and keep googling.'" *Id*. at 1171; and (b) when entering the search query "define: google" into the Google search engine resulted in a verb definition of: "Use an internet search engine, particularly google.com." *Id*. However, despite such evidence, the court found "Google" not to be generic and granted summary judgment in Google's favor. *Id*. at 1175.

Hubbard's other piece of "evidence" supporting genericism – his Google

---

[2] *See* cases cited by Hubbard: *Harley Davidson, Inc. v. Grotannelli*, 49 U.S.P.Q.2d 1458 (2nd Cir 1999) and *Miller Brewing Co. v. Falstaff Brewing Corp.*, 211 U.S.P.Q. 665 (1st Cir. 1981), both of which deal with recapturing "lost" marks.

search for "pom flavor" – suffers from multiple defects, each of which is fatal. First, "[t]he crucial date for the determination of genericness is the date on which the alleged infringer *entered the market* with the disputed mark or term." *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 928 (9th Cir. 2005) (emphasis added). Hubbard does not dispute that he first sold PUR pŏm in 2013. (*See* Hubbard's Response to PW's Statement of Material Fact No. 26 [Docket No. 191]). Therefore, Hubbard must provide evidence of generic use of POM *prior* to 2013. In his declaration, he attests that the Google search that he relies on was performed on May 18, 2016. (Hubbard Decl. ¶ 5 [Docket No. 192]). Therefore, the uses of POM cited by Hubbard are completely irrelevant.

Next, Hubbard's "evidence" of third party use is nothing more than URL addresses without any explanation of their content. (*See* Exhibit 2 to Hubbard Decl. [Docket No. 192-2]). Upon inspection, some of the uses are acronyms (*e.g.*, P.O.M. for Pomegranate Orange Mango) and have nothing to do with the mark and some are old uses that are discontinued. (Vasseghi Decl. ¶ 3). While several show use of POM as a descriptor of flavor, a descriptive use alone does not result in genericide. In order to be a generic use, the use "must be a *name* of the product or service, not just a 'descriptor….'" 2 *McCarthy on Trademarks and Unfair Competition* § 12:12 (4th ed.) (emphasis in original). Hubbard's evidence, to the extent it is even accepted by the court, does not show a single use of POM as a name of *a product*.

Furthermore, "[i]f competitors can accurately describe their products or services without using the mark in question, it suggests the mark is not generic." *Elliott* at 1172. For example, although we commonly refer to the ear-cleaning product as a "Q-Tip," it is not generic because it can also be described as "double tipped applicator".[3] By contrast "Escalator" was once a trademark[4], but now, there

---

[3] *Q-Tips, Inc. v. Johnson & Johnson*, 108 F.Supp. 845, 863 (D. NJ. 1952).
[4] *Haughton Elevator Co. v. Seeberger*, 85 USPQ 80 (P.T.O. 1950).

{2579515.3}                                           4
PLAINTIFFS' REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

is no other way to describe this product, making it generic. Similarly, "dry ice," once a trademark is generic, because you don't ask for "a solid form of carbon dioxide!"[5] You don't discuss a form of exercise as "a class of fitness instructions using specific exercise equipment" – instead, you say you went to "Pilates." There is no other way to describe it - which is why this former trademark is now generic.[6]

      Here, the Court need look no further than Hubbard's current product to illustrate the point. Hubbard changed his PUR pŏm product to PUR pomegranate. (Vasseghi Decl. ¶ 4). By doing so, he proves that POM is not the generic term for a class of goods because it isn't needed for him to describe his product – his product is accurately described using pomegranate, which *is* the generic term. This is why we do not ask a grocery store clerk where the "poms" are expecting to be shown the pomegranates. POM simply is not a generic term.

      Finally, Hubbard baldly concludes that because a search of the phrase "pom flavor" yielded "more than 52,000 pages of results" that must mean POM is generic. While this argument has some appeal, it is legally meaningless. A Google search of "Coca-cola flavor" yield 522,000 results. (Vasseghi Decl. ¶ 5). Does this mean Coca-Cola is generic? Of course not. Instead, saying something is POM-flavored is akin to saying a beverage is Coke® or Cran® flavored – that does not indicate the mark is generic. Instead, it shows that either Coke® or Cran® was used to flavor something in a recipe or, if it was on a product (without a license from Coca-Cola or Ocean Spray), it would be a trademark infringement because Coke® and Cran® are registered trademarks and cannot be used as descriptors. *See Coca-Cola, supra* at 1254. Furthermore, Hubbard does not provide any instance where the court found results of a Google search being probative of genericness, let alone evidence of it. If the requirement for establishing genericism was as simple as identifying the number of "hits" a Google search yielded for a mark from which public perception and use

---

[5] *Dry Ice Corp v. Louisiana Dry Ice Corp.*, 54 F.2d 882 (5th Cir. 1931).
[6] *Pilates Inc. v. Current Concepts, Inc.*, 120 F.Supp.2d 286 (S.D.N.Y. 2000).

{2579515.3}      5
PLAINTIFFS' REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

could be somehow divined, there would be no need for survey evidence or analysis of the other legal factors courts utilize to determine generic-ness.

None of Hubbard's "evidence" comes even remotely close to establishing that the "*primary significance*" of POM to a "*majority* of the public" is pomegranate. Even if one thousand or ten thousand people think so, that is insufficient evidence as a matter of law.  "Because a finding of genericness may result in the loss of rights which could be valuable intellectual property, a court should not find genericness ***without persuasive and clear evidence*** that the contested term has become generic among a majority of the buyer group." 2 *McCarthy on Trademarks and Unfair Competition* § 12:12 (4th ed.) (emphasis added).  "As Judge Posner remarked: 'To determine that a trademark is generic and thus pitch it into the public domain is a fateful step.'" 2 *McCarthy on Trademarks and Unfair Competition* § 12:12 (4th ed.) (citing *Ty Inc. v. Softbelly's Inc.*, 353 F.3d 528 (7th Cir. 2003).  One Google search result and a single fourteen-year-old webpage don't create triable issues of fact.

### 1. The Ninth Circuit Has Found POM To Be a Suggestive Mark, Not Generic or Even Descriptive

The strength of trademarks are analyzed on a spectrum: generic, descriptive, suggestive, arbitrary and fanciful.  *See Pom Wonderful LLC v. Hubbard* at 1126.

> On this spectrum, the most distinctive marks—i.e., arbitrary and fanciful marks—receive the most trademark protection, whereas the least distinctive marks—i.e., generic marks—receive no trademark protection. Suggestive and descriptive marks lie between these two extremes, with suggestive marks being entitled to greater protection than descriptive marks. Unlike descriptive marks, which define qualities or characteristics of a product in a straightforward way, suggestive marks convey impressions of goods that require the consumer to use imagination or any type of multistage reasoning to understand the mark's significance.

*Id.* (internal citations, quotes omitted).

> A generic term is one that refers 'to the genus of which the particular product or service is a species. In other words generic terms are 'common **descriptive** names for what the product is.
> *Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, 2008 WL 1913163, at *3

1  (C.D. Cal. Mar. 27, 2008), aff'd, 327 F. App'x 723 (9th Cir. 2009) citing *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999) and *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 718 F.2d 327, 329 (9th Cir. 1983) (emphasis added). However, in this case, the Ninth Circuit has held that:

> The district court correctly found that the "POM" mark is *suggestive* because the word "POM"—*which is not ascribed independent pomegranate-related meaning by conventional dictionaries*—requires customers to use some additional imagination and perception to decipher the nature of Pom Wonderful's goods

*Pom Wonderful LLC v. Hubbard* at 1126 (emphasis added). Additionally POM and POM are incontestable marks, and therefore not descriptive as a matter of law. *Park 'N Fly, Inc.* at 196-197. The POM mark is not generic. This is why the Ninth Circuit found POM to be suggestive, not generic, and why the USPTO routinely issues new registrations for POM, something it could not do if POM was generic.

### D. Hubbard Has Had Six Months To Gather Evidence Of Fraud And In Any Event The Evidentiary Record Is Now Complete

Hubbard tries to excuse his lack of evidence of PW's alleged fraud by claiming that he needs more time to depose PW employees. As in initial matter, on June 3, 2016, Magistrate Judge Rosenbluth granted PW's Motion for a Protective Order for additional depositions Hubbard wanted to take, therefore discovery has ended, and the evidentiary record is now complete. (Vasseghi Decl. ¶ 6). Furthermore, Hubbard asserted his affirmative defense of fraud when he first filed his Answer in November 2013. (*See* Hubbard's thirty-sixth affirmative defense in his Answer filed November 27, 2013 [Docket No. 26]). In his own words:

> Notably, the Counterclaim re-states challenges to the validity of Pom Wonderful's marks originally raised in Hubbard's Answer, filed while in pro per in November 2013. It states the same arguments as affirmative claims rather than defenses, so Hubbard's challenges are nothing new to Pom Wonderful, and *have been the subject of discovery by Hubbard*….

(*See* Hubbard's Opposition to PW's Motion for Dismissal filed February 29, 2016,

page 8 fn. 9 [Docket No. 111]) (emphasis added).  Hubbard has had ample opportunity to establish his fraud claim.   His request for additional time pursuant to FRCP 56(f) must be denied. "The purpose of a Rule 56(f) is to prevent a party from being 'railroaded' by a premature motion for summary judgment." *Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, 2008 WL 1913163,*2 (C.D. Cal. 2008).  PW filed its motion on the last possible date it could, per the scheduling order, and is certainly not premature.  The reality is that no evidence of fraud exists because Hubbard's fraud claim is based on nothing more than PW's proper and lawful trademark enforcement activities and he has offered no evidence to the contrary.

### E. The Commercial Impression Between POM and POM and The Doctrine of Tacking Are Completely Irrelevant To This Case

As fully explained in PW's opposition to Hubbard motion for partial summary judgment, there is no uncommon or special commercial impression between POM and POM.  And, in any event, this has no bearing on any issues before the court. Hubbard cites approvingly to several cases pertaining to the concept of tacking.  Again, as explained fully in its Opposition to Hubbard's partial motion for summary judgment, PW is not seeking to tack the rights and priority of use from one trademark to another, and therefore that concept has no application here either.

### F. No Triable Issues of Material Fact Regarding Likelihood of Confusion/Infringement Exist

#### 1. Hubbard's Infringement Is Not "Fair Use"

For the first time in this case, Hubbard asserts that his use of "pŏm" constitutes fair use.  The fair use defense requires that (1) the defendant did not use the term as a trademark or service mark; (2) the defendant used the term fairly and in good faith; and (3) the defendant uses the term "[o]nly to describe" its goods or services.  *Horphag Research Ltd. v. Pellegrini,* 337 F.3d 1036, 1041 (9th Cir. 2003).  The fair use doctrine recognizes that [a trademark owner] cannot altogether exclude some kinds of competing use." *U.S. Shoe Corp. v. Brown Grp. Inc.*, 740 F.Supp.196, 197 (S.D.N.Y. 1990).  Fair use has no application here because that

doctrine is specifically for the fair use of *descriptive* marks. As the Ninth Circuit has held, POM is not descriptive, but suggestive, and it is incontestable precluding it from attack for being descriptive. *Park 'N Fly, Inc.* at 196. (*See Cullman Venutres, Inc. v. Columbian Art Works, Inc.*, 13 USPQ.2d 1257,1285 (S.D.N.Y. 1989 ) (fair use defense is not available against assertion of infringement of suggestive mark); *Inst. for Scientific Info. Inv. v. Gordon & Breach,* 18 USPQ.2d 15257, 1533 (3rd Cir. 1991) cert denied 502 U.S. 909 (fair use defense presupposes plaintiff's mark is descriptive). Furthermore, fair use "applies only to marks that possess both a primary meaning and secondary meaning – and only when the mark is used in its primary descriptive sense rather than its secondary trademark sense." *Brother Records Inc. v. Jardine*, 318 F.3d 900, 905 (9th Cir. 2003). POM has no primary or secondary meaning as it is not a descriptive mark. If PW had somehow managed to register the plain text word "pomegranate" then fair use may apply, but no-one needs to use POM to describe anything. They can simply say "pomegranate". In contrast, classic fair use terms include: PLAYMATE (used to describe her title as Playboy Playmate of the Year)[7], EBONY (used to describe sales to adult black male market)[8], and GOLDEN (used to describe color of children's writing slate).[9]

### 2. Hubbard's Admission Of Likelihood of Confusion Cannot Be Undone

Hubbard argues that the new POM mark applications which Hubbard opposed due to likelihood of confusion grounds, are distinguishable from the POM character mark because "the '053 Registration is in the category of goods of fruit juices" while PW's recent applications "overlap with my product category." (Oppo. 15:19-24). However, one of those recent applications for POM is for fruit and vegetable juice. (*See* Vasseghi Decl. and Exhibit A thereto). This is the same

---

[7] *Playboy Enterprises Inc. v. Terri Welles, Inc.*, 78 F.Supp.2d 1066 (S.D. Cal. 1999).
[8] *Farm Serv. v. United States Steel Corp.*, 414 P.2d 898 (1966).
[9] *Western Publish'g. Co. v. Rose Art Indust. Inc.*, 733 F.Supp. 698 (S.D.N.Y. 1990).

category as the '053 POM Registration for fruit juice, except that it includes vegetable juices, something Hubbard does not sell. Hubbard cannot argue that POM for fruit juice *is not* confusingly similar to his pŏm mark but POM for fruit and vegetable juice *is* confusingly similar. Hubbard's admission has painted him into a corner, forcing him to make disingenuous and tortured arguments.

### 3. The *Sleekcraft* Factors Weigh In Favor of POM Wonderful

Against long odds, Hubbard claims that the Ninth Circuit's likelihood of confusion analysis is somehow inapplicable here given that it was made at the preliminary injunction stage. (Oppo 17:1-2). However, this court must undergo the *exact same analysis* under *Sleekcraft* now, as the Ninth Circuit did. Therefore the Ninth Circuit's findings and analysis are highly persuasive, giving this court a perfect roadmap to follow. Hubbard argues that POM is not strong because of "widespread third party use". But, as explained above, he has offered no evidence of such use. In any event, even if there was evidence of some third-party use, this fact would not change the status of the POM mark along the trademark-strength-continuum. That is because such a determination is a legal concept, not a factual one. (*See U.S. Gold & Silver Inv. Inc., v. Dir of U.S. Mint*, 682 F.Supp. 484 (D. Or. 1987), *aff'd*, 885 F.2d 620 (9th Cir. 1989) ("The determination of a mark's status is a question of law for the court."). As the Ninth Circuit held, five of the eight *Sleekcraft* factors - with the most important one, similarity of the marks - weigh strongly in PW's favor. Hubbard has offered no evidence to change that analysis.

## III. CONCLUSION

For the foregoing reasons PW respectfully requests that its motion be granted.

DATED: June 6, 2016             ROLL LAW GROUP PC

By: ___/s/ Michael M. Vasseghi___
Michael M. Vasseghi
Attorneys for Plaintiffs